not normally serviced by the Debtors. The services of the GSAs allow the Debtors to realize ticket sales through the issuance of multi-carrier itineraries. In return, the GSAs generally are compensated by way of commissions on their ticket sales. For the six months ending ending May 31, 2005, GSA commissions averaged approximately $995,000 per month. Commissions are generally paid two months after they are earned (e.g., commissions earned in May are paid in July). The revenue generated from the GSA Agreements during the 1st quarter of 2005 was approximately $89 million. Thus, the GSA Agreements are critical to the Debtors' international marketing efforts.

67.     The Debtors also have agreements with Orbitz and G2 Switchworks (the "**Supplier Link Agreements**"), under which Orbitz and G2 book tickets directly through the Debtors' reservation system. The Supplier Link Agreements will provide a lower cost alternative to traditional booking channels and will result in significant cost savings for the Debtors.

68.     Honoring prepetition obligations related to the Backend Incentive Agreements, the Volume-Based Incentive Agreements, the Point-Of-Sale Agreements, the Block Seat Agreements, the Online Agency Agreements, the Opaque Channel Agreements, the GSA Agreements and the Supplier Link Agreements (collectively, the "**Travel Agency Agreements**"), is essential to the Debtors' continued conduct of business with travel agents. The Debtors must sustain the confidence of these travel agencies so that the agents will continue to sell the Debtors' services to the traveling public. Because these travel agencies account for approximately 70% of the Debtors' ticket sales and because these revenues far exceed the aggregate prepetition claims

related to these agreements, the Debtors seek the authority to pay all prepetition obligations under the Travel Agency Agreements.

### F.  Cargo Agency Agreements

69.  The Debtors' cargo services use general sales agents (the "**Cargo GSAs**") pursuant to certain agreements with the Debtors (the "**Cargo GSA Agreements**") in the United States and abroad.  The Cargo GSA Agreements are structured in one of two ways:  (i) the Cargo GSA markets the Debtors' cargo services, collects payment from the customer, deducts an agreed commission and remits the remaining amount to the Debtors or (ii) the Debtors make cargo services available to the Cargo GSAs at an agreed rate, which the Cargo GSAs sell to customers at a higher rate. Under the first scenario, the commission rates for Cargo GSAs vary depending upon the extent of the services furnished and the market in which the services are performed.  Under the latter scenario, the Cargo GSAs retain the difference between what the Debtors charge and what the customer pays as the Cargo GSAs' compensation.  The Cargo GSAs are generally paid monthly.  For the six months ending June 30, 2005, the Debtors' payments under the Cargo GSA Agreements equal approximately $1.01 million per month.  In 2004, the Debtors generated approximately $173.2 in revenue directly attributable to the use of Cargo GSAs.

70.  Because the revenues derived from the Cargo GSAs far exceed, by many multiples, the aggregate prepetition claims related to the Cargo GSA Agreements and because the Debtors' cargo customer base may erode to the detriment of the Debtors if they do not honor their obligations under the Cargo CSA Agreements, the Debtors seek the authority to pay all prepetition obligations under the Cargo GSA Agreements.

**G.     TSI Agreements**

71.     In addition, the Debtors have agreements (the "**TSI Agreements**") with Transportation Solutions, Inc. ("**TSI**"), whereby TSI acts as a financial clearinghouse for the Debtors for billings, payments and the related administration of ground transportation services (including pickup and delivery, road feeder, freight providers, and other common carrier services) for air cargo.  In this clearinghouse role, TSI aggregates and settles charges between the Debtors and approximately 50 motor carrier providers that transport customer cargo throughout the United States.  In addition to air cargo customers, TSI also acts as a clearinghouse for payments to truckers in connection with the ground transportation of aircraft parts, engines and other related materials necessary for the maintenance of the Debtors' aircraft fleet.

72.     The financial clearinghouse services provided to the Debtors through the TSI Agreements are central to the daily operations of the Debtors.  The failure to honor prepetition obligations to TSI in the hours and days following the commencement of these cases would be severely damaging to the reorganization of the Debtors if truckers who are normally paid through the TSI clearinghouse subsequently fail to perform ground transportation services related to customer cargo shipments or the transfer of engines and parts needed to maintain the Debtors aircraft fleet.  If hundreds of cargo shipments were stranded during the early days of these cases, it would not only result in an immediate loss of cargo customers but also the possible grounding of aircraft as a result of the failed delivery of aircraft engines and parts needed to maintain the Debtors' fleet.  Moreover, the resultant publicity of such an event could be damaging to the Debtors' ability to reorganize.  Because of the importance of the TSI Agreements to

maintaining cargo customer confidence and goodwill and the necessity of the continued

motor carrier shipments to the efficient maintenance of the Debtors aircraft fleet, the

Debtors seek the authority to pay all prepetition obligations under the TSI Agreements.

### H. In-To Plane Service Company Claims

73.     The Debtors also request authority to honor the claims of suppliers of

aircraft fueling, ground handling, and aircraft cleaning services.  These service providers

are known as "**In-to Plane Service Companies**."  These arrangements obviate the need

to have separate personnel and facilities devoted to these services at each airport to which

a carrier flies.  The Debtors' aircraft cannot be operated without the assistance of the In-

to Plane Service Companies and they are an essential element of the continued operation

of the Debtors.  Therefore, the Debtors seek authority, but not direction, to honor

prepetition obligations to the In-to Plane Service Companies and to continue to use the

In-to Plane Service Companies in the ordinary course of business.

### I. Technical Services Sales Agents

74.     In addition to providing air transportation, the Debtors also perform

certain aircraft and engine maintenance activities for third party customers ("**Technical

Services**").  The provision of Technical Services provides substantial revenue to the

Debtors and is an essential part of the Debtors' business.

