DAVIS POLK & WARDWELL

450 Lexington Avenue

New York, New York 10017

Telephone:  (212) 450-4000

Fax:  (212) 450-6539

John Fouhey (JF 9006)

Marshall S. Huebner (MH 7800)

Benjamin S. Kaminetzky (BK 7741)

Attorneys for Debtors and
    Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| **In re:** | **Chapter 11 Case No.** |
| **DELTA AIR LINES, INC. et al.,** | **05-17923 (PCB)** |
|  | **(Jointly Administered)** |
| **Debtors.** | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DEBTORS' MOTION TO (i) ASSUME CERTAIN PRE-PETITION INSURANCE**
**AGREEMENTS, (ii) ENTER INTO CERTAIN POST-PETITION INSURANCE**
**AGREEMENTS AND (iii) AUTHORIZE CERTAIN RELATED TRANSACTIONS**

Delta Air Lines, Inc. ("**Delta**") and those of its subsidiaries that are

debtors and debtors in possession in these proceedings (collectively, the "**Debtors**"),[1]

respectfully represent:

---

[1] The Debtors are the following entities:  ASA Holdings, Inc.; Comair Holdings, LLC; Comair, Inc.; Comair Services, Inc.; Crown Rooms, Inc.; DAL Aircraft Trading, Inc.; DAL Global Services, LLC; DAL Moscow, Inc.; Delta AirElite Business Jets, Inc.; Delta Air Lines, Inc.; Delta Benefits Management, Inc.; Delta Connection Academy, Inc.; Delta Corporate Identity, Inc.; Delta Loyalty Management Services, LLC; Delta Technology, LLC; Delta Ventures III, LLC; Epsilon Trading, Inc.; Kappa Capital Management, Inc.; and Song, LLC.

## Background

1.　　On September 14, 2005 (the "**Petition Date**"), each Debtor commenced with this Court a voluntary case under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**").　The Debtors are authorized to operate their business and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.　The Debtors' cases are being jointly administered.

## Jurisdiction

2.　　The Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.　This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and may be determined by the Bankruptcy Court.　Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

3.　　By this motion (the "**Motion**"), the Debtors seek authorization pursuant to section 365(a) of the Bankruptcy Code and rule 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") to assume certain  pre-petition insurance policies and other related contracts (the "**Pre-Petition Agreements**")[2] associated with the Debtors' workers' compensation program (the "**Workers' Compensation Program**"), automobile liability program (the "**Auto Liability Program**"), general liability program (the "**General Liability Program**"), marine cargo legal liability program and environmental liability program (all of the foregoing, collectively, the "**Insurance Program**") entered into between the Debtors and ACE American Insurance Company, ESIS, Inc. and certain of their respective affiliates (collectively, "**ACE Companies**").

---

[2] The Pre-Petition Agreements include those policies and agreements that are listed on the table attached hereto as **Exhibit A** together with all renewals, endorsements and amendments thereto.

The Debtors also seek authorization to enter into and renew certain insurance policies and agreements related to the Insurance Program (the "**Post-Petition Agreements**," and together with the Pre-Petition Agreements, the "**Insurance Agreements**") with the ACE Companies and to execute and deliver documents related thereto.

4.      Pursuant to the Insurance Agreements, the Debtors agree to make certain payments and reimbursements to the ACE Companies, including, but not limited to, payments on account of: (i) premiums, (ii) premium taxes, surcharges and assessments, (iii) funding of paid loss deposit funds ("**PLDFs**") for losses under the policies and expenses allocated to such losses within the Debtors' insurance deductibles, (iv) other expenses within the Debtors' insurance deductible but not allocated to specific losses, (v) certain related claim service fees and (vi) certain paid losses and loss adjustment expenses.

5.      As security for payment and performance of the Debtors' obligations under the Insurance Agreements, the Debtors are required to provide to the ACE Companies (i) duly perfected, valid superpriority security interests in and liens on all collateral and security provided by the Debtors to the ACE Companies including, without limitation, all PLDFs, cash and a pledged collateral account and (ii) clean, irrevocable, evergreen letters of credit issued by a bank or other financial institution for the benefit of the ACE Companies, all of the foregoing in form, amount and substance acceptable to the ACE Companies.

6.      On or about January 26, 2005, New Sky, Ltd. ("**New Sky**"), a wholly-owned subsidiary of Delta that is not a debtor in these proceedings, entered into a letter of credit facility (the "**Letter of Credit Facility**") with Barclays Private Clients

International Limited.  Pursuant to the Letter of Credit Facility, Barclays Bank PLC UK and Barclays Bank PLC, New York (collectively, with Barclays Private Clients International Limited, "**Barclays**") issued a letter of credit (the "**Letter of Credit**") for the benefit of the ACE Companies, by order of New Sky as applicant for and on behalf of the Debtors.  To secure the Debtors' obligations to Barclays with respect to the Letter of Credit, cash collateral was transferred to Barclays.  The Debtors ask this Court to (i) approve the initial extension, and continuation, of the Letter of Credit, (ii) confirm that the automatic stay does not apply to Barclays' rights with respect to the collateral transferred (or to be transferred) to secure the Letter of Credit and (iii) approve the release by the Debtors of any avoidance or state fraudulent transfer actions in connection with such transfer.[3]

### The Insurance Program

7.      As previously described in the Debtors' First Day Wages Motion, in the ordinary course of the Debtors' businesses, the Debtors are required by the laws of various states and in which they operate to provide their employees with workers' compensation insurance coverage for claims arising from or related to their employment with the Debtors.