75.     In an effort to maximize the Debtors' revenue from providing Technical

Services and to ensure continued use of debtors' personnel and its assets used to provide

Technical Services, the Debtors have engaged the services of Technical Services sales

agents, worldwide (the "**Sales Agents**"), to assist the Debtors in securing customers for

the Debtors' Technical Services. Sales Agents possess unique technical qualifications

specific to aircraft and, in many cases, have established relationships in their contracted territory which enable them to effectively assist the Debtors' in selling their Technical Services to third party customers.

76.     Pursuant to certain arrangements (the "**Technical Services Sales Agent Agreements**"), Sales Agents are paid on a commission basis, derived as a percentage of the net revenues received by the Debtors from customers secured by such Sales Agent. In addition to the commission structure, in certain cases, Sales Agents are reimbursed for necessary and pre-approved expenses.

77.     Maintaining the services of Sales Agents is important to the Debtors' Technical Services business.  Sales Agents provide valuable assistance to the Debtors, without whom, the Debtors' revenue derived from Technical Services would likely diminish to the detriment of the Debtors, their creditors and their estates.  Moreover, the performance-based commissions in the Technical Services Sales Agent Agreements provide crucial incentives that encourage the Sales Agents to grow this important component of the Debtors' overall business.  For these reasons, the Debtors request authority to continue the use of Sales Agents in the ordinary course of business and honor all related prepetition obligations related to the Technical Services Sales Agent Agreements.

**J.      ATPCO Agreement**

78.     Airline Tariff Publishing Company ("**ATPCO**") facilitates the publication of airline tariff filings that are communicated by ATPCO to ticket vendors pursuant to an "**ATPCO Agreement**."  The Debtors rely on ATPCO to distribute changes to the Debtors' fares and rules to global distribution systems in a timely manner.  ATPCO also

files fares for the Debtors with government authorities, as is required for all airlines. The Debtors' cargo division also utilizes ATPCO to file domestic freight tariffs and rates. This process is crucial to the Debtors' marketing efforts and ability to sell tickets in the market place.

79.     The obligations incurred under the ATPCO Agreement are paid through the Clearinghouses. For the six months ending May 31, 2005, the Debtors' average monthly obligation to ATPCO was approximately $200,000. Fees to ATPCO are generally paid two months after they are earned (e.g., fees earned in May are paid in July). Because the publication of the tariff efficiently fulfills a vital and otherwise very complicated function for the Debtors, the Debtors seek the authority to pay all prepetition obligations to ATPCO.

**K.      Foreign Deeds of Undertaking**

80.     The Debtors are parties to certain foreign deeds of undertaking (the "**Foreign Deeds of Undertaking**"), pursuant to which the Debtors are obligated to provide holders of the Debtors' tickets with assurance that, should the issuer of the ticket (usually a travel agent) fail to remit moneys to the Debtors paid by the customer to the travel agent, the Debtors will nonetheless honor the ticket. Absent these Foreign Deeds of Undertaking, the various governmental regulatory agencies require a travel agent to be bonded to provide similar assurances to customers. Because some travel agents abroad are not bonded and refuse to become bonded, absent the Foreign Deeds of Undertaking, unbonded travel agents abroad will be prohibited from selling Debtors' tickets. The revenue generated by the existence of the Foreign Deeds of Undertaking far outweighs the costs associated with them. As of the Petition Date, the Debtors do not believe that

they have unpaid obligations under the Foreign Deeds of Undertaking. However, out of an abundance of caution, the Debtors seek the authority to pay all prepetition obligations, if any, under the Foreign Deeds of Undertaking.

**L.     The SAFI Arrangement**

81.     Pursuant to certain aviation requirements in the United Kingdom, air travel organizers, such as travel agents (the "**Air Travel Organizers**"), are required to carry Scheduled Airline Failure Insurance ("**SAFI**") to protect the public against, among other things, the failure of an airline. Although airlines are not parties to SAFI policies, certain actions taken by airlines, such as the filing of a chapter 11 petition, can invalidate the policies. If such policies are deemed to be ineffective, the Air Travel Organizers will not be able to protect consumers against the subsequent failure of an airline and, therefore, may immediately stop selling tickets for air travel on any airline that has filed for relief under chapter 11 or may file for bankruptcy relief in the future. Because the Debtors' ability to sell tickets in the United Kingdom is essential to their successful reorganization, the Debtors brokered a prepetition arrangement with International Passenger Protection Limited ("**IPP**") to prevent the cancellation of SAFI coverage for certain of the Debtors' Air Travel Organizers (the "**SAFI Arrangement**"). Under the SAFI Arrangement, the Debtors collateralized the risk undertaken by IPP by placing £3.585 million in an escrow account on September 9, 2005 (prior to the filing of the petitions), which will be returned to the Debtors thirty (30) days after their emergence from chapter 11, provided that no subsequent chapter 11 filing has been made within that time.

82.     For the twelve months ended July 31, 2005, revenue from United Kingdom travel agent sales totaled £80,338,336. Without the SAFI Arrangement, the

Debtors will likely experience severe disruption in their ability to sell tickets in the United Kingdom, which would seriously harm the Debtors' cash flow and would be devastating to the Debtors' market position and reputation in the United Kingdom. Therefore, the costs associated with the SAFI Arrangement are far outweighed by the revenue generated by doing business in the United Kingdom and the potential harm the Debtors would suffer if such SAFI Arrangement was not in place.