8.      Delta, Song, LLC ("**Song**"), Delta Technology, LLC ("**DT**"), Delta Benefit Management, Inc.("**DBMI**") and DAL Global Services, LLC ("**DGS**") maintain

---

[3] In addition to the Letter of Credit, Barclays has also issued, pursuant to the Letter of Credit Facility, a letter of credit (the "**Travelers Letter of Credit**") for the benefit of The Travellers Indemnity Company.  The Travelers Letter of Credit is secured by cash collateral and securities transferred by New Sky to Barclays.  The Debtors believe that both the Letter of Credit and the Travelers Letter of Credit, and the transfers of collateral related thereto, were authorized by orders entered by this Court on the Petition Date.  However, the Debtors seek the relief requested herein related to the Letter of Credit out of an abundance of caution and seek the same relief with respect to the Travelers Letter of Credit.  All of the business justifications discussed herein supporting the issuance of the Letter of Credit and the related transactions apply equally to the Travelers Letter of Credit and its related transactions.

required workers' compensation insurance for certain U.S.-based employees through the Workers' Compensation Program. In lieu of some insurance that would otherwise be required, certain of the Debtors also participate in certain self-insured programs, and ESIS, Inc. provides claim adjusting services for those programs. Under the Workers' Compensation Program, Delta's, Song's, DBMI's and DT's current and proposed deductible is $1,000,000 per occurrence and DGS's current and proposed deductible is $250,000 per occurrence. The policies cover certain claims as provided therein.

9. In addition to the Workers' Compensation Program, the Debtors have contracted with the ACE Companies to provide certain other insurance programs, including, without limitation, the Auto Liability Program and the General Liability Program. The Auto Liability Program and the General Liability Program each has a $1,000,000 per occurrence deductible.

10. The current expiration date (and proposed renewal date) for the Insurance Program is February 1, 2006. The Insurance Program requires that the Debtors maintain PLDFs, which are under the control of the ACE Companies, for the payment of losses and expenses within the deductibles. The PLDFs are replenished daily by Delta, Song, DT and DMBI and monthly by DGS, and from which losses are paid. As discussed above, the Insurance Program also requires the Debtors to provide letters of credit, cash and cash equivalents as security for their obligations to the ACE Companies. The required security for the Pre-Petition Agreements currently totals approximately $207 million, and currently consists of letters of credit and the ACE Companies' duly perfected, valid, first priority security interest in and lien on cash, PLDFs and a pledged collateral account.

## The Debtors' Business Judgment Dictates
## the Assumption of the Pre-Petition Agreements

11.     The Debtors seek authority to assume the Pre-Petition Agreements
pursuant to Section 365(a) of the Bankruptcy Code.

12.     Section 365(a) of the Bankruptcy Code provides that a debtor in
possession, "subject to the court's approval, may assume . . . any executory contract or
unexpired lease of the debtor."  11 U.S.C. § 365(a).

13.     The standard to be applied by a court in determining whether an executory
contract or unexpired lease should be assumed is the "business judgment" test, which is
premised upon the debtor's business judgment that assumption would be beneficial to its
estate.  *See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures)*, 4
F.3d 1095, 1099 (2d Cir. 1993).  "More exacting scrutiny would slow the administration
of the debtor's estate and increase its cost, interfere with the Bankruptcy Code's
provision for private control of administration of the estate, and threaten the court's
ability to control a case impartially."  *Richmond Leasing Co. v. Capital Bank, N.A.*, 762
F.2d 1303, 1311 (5th Cir. 1985).

14.     Upon finding that a debtor has exercised its sound business judgment in
determining that assumption of an agreement is in the best interests of its estate, the Court
should approve the assumption under section 365(a) of the Bankruptcy Code.  *See, e.g.,
In re Child World, Inc.*, 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992); *In re Ionosphere Clubs,
Inc.*, 100 B.R. 670, 673 (Bankr. S.D.N.Y. 1989); *In re TS Indus., Inc.*, 117 B.R. 682, 685
(Bankr. D. Utah 1990); *In re Del Grosso*, 115 B.R. 136, 138 (Bankr. N.D. Ill. 1990).

15.     The Debtors have determined that assumption of the Pre-Petition
Agreements is in the best interests of the Debtors and their estates.  As discussed above,

under the laws of various states and foreign jurisdictions in which they operate, the Debtors are required to maintain a workers' compensation program. Furthermore, the office of the United States Trustee has issued guidelines requiring chapter 11 debtors to obtain and maintain insurance, including workers' compensation and liability insurance. *See Operating Guidelines and Financial Reporting Requirements*, Office of the United States Trustee for Region 2.

16.     Because maintaining and renewing this insurance is both required and prudent, the Debtors believe that assumption of the various Pre-Petition Agreements is essential to preserve the Debtors' businesses and preserve the value of the Debtors' estates for all creditors. Moreover, the Pre-Petition Agreements are the result of extensive negotiation between the Debtors and the ACE Companies. For these reasons, the Debtors submit that it would be an exercise of sound business judgment to assume the Pre-Petition Agreements.

17.     When assuming an executory contract, section 365(b) of the Bankruptcy Code requires that the debtor cure any defaults under the contract or provide adequate assurance that it will promptly cure such defaults. 11 U.S.C. § 365(b)(1)(A). If there has been a default, the debtor must also provide adequate assurance of future performance under the contract. 11 U.S.C. § 365(b)(1)(C).

18.     Having exercised the authority received pursuant to the Debtors' First Day Wages Motion to pay all insurance-related amounts (whether due and payable before or after the Petition Date), the Debtors do not believe that there are any uncured defaults under the Pre-Petition Agreements. However, if there are uncured defaults under the Pre-

Petition Agreements, the Debtors are prepared to cure them and provide adequate assurance of future performance under section 365 of the Bankruptcy Code.