III.   **The Debtors Should Be Authorized To Assume the Assumed Contracts and Honor The Prepetition Obligations**

A.   **Assumption Pursuant To Section 365 Of The Bankruptcy Code**

83.   Section 365 of the Bankruptcy Code authorizes a debtor to assume its executory contracts and unexpired leases subject to the approval of the bankruptcy court. Section 365 provides, in pertinent part, that a debtor may assume executory contracts and leases, provided that all defaults under such agreements are cured or the debtor provides adequate assurance that defaults will be promptly cured and, if defaults exist, adequate assurance of future performance is provided by the debtor to the nondebtor party to such contracts or leases. *See* 11 U.S.C. §§ 365(a), (b)(1), (f)(2). The Debtors seek authority to pay any cure amounts they may owe pursuant to the Assumed Contracts. In addition, the Debtors submit that they have provided adequate assurance of future performance under the Assumed Contracts because they intend to meet their obligations and have sufficient financial wherewithal to do so.

84.   Once the statutory predicates to assumption are satisfied, as is the case here, the standard applied to determine whether the assumption of an unexpired lease or executory contract should be approved is the "business judgment" test, which is premised on the debtor's business judgment that the assumption is in its best interests. *See NLRB v.*

*Bildisco & Bildisco*, 465 U.S. 513, 523 (1984); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098-99 (2d Cir. 1993); *Control Data Corp. v. Zelman (In re Minges)*, 602 F.2d 38, 42 (2d Cir. 1979). This test is fundamentally identical to the standard for sales outside the ordinary course of business pursuant to section 363(b) of the Bankruptcy Code. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp. (In re Sharon Steel Corp.)*, 872 F.2d 36, 40 (3d Cir. 1989); *In re III Enterprises, Inc.*, 163 B.R. 453, 469 (Bankr. E.D. Pa. 1994) ("Generally, a court will give great deference to a debtor's decision to assume or reject an executory contract. A debtor need only show that its decision to assume or reject the contract is an exercise of sound business judgment – a standard which we have concluded many times is not difficult to meet.").

85. It is clear that the Assumed Contracts are executory contracts under section 365 because numerous parties have continuing obligations to perform under the Assumed Contracts. As a practical matter, the Debtors do not have competing suppliers, providers, or relationships to replace many of the vital functions served or benefits provided by the foregoing agreements. For instance, if the Debtors do not assume the Interline Agreements, the other airlines simply would not enter into new interline agreements with the Debtors as the existing agreements expire, or would condition the new agreements on onerous terms that would impose financial and operational burdens on the Debtors. Because of the importance of the Assumed Contracts to the Debtors' business, and because performance of the Assumed Contracts has been and will be beneficial and profitable to the Debtors and their estates, the assumption of these

contracts represents sound business judgment and, therefore, should be approved by the Court.

### B.    Procedures Providing for Notice and Opportunity for Hearing

86.    As the Debtors filed this Motion on the Petition Date, they were unable to give the counterparties to the Assumed Contracts prior notice pursuant to Bankruptcy Rules 6006 and 9014.[6] To satisfy the notice and hearing requirements of Bankruptcy Rules 6006 and 9014, the Debtors respectfully request that this Court grant the relief requested, provided that the Debtors comply with the notice provisions set forth herein through an order (the "**Order**").

87.    Within three (3) business days of the entry of the Order, the Debtors shall serve a copy of the Order and this Motion on (i) the Office of the United States Trustee for the Southern District of New York, (ii) those creditors holding the thirty largest unsecured claims against the Debtors' estate, (iii) those creditors holding the five largest secured claims against the Debtors and (iv) the counterparties to the Assumed Contracts reasonably identifiable by the Debtors (collectively, the "**Notice Parties**"). The Debtors submit that, pursuant to Bankruptcy Rules 6006 and 9014, notice of the assumption to the foregoing parties shall be sufficient.

88.    The deadline to file an objection ("**Objection**") to the Motion shall be 4:00 p.m. (prevailing Eastern Time) on the date that is fifteen (15) days after the date of the entry of the Order (the "**Objection Deadline**"). The Debtors submit that the foregoing satisfies rules 6006-1(a) and 9006-1 of the Local Bankruptcy Rules for the

---

[6] A proceeding to approve assumption of an executory contract is a contested matter requiring reasonable notice and opportunity for hearing. *See* Bankruptcy Rule 6006(a) ("A proceeding to assume, reject, or assign an unexpired lease… is governed by Rule 9014."); Fed. R. Bankr. P. 9014 ("In a contested matter . . . relief shall be requested by the motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought.").

Southern District of New York. An Objection shall be considered timely if it is (i) filed with the Court, One Bowling Green, New York, New York 10004-1408 and (ii) actually received by (a) the Office of the United States Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn: Greg M. Zipes, Esq., (b) attorneys for the Debtors, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017, Attn: Marshall S. Huebner, Esq., (c) attorneys for any official committee then-appointed in these cases, (d) attorneys to the agent for the Debtors' post-petition lenders, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153, Attn: George A. Davis and (e) attorneys for American Express Travel Related Services Company, Inc., Hahn & Hessen LLP, 488 Madison Avenue, New York, New York 10022, Attn: Jeffrey L. Schwartz and Joshua I. Divack, on or before the Objection Deadline.

89.     Unless otherwise ordered by the Court, a reply to an Objection may be filed with the Court and served on or before 12:00 p.m. (prevailing Eastern Time) on the day that is at least two (2) business days before the date of the applicable hearing.

90.     As to the assumption of any Assumed Contract or payment of any Prepetition Obligation to which no Objections are timely filed and served as set forth herein, the Debtors shall, on or after the Objection Deadline, submit to the Court a final order granting the relief requested herein, which order shall be submitted and may be entered with no further notice or opportunity to be heard afforded any party, and the Motion shall be approved *nunc pro tunc* to the Petition Date. If an Objection is timely filed, a hearing will be held to consider only the assumption of any Assumed Contract or payment of any Prepetition Obligation subject to such timely filed Objection, at a date and time to be established by the Court. The filing of such an Objection will not delay

the entry of an order approving the assumption of any Assumed Contract or payment of any Prepetition Obligation for which no objection has been filed.