### Entry Into the Post-Petition Agreements is an Exercise of Sound Business Judgment and Should be Approved

19. The Debtors also seek an order (i) authorizing them to enter into and renew, annually or as appropriate, the Insurance Agreements pursuant to Section 363 of the Bankruptcy Code and to execute and deliver all related documents and agreements and to perform their obligations thereunder, without further order of the Court; (ii) authorizing them to deliver, or cause to be delivered to the ACE Companies, the PLDFs, letters of credit, and other collateral and security and increases thereto, as required under the Insurance Agreements, without further order of the Court; (iii) granting to the ACE Companies superpriority security interests in and liens on the collateral and security provided by the Debtors to the ACE Companies, including but not limited to the PLDFs, pursuant to section 364(d) of the Bankruptcy Code and (iv) granting to the ACE Companies an administrative expense claim under section 503(b)(1)(A) of the Bankruptcy Code for all payment and reimbursement obligations of the Debtors under the Insurance Agreements. The Debtors also request that, in connection with this Motion, the ACE Companies be expressly authorized to use and apply all collateral and security and payments without further order of the Court to the extent permitted under the Insurance Agreements, and for these purposes the Debtors request that the Court grant the ACE Companies relief from the automatic stay imposed by section 362 of the Bankruptcy Code.

20. Further, the Debtors request that they be granted the right to provide additional collateral and security, including letters of credit, if necessary under the

Insurance Agreements without further order of the Court. In addition, in the event the Debtors do not make any payment, or provide any collateral, security or letter of credit required by, or otherwise default under, the Insurance Agreements, the Debtors request, as additional adequate protection to the ACE Companies, that the ACE Companies be authorized to cancel the policies, without further order of the Court, and for these purposes the Debtors request that the Court grant the ACE Companies relief from the automatic stay imposed by section 362 of the Bankruptcy Code.

21. Section 363(b)(1) of the Bankruptcy Code authorizes a debtor to "use" property other than in the ordinary course of business. Courts in the Second Circuit and elsewhere have required that decisions to use property outside of the ordinary course of business be based upon the sound business judgment of the debtor. *See In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a section 363(b) application must find from the evidence presented a good business reason to grant such application); *see also Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1071 (2d Cir. 1983) (same); *Stephens Indus. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) (holding that a bankruptcy court can authorize an action under section 363(b)(1) "when a sound business purpose dictates such action"); *Official Comm. of Unsecured Creditors v. Raytech Corp. (In re Raytech Corp.)*, 190 B.R. 149, 151 (Bankr. D. Conn. 1995); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (noting that standard for determining a section 363(b) motion is "good business reason"); *In re Phoenix Steel Corp.*, 82 B.R. 334, 335-36 (Bankr. D. Del. 1987) (stating that judicial approval of a section 363 motion requires that a good business reason exist for the requested relief). As Judge Lifland has written, "[w]here the debtor

articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *In re Johns-Manville Corp.*, 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986).

22.     The Debtors submit that, for the same reasons discussed above in the context of the assumption of the Pre-Petition Agreements, entering into the Post-Petition Agreements and providing any required collateral and security to the ACE Companies, as required thereunder, represents a sound exercise of the Debtors' business judgment, is for a valid business purpose, and the terms of the Post-Petition Agreements are fair and reasonable. For identical reasons, the Post-Petition Agreements are also in the best interests of the Debtors and their estates.

23.     Without the insurance coverage provided by the Post-Petition Agreements, the Debtors would be unable to comply with contractual, state law and other regulatory insurance requirements or satisfy the U.S. Trustee debtor in possession guidelines with respect to maintaining adequate insurance coverage. These things would jeopardize the Debtors' business operations and the value of their estates.

24.     The Debtors submit that it is appropriate to provide (i) collateral and security to the ACE Companies, as required by the Insurance Agreements, (ii) superpriority security interests in and liens on all such collateral and security pursuant to section 364(d) of the Bankruptcy Code and (iii) administrative expense status pursuant to section 503(b)(1)(A) of the Bankruptcy Code for all payment and reimbursement obligations of the Debtors under the Insurance Agreements. Agreements such as these are reasonable under the circumstances and commonplace in the insurance industry, and the Debtors would be unable to obtain the insurance or enter into the Post-Petition

Agreements otherwise. Furthermore, there is adequate protection of the interests, if any, of other secured creditors.

### New Sky

25.     As discussed above, on January 26, 2005, New Sky obtained the Letter of Credit from Barclays on behalf of the Debtors for the benefit of the ACE Companies as security for the Insurance Program and as a condition for the ACE Companies' renewal of the Insurance Program on February 1, 2005. In order for New Sky to obtain the Letter of Credit for the Debtors, the Debtors transferred funds to New Sky to be posted with Barclays as cash collateral. Without receiving such collateral, Barclays would not have issued the Letter of Credit required by the Debtors to operate their businesses in the ordinary course of their on-going operations. The Debtors respectfully submit that these transfers – to a wholly owned subsidiary of Delta and for the direct benefit of the Debtors – were valid, provided an immediate, tangible and clear benefit to the Debtors' estates and are not subject to avoidance under the Bankruptcy Code or any state fraudulent transfer or similar law. The parties have requested, as a condition to renewing the Letter of Credit and the Insurance Program (which the Debtors require in the ordinary course of their business operations), that the form of order release any such actions.

26.     Furthermore, the Debtors submit that the automatic stay set forth in section 362 of the Bankruptcy Code does not apply to the relationship between Barclays and New Sky, as neither is a debtor in these or any other proceedings under the Bankruptcy Code. Accordingly, the attached form of order clarifies, for the avoidance of doubt, that Barclays is authorized, subject to all applicable terms of the Letter of Credit, to liquidate and use any collateral, including cash collateral, that secures the Letter of Credit.

## **Waiver of Memorandum of Law**

27.     Because the relevant facts and law are detailed herein, the Debtors request that the Court waive the requirement that the Debtors file a separate memorandum of law in support of this Application.

## **Notice**

28.     The Debtors will serve notice of this Motion on those parties and in the manner described in the Court's Order Approving Notice, Case Management and Administrative Procedures, dated October 6, 2005.