91.     The foregoing notice procedures satisfy due process and the strictures of Bankruptcy Rule 9014 by providing the counterparties with notice and an opportunity to object and be heard at a hearing.  *See, e.g.*, *In re Drexel Burnham Lambert*, 160 B.R. 729 (S.D.N.Y. 1993) (indicating that providing an opportunity to present objections satisfies due process); *In re Colorado Mountain Cellars, Inc.*, 226 B.R. 244, 246 (D. Colo. 1998) (noting that a hearing is not required to satisfy Bankruptcy Rule 9014).  Furthermore, the proposed notice procedures protect the due process rights of the parties in interest without unnecessarily exposing the Debtors' estates to unwarranted administrative expenses.

### C.     Payment Of Prepetition Obligations

92.     Section 105(a) of the Bankruptcy Code empowers the Court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  A bankruptcy court's use of its equitable powers to "authorize the payment of pre-petition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept."  *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).  "Under 11 U.S.C. 105, a court can permit pre-plan payment of pre-petition obligations when essential to the continued operation of the debtor."  *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) (*citing Ionosphere Clubs*, 98 B.R. at 177).  The Debtors strongly believe that the uninterrupted supply of goods and services related to the Prepetition Obligations are imperative to the Debtors' ongoing operations and viability.

93.     The "necessity of payment" doctrine further supports the relief requested herein.  This doctrine recognizes the existence of the judicial power to authorize a debtor

in a reorganization case to pay prepetition claims where such payment is essential to the continued operation of the debtor. *Ionosphere Clubs*, 98 B.R. at 176; *see also In re Chateaugay Corp.*, 80 B.R. 279, 287 (S.D.N.Y. 1987). This doctrine is consistent with the paramount goal of chapter 11 − "facilitating the continued operation and rehabilitation of the debtor . . . ." *Ionosphere Clubs*, 98 B.R. at 176.

94. Similar relief has been granted in other large chapter 11 cases. *See*, *e.g.*, *In re Worldcom, Inc., et al.*, Case No. 02-13533 (ALG) (Bankr. S.D.N.Y. 2002); *In re Enron Corp., et al.*, Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. 2001); *In re AI Realty Marketing of New York, Inc.*, Case Nos. 01-40252 through 01-40290 (AJG) (Bankr. S.D.N.Y. 2001).

95. Moreover, courts have granted similar relief in airline reorganization cases. *See, e.g., In re US Airways Group, Inc., et al.,* Case No. 04-13819 (SSM) (Bankr. E.D. Va. Sept. 12, 2004); *In re Aerovias Nacionales de Colombia S.A. Avianca (In re Avianca, Inc.)*, Case Nos. 03-11678 and 03-11679 (ALG) (Bankr. S.D.N.Y. Mar. 21, 2003); *In re Hawaiian Airlines, Inc.*, Case No. 03-00817 (RJF) (Bankr. D. Haw. Mar. 21, 2003); *In re UAL Corp., et al.,* Case No. 02-48191 (ERW) (Bankr. N.D. Ill. 2002); *In re US Airways Group, Inc., et al.,* Case No. 02-83984 (SSM) (Bankr. E.D. Va. 2002).

96. Section 363(b)(1) of the Bankruptcy Code empowers the Court to allow the debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Debtors' decisions to use, sell or lease assets outside the ordinary course of business must be based upon the sound business judgment of the debtor. *See In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a section 363(b) application must find from the evidence presented

before him a good business reason to grant such application); *see also Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (same); *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 674 (Bankr. S.D.N.Y. 1989) (noting that standard for determining a section 363(b) motion is "good business reason").

97.     The business judgment rule is satisfied where "the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company" *Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993) (*quoting Smith v. Van Gorkom*, 488 A.2d 858, 872 (Del. 1985)).  In fact, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Committee of Asbestos Related Litigants and/or Creditors v. Johns Manville Corp. (In re Johns Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  Courts in this district have consistently and appropriately been loath to interfere with corporate decisions absent a showing of bad faith, self interest, or gross negligence and will uphold a board's decisions as long as they are attributable to any "rational business purpose." *In re Integrated Res. Inc.*, 147 B.R. at 656.

98.     The Debtors submit that the requested relief represents a sound exercise of the Debtors' business judgment and is justified under section 363(b), as well as under section 105(a) of the Bankruptcy Code.  The Prepetition Obligations represent a small percentage of the Debtors' total prepetition claims and their satisfaction contributes

greatly to the revenue-generating capability of the Debtors. As a practical matter, the Debtors do not have competing suppliers, providers, or relationships to serve or replace many of the vital functions served or benefits provided by the foregoing agreements. Honoring the Prepetition Obligations will enable the Debtors to provide a high level of service and to retain the confidence and goodwill of travelers, travel agents and other service providers. Absent this relief, the value of the Debtors' estates will suffer, possibly precipitously. Consequently, all of the Debtors' creditors will benefit if the requested relief is granted.