29.     No previous request for the relief sought herein has been made by the Debtors to this or any other court.

WHEREFORE, for the above stated reasons, the Debtors respectfully request this Court grant the Debtors the relief requested herein and such other and further relief as is just and proper.

New York, New York
Dated: December 21, 2005

By:     /s/ Marshall S. Huebner
        Marshall S. Huebner (MH 7800)
        DAVIS POLK & WARDWELL
        450 Lexington Avenue
        New York, New York  10017
        Telephone:  (212) 450-4000
        Fax:  (212) 450-6539

        Attorneys for Debtors and
          Debtors in Possession

# Exhibit A
## List of Pre-Petition Agreements

| Policy Period | Policy Number | Insurer (current name) | Named insured | Coverage | Program Agreement and Relevant Policy Exhibit/Addendum |
|---|---|---|---|---|---|
| Automatically renewable | ALP001054 | Currently Indemnity Insurance Company of North America and previously Insurance Company of North America | Delta Air Lines, Inc. | Marine Cargo | |
| 2/1/1992-2/1/1993 | SCF C34238091 | PEIC | Delta Air Lines, Inc. | WC (Retro) | Paid Loss Retro Agreement (2/1/1992) (Exhibit A), and Agreement for Workers' Compensation Residual Market Assessments — 1992 Paid Loss Retro Programs (2/1/1992) (Attachment A) |
| 2/1/1992-2/1/1993 | WLR C2513185A | PEIC | Delta Air Lines, Inc. | WC (Deductible) | Deductible Workers' Compensation Agreement (2/1/1992) (Exhibit A), and Agreement for Workers' Compensation Residual Market Assessments — 1992 Deductible WC Programs (2/1/1992) Attachment A |
| 2/1/1992-2/1/1993 | WLR C3423808A | INA Surplus Insurance Company | Delta Air Lines, Inc. | WC (Deductible) | Deductible Workers' Compensation Agreement (2/1/1992) (Exhibit A) |
| 2/1/1993-2/1/1994 | SCF C39545032 | PEIC | Delta Air Lines, Inc. | WC (Retro) | Casualty Insurance Program Agreement and Workers' Compensation Program Aggregate Agreement (2/1/1993) |
| 2/1/1993-2/1/1994 | SCF C34241132 | PEIC | Delta Air Lines, Inc. | WC (Retro) | Casualty Insurance Program Agreement and Workers' Compensation Program Aggregate Agreement (2/1/1993) |
| 2/1/1993-2/1/1994 | WLR C39545020 | PEIC | Delta Air Lines, Inc. | WC (Deductible) | Casualty Insurance Program Agreement and Workers' Compensation Program Aggregate Agreement (2/1/1993) |
| 2/1/1993-2/1/1994 | WLR C34241120 | PEIC | Delta Air Lines, Inc. | WC (Deductible) | Casualty Insurance Program Agreement and Workers' Compensation Program Aggregate Agreement (2/1/1993) |
| 2/1/1994-2/1/1995 | SCF C40665961 | PEIC | Delta Air Lines, Inc. | WC (Retro) | Casualty Insurance Program Agreement (2/1/1994) (Exhibit A) |

| Policy Period | Policy Number | Insurer (current name) | Named insured | Coverage | Program Agreement and Relevant Policy Exhibit/Addendum |
|---|---|---|---|---|---|
| 2/1/1994-2/1/1995 | SCF C40665857 | PEIC | Delta Air Lines, Inc. | WC (Retro) | Casualty Insurance Program Agreement (2/1/1994) (Exhibit A) |
| 2/1/1994-2/1/1995 | WLR C40665845 | PEIC | Delta Air Lines, Inc. | WC (Deductible) | Casualty Insurance Program Agreement (2/1/1994) (Exhibit A) |
| 2/1/1994-2/1/1995 | WLR C4066595A | PEIC | Delta Air Lines, Inc. | WC (Deductible) | Casualty Insurance Program Agreement (2/1/1994) (Exhibit A) |
| 2/1/1994-2/1/1995 | WLR C38997786 | ACE Insurance Company of Texas | Delta Air Lines, Inc. | WC (Deductible) | Casualty Insurance Program Agreement (2/1/1994) (Exhibit A) |
| 2/1/1994-2/1/1995 | CTP G15953201 | Century Indemnity Company | Delta Air Lines, Inc. | GL (Contractual Indemnification Liability) | Casualty Insurance Program Agreement (2/1/1994) (Exhibit A) |
| 2/1/1994-2/1/1995 | XWC 11447 | ACE American | Delta Air Lines, Inc. | Specific Excess WC | |
| 2/1/1995-2/1/1996 | SCF C41415101 | ACE Insurance Company | Delta Air Lines, Inc. | WC (Retro) | Casualty Insurance Program Agreement (2/1/1995) (Exhibit A) |
| 2/1/1995-2/1/1996 | WLR C41415071 | ACE American | Delta Air Lines, Inc. | WC (Deductible) | Casualty Insurance Program Agreement (2/1/1995) (Exhibit A) |
| 2/1/1995-2/1/1995 | WLR C41415095 | ACE American | Delta Air Lines, Inc. | WC (Deductible) | Casualty Insurance Program Agreement (2/1/1995) Exhibit A to Agreement |
| 2/1/1995-2/1/1996 | WLR C4141 5034 | Bankers Standard Insurance Company | Delta Air Lines, Inc. | WC (Deductible) | Casualty Insurance Program Agreement (2/1/1995) (Exhibit A) |
| 2/1/1995-2/1/1996 | WLR C4 1415083 | ACE American | Delta Air Lines, Inc. | WC (Deductible) | Casualty Insurance Program Agreement (2/1/1995) (Exhibit A) |
| 2/1/1995-2/1/1996 | CTP G15954498 | Century Indemnity Company | Delta Air Lines, Inc. | GL (Contractual Indemnification Liability) | Casualty Insurance Program Agreement (2/1/1995) (Exhibit A) |
| 2/1/1996-2/1/1997 | CCS C41969155 | ACE American | Delta Air Lines, Inc. | WC (Retention) | Casualty Insurance Program Agreement (2/1/1996) (Exhibit A) |
| 2/1/1996-2/1/1997 | WLR C41969143 | ACE American | Delta Air Lines, Inc. | WC (Deductible) | Casualty Insurance Program Agreement (2/1/1996) (Exhibit A) |
| 2/1/1996- | WLR C4196912A | ACE American | Delta Air Lines, Inc. | WC (Deductible) | Casualty Insurance Program Agreement (2/1/1996) |