### D. Modification of the Automatic Stay

99.     Because the Interline Agreements, the Clearinghouse Agreements, the UATP Agreement, the ARC Agreements, the BSP Agreements and the Cargo Agreements provide for an ongoing mutual billing and settlement and adjustment process that necessarily entails continuing submission of billings to the Debtors and continuing setoffs of obligations owed to and obligations owed by the Debtors, the Debtors also request that the Court modify the automatic stay of Bankruptcy Code section 362(a) solely to the extent necessary to enable the counterparties to participate in routine billings and settlements in accordance with the Interline Agreements, the Clearinghouse Agreements, the UATP Agreement, the ARC Agreements, the BSP Agreements and the Cargo Agreements. Under Bankruptcy Code Section 362(d) the Court is authorized to modify the automatic stays "for cause." In this case the cause for modifying the stays is a direct function of the Debtors' assumption of the Interline Agreements, the Clearinghouse Agreements, the UATP Agreement, the ARC Agreements, the BSP Agreements and the Cargo Agreements. Reciprocal billing, setoffs and net settlement are an essential part of these agreements. Neither the Debtors nor the counterparties can perform under any of

these agreements unless they can submit and settle their mutual obligations as the agreements require.  Thus, the stay should be modified solely to the extent necessary to accommodate ordinary course billing and settlement under the Interline Agreements, the Clearinghouse Agreements, the UATP Agreement, the ARC Agreements, the BSP Agreements and the Cargo Agreements.  Similar relief has been granted by other courts. *See, e.g., In re US Airways Group, Inc.*, *et al.,* Case No. 04-13819 (SSM) (Bankr. E.D. Va. Sept. 12, 2004);  *In re UAL Corp., et al.*, Case No. 02-48191 (Bankr. N.D. Ill. 2002).

### Waiver of Memorandum of Law

100.    Pursuant to Local Bankruptcy Rule for the Southern District of New York 9013-1(b), because there are no novel issues of law presented herein, the Debtors respectfully request that the Court waive the requirement that the Debtors file a memorandum of law in support of this Motion.

### Notice

101.    No trustee, examiner, or creditors' committee has been appointed in these chapter 11 cases.  The Debtors have served notice of this Motion on (i) the Office of the United States Trustee for the Southern District of New York, (ii) those creditors holding the five largest secured claims against the Debtors' estates and (iii) those creditors holding the thirty largest unsecured claims against the Debtors' estates.

102.    No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE the Debtors respectfully request the Court grant the

Debtors the relief requested herein and such other and further relief as is just and proper.

Dated: New York, New York
September 14, 2005


By:   /s/ Marshall S. Huebner
       John Fouhey, Esq. (JF 9006)
       Marshall S. Huebner, Esq. (MH 7800)
       Benjamin S. Kaminetzky, Esq. (BK 7741)
       DAVIS POLK & WARDWELL
       450 Lexington Avenue
       New York, New York  10017
       Telephone:  (212) 450-4000
       Fax:  (212) 450-6539

       Attorneys for Debtors and
        Debtors in Possession

**Exhibit A**

**Bilateral Agreements**

## Bilateral Agreements

| Supplier/Vendor/Non-Delta Party Name | Document Title | Dept or Contact Name for Non-Delta Party | Street Address (1) | Street Address (2) | City | State or Province | Zip or Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| (Aloha) IslandAir | Baggage Transfer Agreement / Reduced Rate Agreement | R. Murashigi | 99 Kaplulu Place | | Honolulu | HI | 96819 | USA |
| ABX Air, Inc. d/b/a Airborne Express | Deicing Services | Mr. Dennis Manibusan | 145 Hunter Drive | | Wilmington | OH | 45177-9390 | USA |
| ABX Air, Inc. d/b/a Airborne Express | Master Agreement for Deicing/Anti-Icing Services | George Danison | 145 Hunter Drive | | Wilmington | OH | 45177 | |
| Adria Airways | InterlineTicketing and Baggage Agreement / Reduced Rate Agreement | Maja Markovic | Kuzmiceva 7 | | Ljubljana 61000 | | | Slovenia |
| AEGEAN AIRLINES | Interline Ticketing and Baggage Agreement | B. Bekes | 572 Vouliagmenis Ave | | Athens | | 16451 | Greece |
| Aer Lingus | InterlineTicketing and Baggage Agreement / Reduced Rate Agreement | Kevin Gormley | PO Box 180 Dublin Airport | | Dublin | | | Ireland |
| Aero California | Interline Ticketing and Baggage Agreement | Doug Lutfey | 1960 E. Grand Avenue | Suite 1000 | El Segundo | CA | 90245 | |
| Aeroflot - Russian International Airlines | Ground Handling Agreement | Ms. Valeri I. Bolshakov | 1384 Broadway 22nd Floor | | New York | NY | 10018 | USA |
| Aeroflot - Russian International Airlines | Standard Ground Handling Agreement | Zurab Sakhokia | 1384 Broadway | 22nd Floor | New York | NY | 10018 | |
| Aeroflot Russian Intl. Airlines | Interline Ticketing and Baggage Agreement | A. Filippov | 37 Leningradsky Peospekt | | Moscow 125167 | | | Russian Federation |
| Aerolineas Argentinas S.A. | Cargo Handling Agreement | General Manager-USA and Canada | 6205 Blue Lagoon Drive | Suite 350 | Miami | FL | 33126 | USA |
| Aerolineas Centrales De Colombia S.A. - (VX) | Diversion Handling Services Agreement | Rhonda Shire | 8125 NW 53rd Street | Suite 211 | Miami | FL | 33166 | United States |
| AEROLITORAL | Interline Ticketing and Baggage Agreement / Reduced Rate Agreement | I.G. Sanchez | Carretera a Miguel Aleman K.m. 22.8 | Parqued Industrial Stiva | Apodaca | Nuevo Leon | 66600 | Mexico |
| Aerolitoral, S.A. De C.V. | Master Agreement for Deicing/Anti-Icing Services | John Jones | 401 Isom Road | Suite 390 | San Antonio | TX | 78216 | |
| Aeromexico | InterlineTicketing and Baggage Agreement / Reduced Rate Agreement | Juan Garcia | Paseo de la Reforma 445 | 5th Floor | 06500 Mexico DF | | | Mexico |
| Aeromexpress SA de CV | Cargo Handling Agreement | Senior Vice President-Cargo | 222 North Sepulveda Blvd | Suite 1755 | El Segundo | CA | 90245 | USA |
| AEROPOSTAL | InterlineTicketing and Baggage Agreement / Reduced Rate Agreement | T. Guevara | Paseo Colon, Plaza Venezuela | Torre Polar Oeste, Piso 22 | Caracas | | 1050 | Venezuela |
| AEROSVIT | InterlineTicketing and Baggage Agreement / Reduced Rate | A. Drynko | Bldg. Shevchenko 58A | | Kiev | | 252032 | Ukraine |