| Policy Period | Policy Number | Insurer (current name) | Named insured | Coverage | Program Agreement and Relevant Policy Exhibit/Addendum |
|---|---|---|---|---|---|
| 2/1/1997 | | | | | (Exhibit A) |
| 2/1/1996-2/1/1997 | WLR C4196909A | Bankers Standard Insurance Company | Delta Air Lines, Inc. | WC (Deductible) | Casualty Insurance Program Agreement (2/1/1996) (Exhibit A) |
| 2/1/1996-2/1/1997 | CTP G17389725 | Illinois Union Insurance Company | Delta Air Lines, Inc. | GL (Contractual Indemnification Liability Policy) | Casualty Insurance Program Agreement (2/1/1996) (Exhibit A) |
| 2/1/1996-2/1/1997 | ISA H0188010A | Indemnity Insurance Company of North America | Delta Air Lines, Inc. | AL | Agreement (2/1/1996) |
| 2/1/1997-2/1/1998 | CCS C4227894-4 | PEIC | Delta Air Lines, Inc. | WC (Retention) | Casualty Insurance Program Agreement (2/1/1997) (Exhibit A) |
| 2/1/1997-2/1/1998 | WLR C42278932 | PEIC | Delta Air Lines, Inc. | WC (Deductible) | Casualty Insurance Program Agreement (2/1/1997) (Exhibit A) |
| 2/1/1997-2/1/1998 | WLR C42278907 | ACE Insurance Company of Texas | Delta Air Lines, Inc. | WC (Deductible) | Casualty Insurance Program Agreement (2/1/1997) (Exhibit A) |
| 2/1/1997-2/1/1998 | WLR C42278920 | PEIC | Delta Air Lines, Inc. | WC (Deductible) | Casualty Insurance Program Agreement (2/1/1997) (Exhibit A) |
| 2/1/1997-2/1/1998 | CTP G1837966-1 | Illinois Union Insurance Company | Delta Air Lines, Inc. | GL(Contractual) | Casualty Insurance Program Agreement (2/1/1997) (Exhibit A) |
| 2/1/1997-2/1/1998 | ISA H00981151 | ACE Property and Casualty Insurance Company | Delta Air Lines, Inc. | AL | Agreement (2/1/1997) |
| 2/1/1997-2/1/1998 | 28PRB-3173 | ACE Insurance Company | Delta Air Lines, Inc. | AL | |
| 2/1/1997-2/1/1998 | XWC011696 | ACE American | Delta Air Lines, Inc. | Specific Excess WC | |
| 2/1/1997-2/1/1998 | CAC387118 | ACE INA Insurance | Delta Air Lines, Inc. | AL | |

| Policy Period | Policy Number | Insurer (current name) | Named insured | Coverage | Program Agreement and Relevant Policy Exhibit/Addendum |
|---|---|---|---|---|---|
| 2/1/1998-2/1/1999 | CCS C3656946-3 | PEIC | Delta Air Lines, Inc. | WC (Retention) | Casualty Insurance Program Agreement (2/1/1998) (Exhibit A) |
| 2/1/1998-2/1/1999 | WLR C3656945-1 | PEIC | Delta Air Lines, Inc. | WC (Deductible) | Casualty Insurance Program Agreement (2/1/1998) (Exhibit A) |
| 2/1/1998-2/1/1999 | WLR C3656947-5 | ACE Insurance Company of Texas | Delta Air Lines, Inc. | WC (Deductible) | Casualty Insurance Program Agreement (2/1/1998) (Exhibit A) |
| 2/1/1998-2/1/1999 | WLR C3656948-7 | PEIC | Delta Air Lines, Inc. | WC (Deductible) | Casualty Insurance Program Agreement (2/1/1998) (Exhibit A) |
| 2/1/1998-2/1/1999 | ISA H07318911 | PEIC | Delta Air Lines, Inc. | AL | Agreement (2/1/1998) |
| 2/1/1998-2/1/1999 | HDO G1931130 | PEIC | Delta Air Lines, Inc. | GL | |
| 2/1/1998-2/1/1999 | XWC011785 | ACE American | Delta Air Lines, Inc. | Specific Excess WC | |
| 2/1/1999-2/1/2000 | ISA H07679786 | PEIC | Delta Air Lines, Inc. | AL | Combined Multi-Line Program Agreement (2/1/1999) (1999 Addendum) |
| 2/1/1999-2/1/2000 | WLR C42468964 | PEIC | Delta Air Lines, Inc. | WC (Deductible) | Combined Multi-Line Program Agreement (2/1/1999) (1999 Addendum) |
| 21/11999-2/1/2000 | SCF C4246899A | PEIC | Delta Air Lines, Inc. | WC (Retro) | Combined Multi-Line Program Agreement (2/1/1999) (1999 Addendum) |
| 2/1/1999-2/1/2000 | XWC011880 | ACE American | Delta Air Lines, Inc. | Specific Excess WC | |
| 2/1/2000-2/1/2001 | HDO G19903667 | PEIC | Delta Air Lines, Inc. | GL | Combined Multi-Line Program Agreement (2/1/2000) (2000 Addendum) |
| 2/1/2000-2/1/2001 | HDO G1990362A | PEIC | Delta Air Lines, Inc. | GL | Combined Multi-Line Program Agreement (2/1/2000) (2000 Addendum) |
| 2/1/2000-2/1/2001 | ISA H07571148 | PEIC | Delia Air Lines, Inc. | AL | Combined Multi-Line Program Agreement (2/1/2000) (2000 Addendum) |
| 2/1/2000-2/1/2001 | WLR C42652428 | PEIC | Delta Air Lines, Inc. | WC (Deductible) | Combined Multi-Line Program Agreement (2/1/2000) (2000 Addendum) |
| 2/1/2000-2/1/2001 | SCF C42652386 | PEIC | Delta Air Lines, Inc. | WC (Retro) | Combined Multi-Line Program Agreement (21/1/2000) (2000 Addendum) |
| 2/1/2000- | XWC011942 | ACE American | Delta Air Lines, Inc. | Specific Excess WC | |