# Bilateral Agreements

| Supplier/Vendor/Non-Delta Party Name | Document Title | Dept or Contact Name for Non-Delta Party | Supplier/Vendor/Non-Delta Party Address | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | Street Address (1) | Street Address (2) | City | State or Province | Zip or Postal Code | Country |
| Aerovias de Mexico, S.A. de C.V. | Standard Ground Handling Agreement | Jaime Bernal | 3663 N. Sam Houston Parkway East | Suite 500 | Houston | TX | 77032 | |
| Aerovias de Mexico, S.A. de C.V. | X-Ray Equipment Use Cost Sharing Agreement | Jaime Bernal | 3663 N. Sam Houston Parkway East | Suite 500 | Houston | TX | 77032 | |
| Aerovias Nacionales De Colombia S.A. - Avianca | Diversion Handling Services Agreement | Victor Gutierrez | 720 Fifth Avenue | 5th Floor | New York | NY | 10019-4107 | |
| Aerovias Nacionales De Colombia S.A. - Avianca | Ground Handling | Ms. Dora Nelly Carmona | 720 Fifth Avenue 5th Floor | | New York | NY | 10019-4107 | USA |
| Air 2000 | Interline Ticketing and Baggage Agreement | Graham Davey | Jetset House | Church Road | Lowfield Heath | Crawley | RH11O PQ | United Kingdom |
| Air 2000 Limited | Standard Ground Handling Agreement | Mike Cooper | Commonwealth House | Chicago Ave, Manchester Airport | Manchester | | M90 3DP | United Kingdom |
| Air Algerie | Interline Ticketing and Baggage Agreement | Ali Djerraba | Direction Commerciale BD Zirout Youcef | | Algiers | | | Algeria |
| Air Atlanta, Icelandic | Charter Ground Handling Master Agreement | Elias Hoskuldsson | Hofdabakk9 | 110 Reykjavik | | | | Iceland |
| Air Atlanta, Icelandic | Standard Ground Handling Agreement | Elias Hoskuldsson | Hofdabakk9 | 110 Reykjavik | | | | Iceland |
| Air Baltic Corporation | Interline Ticketing and Baggage Agreement | Yanis Lapinsh | Riga Airport | | Riga LV 1053 | | | Latvia |
| Air Berlin | Interline Ticketing and Baggage Agreement | Thorston Scherzer | Saatwinkler Damm 42-43 | | Berlin | | 13627 | Germany |
| Air Botswana Corporation | Interline Ticketing and Baggage Agreement | B. Selotlegeng | PO Box 92 | | Gaborone | | | Botswana |
| Air Caledonie Intl. | Interline Ticketing and Baggage Agreement | O.Razavet | PO Box 3736 | | Noumea | | | New Caledonia |
| Air Canada | InterlineTicketing and Baggage Agreement / Reduced Rate Agreement | C. Hamel | 130 Bloor Street 5th Floor | | Toronto | ON | M5S 1P5 | Canada |
| Air Canada | Ground Services Agreement | Mr. Bob Warner | 19300 Ike Jones Road | John Wayne/ Orange County Airport | Santa Ana | California | 92707 | USA |
| Air Canada | Ground Handling Agreement | Mr. Guoliang Fan | 45 East 49th Street | | New York | NY | 10017 | USA |
| Air Canada | Standard Ground Handling Agreement | Michelle Chartrand | 7373 Cote Vertu West | Saint Laurent | Montreal | PQ | H4Y 1H4 | Canada |
| Air Canada | X-Ray Equipment Use Cost Sharing Agreement | Michelle Chartrand | 7373 Cote Vertu West | Saint Laurent | Montreal | PQ | H4Y 1H4 | Canada |
| AIR CARAIBES | Interline Ticketing and Baggage Agreement | G. Alexandre | Immeuble le Caducet | Morne Vergain | Point-a-Pitre | Abymes | 97139 | Guadeloupe |
| Air Cargo Inc | Cargo Handling Services Agreement | James R Morrow | 1819 Bay Ridge Avenue | | Annapolis | MD | 21403 | USA |
| Air China Intl. Corporation | Interline Ticketing and Baggage Agreement | Ms. Hong, Jingrong | Room 1942, Jingxin Mansion, A-2, Dongsanhuan Bei Road | | Beijing 100027 | | | China |