| Policy Period | Policy Number | Insurer (current name) | Named insured | Coverage | Program Agreement and Relevant Policy Exhibit/Addendum |
|---|---|---|---|---|---|
| 2/1/2001 | | | | | |
| 2/1/2001-2/1/2002 | HDO G20577101 | PEIC | Delta Air Lines, Inc. | GL | Third Party Deductible Program Agreement (2/1/2001) (2001 Addendum) |
| 2/1/2001-2/1/2002 | HDO G20577149 | PEIC | Delta Air Lines, Inc. | GL | Third Party Deductible Program Agreement (2/1/2001) (2001 Addendum) |
| 2/1/2001-2/1/2002 | ISA H0796853A | PEIC | Delta Air Lines, Inc. | AL | Third Party Deductible Program Agreement (2/1/2001) (2001 Addendum) |
| 2/1/2001-2/1/2002 | WLR C43143979 | PEIC | Delta Air Lines, Inc. | WC (Deductible) | Combined Deductible Workers' Compensation/Paid Loss Retro Program Agreement (2/1/2001) (2001 Addendum) |
| 2/1/2001-2/1/2002 | SCF C43144017 | PEIC | Delta Air Lines, Inc. | WC (Retro) | Combined Deductible Workers' Compensation/Paid Loss Retro Program Agreement (2/1/2001) (2001 Addendum) |
| 2/1/2001-2/1/2002 | XWC014019 | ACE American | Delta Air Lines, Inc. | Specific Excess WC | |
| 2/1/2002-2/1/2003 | WLR C43124778 | PEIC | Delta Air Lines, Inc. | WC (Deductible) | Combined Deductible Workers' Compensation/Paid Loss Retro Program Agreement (2/1/2001) (2002 Addendum) |
| 2/1/2002-2/1/2003 | SCF C4312481A | PEIC | Delta Air Lines, Inc. | WC (Retro) | Combined Deductible Workers' Compensation/Paid Loss Retro Program Agreement (2/1/2001) (2002 Addendum) |
| 2/1/2002-2/1/2003 | HDO G20577861 | PEIC | Delta Air Lines, Inc. | GL | Third Party Deductible Program Agreement (2/1/2001) (2002 Addendum) |
| 2/1/2002-2/1/2003 | HDO G20577824 | PEIC | Delta Air Lines, inc. | GL | Third Party Deductible Program Agreement (2/1/2001) (2002 Addendum) |
| 2/1/2002-2/1/2003 | ISA H07969727 | PEIC | Delta Air Lines, Inc. | AL | Third Party Deductible Program Agreement (2/1/2001) (2002 Addendum) |
| 2/1/2002-2/1/2003 - | 28PRB-0200047 | ACE Insurance Company | Delta Air Lines, Inc. | AL | Third Party Deductible Program Agreement (2/1/2001) (2002 Addendum) |
| 2/1/2002-2/1/2003 | WLR C4303120A | PEIC | DAL Global Services, Inc. | WC (Deductible) | Deductible WorkerS' Compensation Program Agreement (2/1/2002) (2002 Addendum) |
| 2/1/2002-2/1/2003 | XWC014131 | ACE American | Delta Air Lines, Inc. | Specific Excess WC | |
| 2/1/2003-2/1/2004 | WLR C43502396 | ACE American | Della Air Lines, Inc. | WC (Deductible) | Combined Deductible Workers' Compensation/Paid Loss Retro Program Agreement (2/1/2001) (2003 Addendum) |
| 2/1/2003-2/1/2004 | ISA H07934117 | ACE American | Delta Air Lines, Inc. | AL | Third Party Deductible Program Agreement (2/1/2001) (2003 Addendum) |
| 2/1/2003- | 28PRB-200047 | ACE Insurance | Delta Air Lines, Inc. | AL | Third Party Deductible Program Agreement (2/1/2001) |