# Bilateral Agreements

| Supplier/Vendor/Non-Delta Party Name | Document Title | Dept or Contact Name for Non-Delta Party | Street Address (1) | Street Address (2) | City | State or Province | Zip or Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| | | | Supplier/Vendor/Non-Delta Party Address | | | | | |
| Air Dolomiti | Interline Ticketing and Baggage Agreement | A.Ferarris | Trieste Airport, Via Aquilela 46 | | 34077 Ronchi del Legionari, Gorizia | | | Italy |
| Air Europa | InterlineTicketing and Baggage Agreement / Reduced Rate Agreement | Bill Szymanski | Gran Via Asima, 23 | | Palma de Mallorca | | 7009 | Spain |
| AIR EUROPE | Interline Ticketing and Baggage Agreement / Reduced Rate Agreement | G. Perniceni | via g. B. Pirelli 20 | 4th Floor | Milan | | 20124 | Italy |
| Air France | InterlineTicketing and Baggage Agreement / Reduced Rate Agreement | Matilda Ianniello | 45 Rue de Paris | | 95747 Roissy CDG Cedex | | | France |
| Air France | Airport Annex to Airport Services Master Agreement | Ms. Jean O. Raines | 8525 Aero Drive | | Tallahassee | Florida | 32317 | USA |
| Air France | Cargo Handling Agreement | Bernard Frattini - Air France Cargo, Attn: NYC.FT | One Cross Island Plaza | | Rosedale | NY | 11422 | USA |
| Air France Compagnie Nationale | Standard Ground Handling Agreement | Denis Hasdenteufel | JFK International Airport | Building 52 | Jamaica | NY | 11430 | |
| Air India | InterlineTicketing and Baggage Agreement / Reduced Rate Agreement | P.K. Sinha | Air India Building Nariman Point | | Mumbai-21 | | | India |
| Air Inter Europe | InterlineTicketing and Baggage Agreement / Reduced Rate Agreement | Robert Neu | 1. Ave. du Marechal Devaux | | 91550 Paray Vieille Poste | | | France |
| Air Jamaica Express Limited | Standard Ground Handling Agreement | Tim L. Coon | Tinson Pen Aerodrome | Marcus Garvey Drive | Kingston 11 | | | Jamaica, West Indies |
| Air Jamaica Express Ltd. | Interline Ticketing and Baggage Agreement / Reduced Rate Agreement | S. Luben | P. O. Box 34 | | Kingston 10 | | | Jamaica |
| Air Jamaica Limited | Charter Ground Handling Master Agreement | Sue Rosen | 72-76 Harbor Street | | Kingston | | | Jamaica, West Indies |
| Air Jamaica Limited | Master Agreement for Deicing/Anti-Icing Services | Sue Rosen | 72-76 Harbor Street | | Kingston | | | Jamaica, West Indies |
| Air Jamaica Limited | Standard Ground Handling Agreement | Sue Rosen | 72-76 Harbor Street | | Kingston | | | Jamaica, West Indies |
| Air Jamaica Limited | X-Ray Equipment Use Cost Sharing Agreement | Sue Rosen | 72-76 Harbor Street | | Kingston | | | Jamaica, West Indies |
| Air Jamaica Ltd. | InterlineTicketing and Baggage Agreement / Reduced Rate Agreement | S. Luben | 72-76 Harbour Street | | Kingston | | | Jamaica |
| Air Lanka Ltd. | Interline Ticketing and Baggage Agreement | A.C. Mahajan | 37, York Street, P. O. Box 670 | Colombo 1 | | | | Sri Lanka |
| Air Lithuania | Interline Ticketing and Baggage Agreement | T. Laurinaitis | Veiveriu 132 | | 3018 Kaunas | | | Lithuania |

# Bilateral Agreements

| Supplier/Vendor/Non-Delta Party Name | Document Title | Dept or Contact Name for Non-Delta Party | Street Address (1) | Street Address (2) | City | State or Province | Zip or Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| | | | | | | Supplier/Vendor/Non-Delta Party Address | | |
| Air Luxor, S. A. | Standard Ground Handling Agreement | Miguel Lory | Luxor Plaza, Avenida da Republica 101 | 1050-190 | LISBOA | | | Portugal |
| Air Madagascar | Interline Ticketing and Baggage Agreement | R. Ranjatoelino | 31, Ave. de l'Independance | | Antananarivo | | | Madagascar |
| Air Malawi Ltd. | Interline Ticketing and Baggage Agreement | B. Kampondeni | Glyn Jones Road, Chibisa House, P. O. Box 84 | | Blantyre | | | Malawi |
| Air Malta Company Ltd. | InterlineTicketing and Baggage Agreement / Reduced Rate Agreement | G. Vella | Head Office | | Luqa | | | Malta |
| Air Marshall Islands, Inc. | Interline Ticketing and Baggage Agreement | Jack Cmono-Gun | P. O. Box 1319 | | Majuro 96960 | | | Marshall Islands |
| Air Mauritius | Interline Ticketing and Baggage Agreement | S. Seegobin | P. O. Box 60 | | Port Louis | | | Mauritius |
| Air Midwest | InterlineTicketing and Baggage Agreement / Reduced Rate Agreement | Mgr. Pass Bureau | 2203 Air Cargo Rd. | | Wichita | KS | 67277 | USA |
| AIR MOLDOVA STATE | Interline Ticketing and Baggage Agreement | P. Cheban | Chisinau Intl Airport | | Chisnau | | MD-2026 | Republic of Moldova |
| Air Nambia | Interline Ticketing and Baggage Agreement | F.H. Aldridge | P. O. Box 731 | | Windhoek 9000 | | | Namibia |
| Air Nevada Airlines, Inc./dba Pacific Wings | InterlineTicketing and Baggage Agreement / Reduced Rate | M. Caplan | P. O. Box 11105 | | Las Vegas | NV | 89111 | USA |
| Air New Zealand, Ltd. | InterlineTicketing and Baggage Agreement / Reduced Rate Agreement | J. Bateman | Private Bag 92007 | | Auckland 1 | | | New Zealand |
| Air Niugini | Interline Ticketing and Baggage Agreement | Craig Templeman | ANG House, Jacksons Airport, P.O. Box 7186 | | Boroko | | | Papua New Guinea |
| Air North | Interline Ticketing and Baggage Agreement | Joseph Sparling | P. O. Box 4998 | | Whitehorse | YT | Y1A ??? | Canada |
| Air Nostrum | Interline Ticketing and Baggage Agreement | G. Rubio | Via Sardegna 22 | | Rome | | 187 | Italy |
| Air Nova | Interline Ticketing and Baggage Agreement | See Air Canada | | | | | | |
| AIR ONE | Interline Ticketing and Baggage Agreement | P. Zegretti | Via Sardegna, 22 | | Rome | | 187 | Italy |
| Air Ontario | Interline Ticketing and Baggage Agreement | See Air Canada | | | | | | |
| Air Pacific Ltd. | InterlineTicketing and Baggage Agreement / Reduced Rate | Ernie Dutta | P. O. Box 9266, Nadi Airport | | | | | Fiji Islands |
| Air Plus Comet | Standard Ground Handling Agreement | Eliana Barco | 420 Lexington Avenue | Ste 2633-A | New York | NY | 10170 | |
| Air Seychelles Ltd. | Interline Ticketing and Baggage Agreement | Neil Pakey | P. O. Box 386, Victoria | | Mahe | | | Seychelles |
| Air Tahiti | InterlineTicketing and Baggage Agreement / Reduced Rate | C. Richmond | Boulevard Pomare | PO Box 314 | Papeete | Tahiti | | French Polynesia |
| Air Tahiti Nui | InterlineTicketing and Baggage Agreement / Reduced Rate | Brian Asgill | B.P. 1673-98713 | | Papeete | Tahiti | | French Polynesia |