| Policy Period | Policy Number | Insurer (current name) | Named insured | Coverage | Program Agreement and Relevant Policy Exhibit/Addendum |
|---|---|---|---|---|---|
| 2/1/2004 | | Company | | | (2003 Addendum) |
| 2/1/2003-2/1/2004 | HDO G21739376 | ACE American | Delta Air Lines, Inc. | GL | Third Party Deductible Program Agreement (2/1/2001) (2002 Addendum) |
| 2/1/2003-2/1/2004 | HDO G21739418 | ACE American | Delta Air Lines, Inc. | GL | Third Party Deductible Program Agreement (2/1/2001) (2003 Addendum) |
| 2/1/2003-2/1/2004 | SCF C43502438 | ACE American | Delta Air Lines, Inc. | WC (Retro) | Combined Deductible Workers' Compensation/Paid Loss Retro Program Agreement (2/1/2001) (2003 Addendum) |
| 2/1/2003-2/1/2004 | WLR C43502360 | ACE American | DAL Global Services, Inc. | WC (Deductible) | Deductible Workers' Compensation Program Agreement (2/1/2002) (2003 Addendum) |
| 2/1/2003-2/1/2004 | XWC014309 | ACE American | Delta Air Lines, Inc. | Specific Excess WC | |
| 2/1/2003-2/1/2004 | CTP G21739236 | Illinois Union Insurance Company | Delta Air Lines, Inc. | GL (Contractual Indemnification Liability) | |
| 5/28/2003-5/28/2004 | UST G21742351 | Illinois Union Insurance Company | Delta Air Lines, Inc. | Storage Tank Liability | |
| 2/1/2004-2/1/2005 | WLR C4356199 | ACE American | Delta Air Lines, Inc. | WC (Deductible) | Combined Deductible Workers' Compensation/Paid Loss Retro Program Agreement (2/1/2001) (2004 Addendum) |
| 2/1/2004-2/1/2005 | ISA H088015521 | ACE American | Delta Air Lines, Inc. | AL | Third Party Program Agreement (2/1/2001) (2004 Addendum) |
| 2/1/2004-2/1/2005 | CAC 387118 | ACE INA Insurance | Delta Air Lines, Inc. | AL | Third Party Program Agreement (2/1/2001) (2004 Addendum) |
| 2/1/2004-2/1/2005 | 28PRB-200047 | ACE Insurance Company | Delta Air Lines, Inc. | AL | Third Party Program Agreement (2/1/2001) (2004 Addendum) |
| 2/1/2004-2/1/2005 | HDO G21695117 | ACE American | Delta Air Lines, Inc. | GL | Third Party Program Agreement (2/1/2001) (2004 Addendum) |
| 2/1/2004-2/1/2005 | HDO G21694599 | ACE American | Delta Air Lines, Inc. | GL | Third Party Program Agreement (2/1/200 1) (2004 Addendum) |
| 2/1/2004-2/1/2005 | SCF C43536187 | ACE American | Delta Air Lines, Inc. | WC (Retro) | Combined Deductible Workers' Compensation/Paid Loss Retro Program Agreement (2/1/2001) (2004 Addendum) |
| 2/1/2004-2/1/2005 | WLR C43967526 | ACE American | DAL Global Services, Inc. | WC (Deductible) | Deductible Workers' Compensation Program Agreement (2/1/2002) (2004 Addendum) |
| 2/1/2004- | XWC014585 | ACE American | Delta Air Lines, Inc. | Excess WC | |

| Policy Period | Policy Number | Insurer (current name) | Named insured | Coverage | Program Agreement and Relevant Policy Exhibit/Addendum |
|---|---|---|---|---|---|
| 2/1/2005 | | | | | |
| 2/1/2004-2/1/2005 | CTP G21694903 | Illinois Union Insurance Company | Delta Air Lines, Inc. | GL (Contractual Indemnification Liability) | |
| 5/28/2004-5/28/2005 | UST G21742351 002 | Illinois Union Insurance Company | Delta Air Lines, Inc. | Storage Tank Liability | |
| 2/1/2005-2/1/2006 | WLR C43539061 | ACE American | Delta Air Lines, Inc. | WC (Deductible) | Combined Deductible Workers' Compensation/Paid Loss Retro Program Agreement (2/1/2001) (2005 Addendum) |
| 2/1/2005-2/1/2006 | SCF C44184588 | ACE American | Delta Air Lines, Inc. | WC (Retro) | Combined Deductible Workers' Compensation/Paid Loss Retro Program Agreement (2/1/2001) (2005 Addendum) |
| 2/1/2005-2/1/2006 | HDO G21708483 | ACE American | Delta Air Lines, Inc. | GL | Third Party Program Agreement (2/1/2001) (2005 Addendum) |
| 2/1/2005-2/1/2006 | HDO G21708471 | ACE American | Delta Air Lines, Inc. | GL | Third Party Program Agreement (2/1/2001) (2005 Addendum) |
| 2/1/2005-2/1/2006 | ISA H07935523 | ACE American | Delta Air Lines, Inc. | AL | Third Party Program Agreement (2/1/2001) (2005 Addendum) |
| 2/1/2005-2/1/2006 | 28PRB-200301 | ACE American | Delta Air Lines, Inc. | AL | Third Party Program Agreement (2/1/2001) (2005 Addendum) |
| 2/1/2005-2/1/2006 | CAC 387118 | ACE American | Delta Air Lines, Inc. | AL | Third Party Program Agreement (2/1/2001) (2005 Addendum) |
| 2/1/2005-2/1/2006 | WLR C43539206 | ACE American | DAL Global Services, LLC | WC (Deductible) | Deductible Workers' Compensation Program Agreement (2/1/2002) (2005 Addendum) |
| 2/1/2005-2/1/2006 | XWC C44184618 | ACE American | Delta Air Lines, Inc. | Specific Excess WC | |
| 2/1/2005-2/1/2006 | CTP G21708501 | Illinois Union Insurance Company | Delta Air Lines, Inc. | GL (Contractual Indemnification Liability) | |
| 5/28/2005-5/28/2006 | UST G21742351 003 | Illinois Union Insurance Company | Delta Air Lines, Inc. | Storage Tank Liability | |
| 9/16/2005-9/16/2006 | UST G23567647 001 | Illinois Union Insurance Company | Delta Connections Academy | Storage Tank Liability | |

**Abbreviations:**

PEIC = Pacific Employers Insurance Company
ACE American = ACE American Insurance Company

Century Indemnity Company is successor by merger to CIGNA Specialty Insurance Company, formerly known as California Union Insurance Company

ACE Insurance Company of Texas was formerly known as CIGNA Insurance Company of Texas

ACE Property and Casualty Insurance Company was formerly known as CIGNA Property and Casualty Insurance Company

ACE American Insurance Company was formerly known as CIGNA Insurance Company

INA Surplus Insurance Company was formerly known as Delaware Reinsurance Company

ACE Insurance Company was formerly known as CIGNA Insurance Company of Puerto Rico