# Bilateral Agreements

| Supplier/Vendor/Non-Delta Party Name | Document Title | Dept or Contact Name for Non-Delta Party | Street Address (1) | Street Address (2) | City | State or Province | Zip or Postal Code | Country |
|---|---|---|---|---|---|---|---|---|
| | | | | Supplier/Vendor/Non-Delta Party Address | | | | |
| Air Transport International, LLC | Master Agreement for Deicing/Anti-Icing Services | James L. Hobson, Jr. | 16808 Armstrong Avenue | | Irvine | CA | 92606 | |
| Air UK Ltd. | InterlineTicketing and Baggage Agreement / Reduced Rate Agreement | (Under KLM) | Stansted House, Stansted Airport | | Stansted, Essex | | CM24 1AE | UK |
| Air Ukraine | Ground Handling Agreement | Mr. Olexander Karassov | 420 Madison Avenue Suite 1001 | | New York | NY | 10017 | USA |
| Air Ukraine | Standard Ground Handling Agreement | Nicolai Kravets | 420 Madison Avenue | Suite 1001 | New York | NY | 10017 | |
| Air Ukraine Intl. | Interline Ticketing and Baggage Agreement | N. Kravets | 14 Prospect Peremogy | | 252135 Kiev | | | Ukraine |
| Air Vanuatu | Interline Ticketing and Baggage Agreement | Paul Ubrsnop | P. O. Box 148 | | Port Vila | | | Vanuatu |
| Air Wisconsin Airline Corp., d/b/a United Express | Master Agreement for Deicing/Anti-Icing Services | Tim Thatcher | W 6390 Challenger Drive | Suite 203 | Appleton | WI | 54915-9120 | |
| Air Wisconsin Airline Corp., d/b/a United Express | Standard Ground Handling Agreement | Tim Thatcher | W 6390 Challenger Drive | Suite 203 | Appleton | WI | 54915-9120 | |
| Air Wisconsin Airlines | Interline Ticketing and Baggage Agreement | Sheila Schabo | W. 6390 Challenger Drive, Ste 2 | | Appleton | WI | 54915-9120 | USA |
| Air Zena Georgian Airlines | Interline Ticketing and Baggage Agreement | Lia Naskidashvili | Shartava St., 40 | | Tbilisi | | 380060 | |
| Air Zimbabwe Corp. | InterlineTicketing and Baggage Agreement / Reduced Rate Agreement | P. Razika-Mangwiro | P. O. Box A.P. 1 | | Harare Airport | | | Zimbabwe |
| AIRBORNE EXPRESS | Master Agreement for Deicing/Anti-Icing Services | George Danison | 145 Hunter Drive | | Wilmington | OH | 45177 | |
| AIRTRAN | InterlineTicketing and Baggage Agreement / Reduced Rate Agreement | K. Healy | 9955 AirTran Blvd | | Orlando | FL | 32827 | USA |
| AirTran Airways Inc. | Ground Handling Agreement | Mr. Robert Alms | 9955 AirTran Boulevard | | Orlando | FL | 32827 | USA |
| AirTran Airways Inc. | Master Agreement for Deicing/Anti-Icing Services | Steven Kolski | 9955 AirTran Boulevard | | Orlando | FL | 32827 | |
| AirTran Airways Inc. | Master Agreement for Deicing/Anti-Icing Services | Steven Kolski | 9955 AirTran Boulevard | | Orlando | FL | 32827 | |
| AirTran Airways Inc. | X-Ray Equipment Use Cost Sharing Agreement | Robert Alms | 9955 AirTran Boulevard | | Orlando | FL | 32827 | |
| Alaska Airlines | Cargo Handling Agreement | Mgr-Contract Services | 19300 International Blvd | | Seattle | WA | 98188 | USA |
| Alaska Airlines, Inc. | InterlineTicketing and Baggage Agreement / Reduced Rate | Jeff Cacy | P. O. Box 68900 | | Seattle | WA | 98168 | USA |
| Alaska Airlines, Inc. | Charter Ground Handling Master Agreement | Bob Hicks | 19300 International Blvd. | | Seattle | WA | 98188 | |
| Alaska Airlines, Inc. | Diversion Handling Services Agreement | Bob Hicks | 19300 International Blvd. | | Seattle | WA | 98188 | |