ACE INA Insurance was formerly known as CIGNA Insurance Company of Canada

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
.                                                              :
.                                                              :
.                                                              :
**In re:**                                                     :
.                                                              : **Chapter 11 Case No.**
.                                                              :
**DELTA AIR LINES, INC., et al.,**                             : **05-17923 (PCB)**
.                                                              :
.                                                              : **(Jointly Administered)**
**Debtors.**                                                   :
.                                                              :
.                                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### ORDER AUTHORIZING (i) ASSUMPTION OF CERTAIN PRE-PETITION INSURANCE AGREEMENTS, (ii) ENTRY INTO CERTAIN POST-PETITION INSURANCE AGREEMENTS AND (iii) CERTAIN RELATED TRANSACTIONS

Upon the motion dated December 21, 2005 (the "**Motion**")[1] of Delta Air

Lines, Inc., and those of its subsidiaries that are debtors and debtors in possession in these

proceedings (collectively, the "**Debtors**"),[2] to (i) assume certain Pre-Petition Agreements,

(ii) enter into and renew certain Post-Petition Agreements and (iii) approve certain related

transactions, all as described more specifically in the Motion; and the Court having

jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C.

§ 1334 and the Standing Order of Referral of Cases to Bankruptcy Court Judges of the

District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting

C.J.); and consideration of the Motion and the requested relief being a core proceeding

---

[1] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to it in the Motion.

[2] The Debtors are the following entities: ASA Holdings, Inc.; Comair Holdings, LLC; Comair, Inc.; Comair Services, Inc.; Crown Rooms, Inc.; DAL Aircraft Trading, Inc.; DAL Global Services, LLC; DAL Moscow, Inc.; Delta AirElite Business Jets, Inc.; Delta Air Lines, Inc.; Delta Benefits Management, Inc.; Delta Connection Academy, Inc.; Delta Corporate Identity, Inc.; Delta Loyalty Management Services, LLC; Delta Technology, LLC; Delta Ventures III, LLC; Epsilon Trading, Inc.; Kappa Capital Management, Inc.; and Song, LLC.

the Bankruptcy Court can determine pursuant to 28 U.S.C. § 157(b)(2); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided in accordance with this Court's Case Management Order to (i) the Core Parties (as that term is defined in the Case Management Order) and (ii) counsel to the ACE Insurance Companies and Barclays, and it appearing that no other or further notice need be provided; and the relief requested in the Motion being in the best interests of the Debtors and their estates and creditors; and the Court having reviewed the Motion and having held a hearing with appearances of parties in interest noted in the transcript thereof (the "**Hearing**"); and the Court having determined that the legal and factual bases set forth in the Motion and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before the Court and after due deliberation and sufficient cause appearing therefor, it is

ORDERED that the relief requested in the Motion is hereby granted; and it is further

ORDERED that the assumption of the Pre-Petition Agreements is authorized and approved pursuant to section 365 of the Bankruptcy Code. The Pre-Petition Agreements are hereby assumed by the Debtors; and it is further

ORDERED that entry into and renewal of the Post-Petition Agreements is authorized pursuant to section 363 of the Bankruptcy Code and that the Debtors are further authorized to renew or extend the Post-Petition Agreements and provide collateral and security for such future renewals or extensions as may be necessary from time to time in the ordinary course of business without further order of this Court; and it is further

ORDERED that the Debtors are authorized to execute, deliver, implement and fully perform any and all obligations, instruments, documents and papers and to take any and all actions reasonably necessary or appropriate to perform all obligations contemplated under the Insurance Agreements, including, without limitation, the provision of additional collateral and security and the payment of all fees, charges and expenses required thereby; and it is further

ORDERED that the Debtors' obligations under the Insurance Agreements, to the extent not paid or reimbursed by the Debtors, shall be entitled to administrative expense priority under section 503(b)(1)(A) of the Bankruptcy Code; and it is further

ORDERED that, pursuant to section 364(d), the ACE Companies shall have duly perfected, valid, superpriority security interests in and liens upon all collateral and security provided by the Debtors to the ACE Companies to secure their obligations under the Insurance Agreements including, without limitation, all PLDFs, cash and the pledged collateral account (each as described in the Motion); and it is further

ORDERED that, the automatic stay set forth in section 362(a) of the Bankruptcy Code is lifted to allow the ACE Companies, solely pursuant to the terms of the Insurance Agreements, to (i) use the PLDF or any other collateral or (ii) cancel the Insurance Agreements upon any non-payment by the Debtors of any premium, or failure to provide any letter of credit or other collateral and security; or other default, and it is further

ORDERED that the pre-petition transfers by the Debtors to New Sky and the subsequent posting of collateral with Barclays as security for the issuance of (i) the Letter of Credit and (ii) the Travelers Letter of Credit provided a direct, tangible and clear

benefit to the Debtors' estates and shall not be subject to avoidance under the Bankruptcy Code or any state fraudulent transfer or similar law; and it is further

ORDERED that the automatic stay set forth in section 362 of the Bankruptcy Code does not apply, directly or indirectly, to the relationship between Barclays and New Sky, as neither is a debtor in these or any other proceedings under the Bankruptcy Code and Barclays is authorized, subject to all applicable terms of the Letter of Credit and the Travelers Letter of Credit, to liquidate and use any collateral, including cash collateral, that secures the Letter of Credit and the Travelers Letter of Credit without necessity of any further relief or action by this Court; and it is further

ORDERED that the foregoing shall apply to the initial extension of the Letter of Credit and the Travelers Letter of Credit and any continuation thereof by the parties; and it is further

ORDERED that nothing in this Order or the Motion shall be construed as prejudicing the rights of the Debtors to dispute or contest the amount of or basis for any claims in connection with or related to the Insurance Agreements, except as expressly provided herein; and it is further

ORDERED that this Order shall not be altered by any plan of reorganization of the Debtors.

Dated: _____ __, 2006
      New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE