**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                             :
**In re:**                                   :
                                             :      **Chapter 11 Case No.**
                                             :
**DELTA AIR LINES, INC., et al.,**           :      **05-17923 (ASH)**
                                             :
                                             :      **(Jointly Administered)**
**Debtors.**                                 :
                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## ORDER CONFIRMING DEBTORS' JOINT PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

The Debtors' Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code, dated

April 25, 2007 (attached hereto as Exhibit A, the "**Plan**"),[1] having been filed with this Court (the

"**Court**") by Delta Air Lines, Inc. ("**Delta**") and those of its subsidiaries that are debtors and debtors in

possession in these proceedings (collectively, the "**Debtors**")[2]; and the Court having entered, after due

notice and a hearing, an order dated February 7, 2007 (the "**Approval Order**"), pursuant to sections

105, 502, 1125, 1126 and 1128 of title 11 of the United States Code (the "**Bankruptcy Code**") and rules

2002, 3003, 3017 and 3018 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") (i)

approving the Debtors' Disclosure Statement, including all Appendices attached thereto (as amended,

the "**Disclosure Statement**"), (ii) approving solicitation packages and procedures for distribution

thereof, (iii) allowing and estimating certain claims for voting purposes, (iv) approving forms of ballots

and establishing voting procedures and (v) scheduling a hearing (the "**Confirmation Hearing**") and

establishing notice and objection procedures in respect of confirmation of the Plan; and the Disclosure

---

[1] Unless otherwise defined, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan.

[2] The Debtors are the following entities:  ASA Holdings, Inc.; Comair Holdings, LLC; Comair, Inc.; Comair Services, Inc.; Crown Rooms, Inc.; DAL Aircraft Trading, Inc.; DAL Global Services, LLC; DAL Moscow, Inc.; Delta AirElite Business Jets, Inc.; Delta Air Lines, Inc.; Delta Benefits Management, Inc.; Delta Connection Academy, Inc.; Delta Corporate Identity, Inc.; Delta Loyalty Management Services, LLC; Delta Technology, LLC; Delta Ventures III, LLC; Epsilon Trading, LLC; Kappa Capital Management, Inc.; and Song, LLC.

Statement having been transmitted to all holders of Claims in Delta Class 4, Delta Class 5, Delta

Class 6, Comair Class 4 and Comair Class 5 (collectively, the "**Voting Classes**") as provided for by the

Approval Order; and the various Plan schedules and Plan Supplements (collectively, the "**Plan**

**Supplements**") having been filed and served as required by the Plan; and the Confirmation Hearing

having been held before the Court on April 25, 2007 after due notice to holders of Claims and Interests

and other parties in interest in accordance with the Approval Order, the Bankruptcy Code and the

Bankruptcy Rules; and upon all of the proceedings had before the Court, and after full consideration of:

(i) each of the objections to confirmation of the Plan (the "**Objections**"); (ii) the memoranda in support

of confirmation of the Plan and replies to the Objections filed by (a) the Debtors, dated April 23, 2007

and (b) the Creditors' Committee, dated April 23, 2007, (iii) the declarations and/or affidavits filed with

the Court, including (a) the Declaration of Edward H. Bastian in Support of the Debtors' Joint Plan of

Reorganization Under Chapter 11 of the Bankruptcy Code (the "**Bastian Affidavit**"), (b) the Declaration

of Timothy R. Coleman in Support of the Debtors' Joint Plan of Reorganization Under Chapter 11 of the

Bankruptcy Code (the "**Coleman Affidavit**"), (c) the Affidavit of James Katchadurian of Bankruptcy

Services LLC Regarding the Methodology of the Tabulation of and Results of Voting with Respect to

the Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, and (d) the

Certification of Jane Sullivan of Financial Balloting Group LLC with Respect to the Tabulation of Votes

on the Debtors' Joint Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "**Vote**

**Certification**"), (collectively, the "**Affidavits**") and the testimony contained therein and any additional

testimony presented to the Court and (iv) all other evidence proffered or adduced at, memoranda and

objections filed in connection with and arguments of counsel made at the Confirmation Hearing; and

after due deliberation and sufficient cause appearing therefor,

It hereby is DETERMINED, FOUND, ADJUDGED, DECREED AND ORDERED THAT:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1.        Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)). The Court has jurisdiction over the Chapter 11 Cases pursuant to sections 157 and 1334 of title 28 of the United States Code.  Venue is proper pursuant to sections 1408 and 1409 of title 28 of the United States Code.  Confirmation of the Plan is a core proceeding pursuant to section 157(b)(2)(L) of title 28 of the United States Code, and this Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

2.        Commencement and Joint Administration of the Chapter 11 Cases.  On the Petition Date, each of the above-captioned Debtors commenced a case under chapter 11 of the Bankruptcy Code.  By prior order of the Court, the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 1015.  The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Cases.

3.        Judicial Notice.  The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed and orders entered thereon.  The Court also takes judicial notice of all evidence proffered or adduced and all arguments made at the hearings held before the Court during the pendency of these Chapter 11 Cases.

4.        Burden of Proof.  The Debtors have the burden of proving the elements of section 1129 of the Bankruptcy Code by a preponderance of the evidence, and they have met that burden as further found and determined herein.

5.     Notice; Transmittal and Mailing of Materials.

(a)     Due, adequate and sufficient notice of the Disclosure Statement, the Plan and the Confirmation Hearing, along with the deadlines for voting on and filing objections to the Plan, has been given to all known holders of Claims and Interests substantially in accordance with the procedures set forth in the Approval Order, and no other or further notice is or shall be required;

(b)     The Disclosure Statement, Plan, Ballots and Approval Order were transmitted and served in compliance with the Approval Order and the Bankruptcy Rules, and such transmittal and service were adequate and sufficient, and no further notice is or shall be required.  All procedures used to distribute the solicitation packages to the Voting Classes were fair, and conducted in accordance with the Bankruptcy Code and the Bankruptcy Rules and all other applicable rules, laws and regulations;

(c)     Adequate and sufficient notice of the Confirmation Hearing and other bar dates described in the Approval Order and the Plan have been given in compliance with the Bankruptcy Rules and the Approval Order, and no other or further notice is or shall be required; and

(d)     The filing with the Court and service of the version of the Plan attached as Appendix A to the Disclosure Statement, and the filing of the Plan on April 23, 2007 and the disclosure of any further modifications on the record of the Confirmation Hearing, constitute due and sufficient notice of the Plan and all later modifications thereto.

6.     Voting.  Votes on the Plan were solicited after disclosure of "adequate information" as defined in section 1125 of the Bankruptcy Code.  As evidenced by the Vote Certification, votes to accept the Plan have been solicited and tabulated fairly, in good faith and in a manner consistent with the Approval Order, the Bankruptcy Code and the Bankruptcy Rules.

7.     Plan Supplements.  On March 20, 2007, the Debtors filed certain Plan Supplements, as described in Section 17.6 of the Plan.  Additional Plan Supplements were filed on March 30, 2007.  In addition, the Debtors filed schedules to the Plan on several different dates.  All such Plan Supplements

4

comply with the terms of the Plan, and the filing and notice of such documents was good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Approval Order, and no other or further notice is or shall be required.

8.    Plan Modifications (11 U.S.C. § 1127).    Subsequent to solicitation, the Debtors made certain non-material modifications to the Plan (the "**Plan Modifications**").    Among these modifications, the Debtors modified the Plan to describe (a) the agreement dated as of June 22, 2001 (and as modified by Letter of Agreement 1-07, executed as of March 2, 2007) between Comair and the Air Line Pilots in the service of Comair, as represented by ALPA (the "**ALPA Comair CBA**"), (b) the agreements to monetize a portion of the ALPA Claim and the ALPA Comair Claim (collectively, the "**ALPA Monetization Agreements**"), (c) the CVG Settlement Agreement and (d) the Amendment dated April 23, 2007 (the "**PBGC Settlement Agreement Amendment**") by and among Delta and certain affiliated entities, the Benefit Funds Investment Committee of Delta, the Administrative Committee of Delta and PBGC to the PBGC Settlement Agreement.    The ALPA Comair CBA, the ALPA Monetization Agreements, the CVG Settlement Agreement and the PBGC Settlement Agreement Amendment were not executed until after solicitation had commenced.    In addition, the Debtors made certain other non-material modifications to the Plan, as also reflected in the version attached hereto.    Except as provided for by law, contract or prior order of this Court, none of the modifications made since the commencement of solicitation adversely affects the treatment of any Claim against or Interest in any of the Debtors under the Plan.    Accordingly, pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, none of these modifications require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code (especially in light of previously provided disclosures), nor do they require that holders of Claims or Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.    The Plan as modified shall constitute the Plan submitted for confirmation by the Court.

9.      <u>Notice of Plan Modifications</u>.  Prior notice regarding the substance of the modifications, coupled with the filing with the Court of the Plan as modified by the Plan Modifications and the disclosure of the Plan Modifications on the record at the Confirmation Hearing constitute due and sufficient notice thereof.

10.      <u>Deemed Acceptance of Plan as Modified</u>.  In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are deemed to have accepted the Plan as modified by the Plan Modifications.  No holder of a Claim or Interest shall be permitted to change its vote as a consequence of the Plan Modifications.

11.      <u>Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

12.      <u>Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1))</u>.  In addition to Administrative Claims and Priority Tax Claims that need not be classified, the Plan classifies 16 Classes of Claims and Interests.  The Claims and Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in each such Class.  Valid business, factual and legal reasons exist for separately classifying the various Classes of Claims and Interests created under the Plan, the classifications were not done for any improper purpose and such Classes do not unfairly discriminate between or among holders of Claims or Interests.  The Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

13.      <u>Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2))</u>. Section 4.2 of the Plan specifies that Delta Class 1 (Other Priority Claims against the Delta Debtors), Delta Class 2 (Secured Aircraft Claims against the Delta Debtors), Delta Class 3 (Other Secured Claims against the Delta Debtors), Delta Class 7b (Interests in the Delta Subsidiary Debtors), Comair Class 1 (Other Priority Claims against

6

the Comair Debtors), Comair Class 2 (Secured Aircraft Claims against the Comair Debtors), Comair

Class 3 (Other Secured Claims against the Comair Debtors) and Comair Class 6 (Interests in the Comair

Debtors) are Unimpaired by the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

14.    Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).  Section 4.2 of the

Plan designates Delta Class 4 (General Unsecured Claims against the Delta Debtors), Delta Class 5

(Non-Convenience Class Retiree Claims against Delta), Delta Class 6 (Convenience Class Claims

against the Delta Debtors), Delta Class 7a (Interests in Delta), Delta Class 8 (Securities Litigation

Claims against the Delta Debtors), Comair Class 4 (General Unsecured Claims against the Comair

Debtors), Comair Class 5 (Convenience Class Claims against the Comair Debtors) and Comair Class 7

(Securities Litigation Claims against the Comair Debtors) as Impaired, and Article 4 of the Plan

specifies treatment of all of these Classes of Claims and Interests under the Plan, thereby satisfying

section 1123(a)(3) of the Bankruptcy Code.

15.    No Discrimination (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment by

the Debtors for each Claim or Interest in each respective Class, unless the holder of a Claim or Interest

has agreed to a less favorable treatment, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

16.    Implementation of Plan (11 U.S.C. § 1123(a)(5)).  The Plan and the various documents

and agreements set forth in the Plan Supplements and described in the Plan provide adequate and proper

means for the Plan's implementation, including, without limitation, the Plan Consolidations described

below, thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

17.    Nonvoting Equity Securities (11 U.S.C. § 1123(a)(6)).  Article 10 of the version of the

New Delta Certificate of Incorporation filed with this Court on March 20, 2007 complies with section

1123(a)(6) of the Bankruptcy Code.  Section 12.2(a) of the Plan provides that each of the Reorganized

Subsidiary Debtors' Certificates of Incorporation shall be deemed, without further action, to be amended

to include a provision prohibiting the issuance of nonvoting equity securities to the extent required by

7

section 1123(a)(6) of the Bankruptcy Code.  Thus, the requirements of section 1123(a)(6) of the

Bankruptcy Code are satisfied with respect to the New Delta Certificate of Incorporation and with

respect to the Reorganized Subsidiary Debtors' Certificates of Incorporation.

18.     <u>Designation of Directors and Officers (11 U.S.C. § 1123(a)(7))</u>.  Section 12.3 of the Plan

contains provisions with respect to the manner of appointment of the directors and officers of the

Reorganized Debtors that are consistent with the interests of creditors, equity security holders and public

policy in accordance with section 1123(a)(7) of the Bankruptcy Code.

19.     <u>Additional Plan Provisions (11 U.S.C. § 1123(b)(6))</u>. The Plan's provisions are

appropriate and consistent with the applicable provisions of the Bankruptcy Code.

20.     <u>Bankruptcy Rule 3016(a)</u>.  The Plan reflects the date it was filed with the Court and

identifies the entities submitting it as Plan proponents, thereby satisfying Bankruptcy Rule 3016(a).

21.     <u>Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>.  The Debtors, as the

proponents of the Plan, have complied with the applicable provisions of the Bankruptcy Code, thereby

satisfying section 1129(a)(2) of the Bankruptcy Code.

Specifically, *inter alia*:

(a)     The Debtors are proper debtors under section 109(d) of the Bankruptcy Code;

(b)     The Debtors have complied with applicable provisions of the Bankruptcy Code, except as
otherwise provided or permitted by order of the Court; and

(c)     The Debtors have complied with the applicable provisions of the Bankruptcy Code, the
Bankruptcy Rules and the Approval Order in transmitting the Disclosure Statement, the Plan and related
documents and notices in soliciting and tabulating votes on the Plan.

22.     <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>. The Debtors have proposed the

Plan in good faith and not by any means forbidden by law, thereby satisfying section 1129(a)(3) of the

Bankruptcy Code.  The Debtors' good faith is evident from the facts and records of these Chapter 11

Cases, the Disclosure Statement and the hearing thereon, and the record of the Confirmation Hearing

and other proceedings held in these Chapter 11 Cases.  The Plan was proposed with the legitimate and

8

honest purpose of maximizing the value of the Debtors' estates and to effectuate a successful

reorganization of the Debtors.

23.     <u>Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4))</u>.  Subject to the

provisions of Section 8.1(a) of the Plan, any payment made or to be made by any of the Debtors for

services or for costs and expenses in or in connection with the Chapter 11 Cases, or in connection with

the Plan and incident to the Chapter 11 Cases, has been approved by, or is subject to the approval of, the

Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

24.     <u>Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5))</u>.  The Debtors have complied

with section 1129(a)(5) of the Bankruptcy Code.  The identity and affiliations of the persons proposed to

serve as members of the New Delta Board were disclosed in a Plan Supplement filed on March 30,

2007, and the appointment to, or continuance in, such positions of such persons is consistent with the

interests of holders of Claims against, and Interests in, the Debtors and with public policy.  The Debtors

have further disclosed that (a) the existing boards of directors or board of managers or equivalent bodies

of each of the Debtors other than Delta shall continue to serve in their current capacities after the

Effective Date and (b) the principal officers of each Debtor immediately prior to the Effective Date will

be the officers of such Reorganized Debtor as of the Effective Date.  The identity of any insider that will

be employed or retained by the Reorganized Debtors and the nature of such insider's compensation have

also been fully disclosed.[3]  The nature of the compensation payable to the members of the New Delta

Board, as well as Reorganized Delta's chief executive officer, chief financial officer and three other

most highly-compensated officers was disclosed in a filing with the Bankruptcy Court on March 20,

2007.

---

[3] As disclosed in the March 30, 2007 Plan Supplement, Gerald Grinstein is not independent because he is Delta's
Chief Executive Officer.

25.    No Rate Changes (11 U.S.C. § 1129(a)(6)).  Section 1129(a)(6) of the Bankruptcy Code requires that any regulatory commission having jurisdiction over the rates charged by a reorganized debtor in the operation of its business approve any rate change provided for in a plan of reorganization. The Plan does not provide for any changes in any regulated rates, so the Plan satisfies section 1129(a)(6) of the Bankruptcy Code.

26.    Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).  The Plan satisfies section 1129(a)(7) of the Bankruptcy Code.  The liquidation analyses set forth or referenced in Appendix C of the Disclosure Statement, the Bastian Affidavit and the Coleman Affidavit (a) are persuasive and credible, (b) have not been controverted by other evidence and (c) establish that each holder of an Impaired Claim or Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

27.    Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).  Delta Class 1 (Other Priority Claims against the Delta Debtors), Delta Class 2 (Secured Aircraft Claims against the Delta Debtors), Delta Class 3 (Other Secured Claims against the Delta Debtors), Delta Class 7b (Interests in the Delta Subsidiary Debtors), Comair Class 1 (Other Priority Claims against the Comair Debtors), Comair Class 2 (Secured Aircraft Claims against the Comair Debtors), Comair Class 3 (Other Secured Claims against the Comair Debtors) and Comair Class 6 (Interests in the Comair Debtors) are each Classes of Unimpaired Claims or Interests that are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code.  Delta Class 4 (General Unsecured Claims against the Delta Debtors), Delta Class 5 (Non-Convenience Class Retiree Claims against Delta), Delta Class 6 (Convenience Class Claims against the Delta Debtors), Comair Class 4 (General Unsecured Claims against the Comair Debtors) and Comair Class 5 (Convenience Class Claims against the Comair Debtors) have each voted

10

to accept the Plan in accordance with section 1126(c) of the Bankruptcy Code.  No classes voted against the Plan; however Delta Class 7a (Interests in Delta), Delta Class 8 (Securities Litigation Claims against the Delta Debtors) and Comair Class 7 (Securities Litigation Claims against the Comair Debtors) are not entitled to receive or retain any property under the Plan and, therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code (such Classes, collectively, the "**Rejecting Classes**").  Although section 1129(a)(8) of the Bankruptcy Code has not been satisfied with respect to the Rejecting Classes, the Plan is confirmable because the Plan does not discriminate unfairly and is fair and equitable, with respect to the Rejecting Classes and thus satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes.

28.    <u>Treatment of Administrative, Priority Tax and Priority Non-Tax Claims (11 U.S.C. § 1129(a)(9))</u>.  The treatment of Administrative Claims and Other Priority Claims pursuant to Article 3 and Section 4.2 of the Plan satisfies the requirements of sections 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Priority Tax Claims pursuant to Section 3.2 of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

29.    <u>Acceptance by Impaired Classes (11 U.S.C. § 1129(a)(10))</u>.  Delta Class 4 (General Unsecured Claims against the Delta Debtors), Delta Class 5 (Non-Convenience Class Retiree Claims against Delta), Delta Class 6 (Convenience Class Claims against the Delta Debtors), Comair Class 4 (General Unsecured Claims against the Comair Debtors) and Comair Class 5 (Convenience Class Claims against the Comair Debtors) are all Impaired Classes and have voted to accept the Plan, without including any acceptance of the Plan by any insider.  As such, there is at least one Class of Claims against the Debtors that is Impaired under the Plan and has accepted the Plan, determined without including any acceptance of the Plan by any insider, thus satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

30.    <u>Feasibility (11 U.S.C. § 1129(a)(11))</u>.  The evidence submitted regarding feasibility through the Affidavits (a) is persuasive and credible, (b) has not been controverted by other evidence and (c) establishes that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtors, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

31.    <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>.  As provided in Section 17.3 of the Plan, all fees payable pursuant to section 1930(a) of title 28 of the United States Code, as determined by the Court, have been paid or shall be paid for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed or closed, whichever occurs first, thus satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

32.    <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>.  Section 1129(a)(13) of the Bankruptcy Code requires a plan to provide for retiree benefits at levels established pursuant to section 1114 of the Bankruptcy Code.  On and after the Effective Date, pursuant to section 1129(a)(13) of the Bankruptcy Code, Reorganized Delta shall continue to pay those retiree health and welfare benefits of the Debtors specifically addressed by and as set forth in the Retiree Term Sheets at the level and for the duration of the period for which Delta has obligated itself to provide such benefits. Solely to the extent provided therein, the terms and conditions of the Stipulation and Consent Order under Bankruptcy Rule 9019 between Delta Air Lines, Inc. and the Section 1114 Pilot Committee dated May 31, 2006 shall apply to any amendment to the Pilot Working Agreement, including, without limitation, Letter of Agreement #51, that became effective during the Chapter 11 Cases and prior to the Effective Date. Except as expressly set forth in the Retiree Term Sheets, the Reorganized Debtors may unilaterally modify or terminate any retiree benefits (including health and welfare benefits) in accordance with the terms of the plan, program, policy or document under which such benefits are established or maintained; *provided, however*, that nothing herein shall be construed to enlarge the Reorganized Debtors' rights to

12

modify such retiree benefits (including such retiree benefits that are vested, if any) under applicable non-bankruptcy law.  Accordingly, the requirements of section 1129(a)(13) of the Bankruptcy Code have been satisfied.

33.     No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).  Based upon the Affidavits and all other evidence before the Court, the Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes, as required by section 1129(b)(1) and (2) of the Bankruptcy Code.  Thus, the Plan may be confirmed notwithstanding the Debtors' failure to satisfy section 1129(a)(8) of the Bankruptcy Code.  Upon confirmation and the occurrence of the Effective Date, the Plan shall be binding upon the members of the Rejecting Classes.

(a)     The Plan Does Not Unfairly Discriminate Against the Rejecting Classes.

(1)     Delta Debtors.  The Plan does not unfairly discriminate against Delta Class 7a (Interests in Delta) and Delta Class 8 (Securities Litigation Claims against the Delta Debtors).  The Interests classified in Delta Class 7b (the Interests in each Delta Subsidiary Debtor) shall be Reinstated for the ultimate benefit of Reorganized Delta, in exchange for the agreement of Reorganized Delta to make distributions under the Plan to Creditors of the Delta Subsidiary Debtors and to use certain funds and assets, to the extent authorized in the Plan, to satisfy certain obligations of the Delta Subsidiary Debtors, including, without limitation, those owed to PBGC.  As a result, there is a reasonable basis for any disparate treatment between and among Delta Class 7a, Delta Class 7b and Delta Class 8.  Therefore, the Plan satisfies section 1129(b)(1) of the Bankruptcy Code.

(2)     Comair Debtors.  The Plan does not unfairly discriminate against Comair Class 7 (Securities Litigation Claims against the Comair Debtors).  Based upon the Affidavits and all other evidence before the Court, there appear to be no Claims or Interests classified in Comair Class 7.  However, even if there were any such Claims or Interests, the Plan would not unfairly discriminate against them.  The Interests classified in Comair Class 6 (Interests in the Comair Debtors) shall be

Reinstated for the ultimate benefit of Reorganized Delta, in exchange for the agreement of Reorganized

Delta to make distributions under the Plan to Creditors of the Comair Debtors and to use certain funds

and assets, to the extent authorized in the Plan, to satisfy certain obligations of the Comair Debtors,

including, without limitation, those owed to PBGC.  As a result, there is a reasonable basis for any

disparate treatment between Comair Class 6 and Comair Class 7.  Therefore, the Plan satisfies section

1129(b)(1) of the Bankruptcy Code.

       (b)   <u>The Plan is Fair and Equitable</u>.  The Plan is fair and equitable, in that no holder that is

junior to the Interests classified in the Rejecting Classes will receive or retain under the Plan on account

of such junior interest any property.  Therefore, the Plan satisfies section 1129(b)(2)(C)(ii) of the

Bankruptcy Code.

       34.   <u>Only One Plan (11 U.S.C. § 1129(c))</u>.  The Plan is the only plan of reorganization filed in

these cases.  Accordingly, section 1129(c) of the Bankruptcy Code is inapplicable in these Chapter 11

Cases.

       35.   <u>Principal Purpose of the Plan (11 U.S.C. § 1129(d))</u>.  The principal purpose of the Plan,

as evidenced by its terms, is not the avoidance of taxes or the avoidance of the application of section 5

of the Securities Act.

       36.   <u>Good Faith Solicitation (11 U.S.C. § 1125(e))</u>.  Based on the record before this Court in

these Chapter 11 Cases, the Debtors, the Creditors' Committee, the Non-Pilot Retiree Committee, the

Pilot Retiree Committee and each of their members, directors, officers, employees, shareholders, agents,

advisors, accountants, investment bankers, consultants, attorneys and other representatives have acted in

"good faith" within the meaning of section 1125(e) of the Bankruptcy Code and in compliance with the

applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all of their

respective activities relating to the solicitation of acceptances to the Plan and their participation in the

activities described in section 1125 of the Bankruptcy Code and such parties listed in Section 13.5 of the

Plan are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the exculpation provisions set forth in Section 13.5 of the Plan.

37.    <u>Satisfaction of Confirmation Requirements</u>. Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

38.    <u>Plan Consolidations</u>.  A preponderance of the evidence presented to this Court demonstrates that no Creditor will be harmed by the proposed Plan Consolidations and that the Plan Consolidations are appropriate.  Furthermore, no holder of a Claim or Interest has objected to or opposed the Plan Consolidations.

39.    <u>Implementation</u>.  All documents and agreements necessary to implement the Plan, including, without limitation, those contained in the Plan Supplements, and all other relevant and necessary documents (including the documentation of the New Credit Facility (the credit agreements, notes, documents and other agreements entered into in connection therewith, the "**New Credit Facility Documentation**")), have been negotiated in good faith at arm's length and are in the best interests of the Debtors and the Reorganized Debtors and shall, upon completion of documentation and execution be valid, binding and enforceable documents and agreements not in conflict with any federal or state law.

40.    <u>Good Faith</u>.  The Debtors, the Creditors' Committee, the DIP Agent, the Indenture Trustees, the agents, arrangers and lenders under the New Credit Facility and all other parties (and all of their respective members, officers, directors, agents, financial advisers, attorneys, employees, equity holders, partners, affiliates and representatives) will be acting in good faith if they proceed to (i) consummate the Plan and the agreements, settlements, transactions and transfers contemplated thereby (including, without limitation, the entry into and performance under the New Credit Facility) and (ii) take the actions authorized and directed by this Confirmation Order.

41.    <u>Assumption of Executory Contracts and Unexpired Leases</u>.  The Debtors have satisfied
the provisions of section 365 of the Bankruptcy Code and Article 10 of the Plan with respect to the
assumption of executory contracts and unexpired leases pursuant to the Plan.

42.    <u>Transfers by Debtors; Vesting of Assets</u>.  All transfers of property of the Debtors' estates,
including, without limitation, the transfer of the New Delta Common Stock and the New Delta Debt
Securities, shall be free and clear of all Liens, charges, Claims, encumbrances and other interests, except
as expressly provided in the Plan or this Confirmation Order.  Pursuant to sections 1141(b) and (c) of the
Bankruptcy Code, all property of each of the Debtors (excluding property that has been abandoned
pursuant to the Plan or an order of the Bankruptcy Court) shall vest in each of the respective
Reorganized Debtor or its successors or assigns, as the case may be, free and clear of all Liens, charges,
Claims, encumbrances and other interests, except as expressly provided in the Plan or this Confirmation
Order.  Such vesting does not constitute a voidable transfer under the Bankruptcy Code or applicable
nonbankruptcy law.

43.    <u>Valuation</u>.  Pursuant to the Valuation Analyses set forth in the Disclosure Statement,
(a) the enterprise value of the Delta Debtors is insufficient to support a distribution to holders of
Interests in Delta (Delta Class 7a) or Securities Litigation Claims against the Delta Debtors (Delta Class
8) and (b) the enterprise value of the Comair Debtors is insufficient to support a distribution to any
holders of Securities Litigation Claims against the Comair Debtors (Comair Class 7).

44.    <u>New Credit Facility</u>.  The incurrence of indebtedness, provision of guarantees and
granting of collateral under the New Credit Facility and the New Credit Facility Documentation are in
the best interests of the Reorganized Debtors, and are necessary and appropriate for the consummation
of the Plan and the operations of the Reorganized Debtors.  The terms and conditions of the New Credit
Facility described in the Commitment Letter (as defined below) and the Fee Letters (as that term is
defined in the *Debtors' Motion Seeking Authorization to (a) Perform Obligations Under Exit Facility*

*Commitment Letter and Fee Letters, (b) Pay the Fees and Expenses Associated Therewith and (c)*

*Furnish Related Indemnities)*, each as approved by the Court by order dated April 17, 2007 [Docket

No.5764], are fair and reasonable and are approved.

45.    The Debtors have made an overwhelming and uncontroverted showing of the very

substantial cost, harm, risk and prejudice to these Estates and their Creditors that would result if the Plan

is not consummated on Monday, April 30, 2007 and distributions to holders of General Unsecured

Claims do not commence on or about Thursday, May 3, 2007.

## DECREES

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

46.    <u>Confirmation</u>.  The Plan is approved and confirmed under section 1129 of the Bankruptcy

Code.  The terms of the Plan Supplements are incorporated by reference into and are an integral part of

the Plan.

47.    <u>Objections</u>.  All objections that have not been withdrawn, waived or settled, and all

reservations of rights pertaining to Confirmation of the Plan, are overruled on the merits.

48.    <u>Plan Supplements</u>.  The documents contained in the Plan Supplements, and any

amendments, modifications, and supplements thereto, and all documents and agreements related thereto

(including all exhibits and attachments thereto and documents referred to therein), and the execution,

delivery and performance thereof by the Reorganized Debtors, are authorized and approved as finalized,

executed and delivered.  Without further order or authorization of this Court, the Debtors, Reorganized

Debtors and their successors are authorized and empowered to make all modifications to all documents

included as part of the Plan Supplements that are consistent with the Plan.  Once finalized and executed,

the documents comprising the Plan Supplements and all other documents contemplated by the Plan shall

constitute legal, valid, binding and authorized obligations of the respective parties thereto, enforceable in

accordance with their terms and, to the extent applicable, shall create, as of the Effective Date, all Liens
and other security interests purported to be created thereby.

49.    <u>Solicitation and Notice</u>.  Notice of the Confirmation Hearing complied with the terms of
the Approval Order, was appropriate and satisfactory based on the circumstances of the Chapter 11
Cases and was in compliance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.
The solicitation of votes on the Plan complied with the solicitation procedures in the Approval Order,
was appropriate and satisfactory based upon the circumstances of the Chapter 11 Cases and was in
compliance with the provisions of the Bankruptcy Code and the Bankruptcy Rules.  Notice of the Plan
Supplements and all related documents, was appropriate and satisfactory based upon the circumstances
of the Chapter 11 Cases and was in compliance with the provisions of the Plan, Bankruptcy Code and
the Bankruptcy Rules.

50.    <u>Plan Classifications Controlling</u>.  The classification of Claims and Interests for purposes
of distributions made under the Plan shall be governed solely by the terms of the Plan.  The
classifications set forth on the Ballots tendered to or returned by the Creditors in connection with voting
on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan,
(b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the
actual classification of such Claims under the Plan for distribution purposes and (c) shall not be binding
on the Debtors or Reorganized Debtors.

51.    <u>Plan Consolidations</u>.  The Delta Plan Consolidation and the Comair Plan Consolidation,
as described in Sections 2.2 and 2.3 of the Plan, respectively, are approved.

52.    <u>Continued Corporate Existence</u>.  Except as otherwise provided in the Plan, each Debtor
shall, as a Reorganized Debtor, continue to exist after the Effective Date as a separate legal entity, each
with all of the powers of a corporation, limited liability company or partnership, as applicable, under the

laws of its respective jurisdiction of organization and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under applicable state law.

53.    <u>Cancellation of Old Notes and Old Stock</u>.  On the Effective Date, except to the extent otherwise provided in this Confirmation Order or the Plan, all notes, instruments, certificates and other documents evidencing (a) the Old Notes (excluding the Covered Municipal Bonds) and (b) the Old Stock shall be cancelled, and the obligations of the Debtors thereunder and in any way related thereto shall be fully satisfied, released and discharged; *provided, however,* that (i) with respect to Municipal Bonds not associated with either the Assumed Municipal Bond Agreements or the Clayton County Loan Agreements, the obligations of the Debtors thereunder and in any way related thereto shall be fully satisfied, released and discharged in exchange for the treatment provided under the Plan for Allowed Claims, if any, arising thereunder and (ii) the cancellations set forth in clauses (a), (b) and (c) of Section 6.6 of the Plan and the satisfaction, release and discharge of the Debtors' obligations with respect to Municipal Bonds not associated with either the Assumed Municipal Bond Agreements or the Clayton County Loan Agreements above shall not alter the obligations or rights of any non-Debtor third parties vis-à-vis one another with respect to such notes, instruments, certificates or other documents.  On the Effective Date, except to the extent otherwise provided in this Confirmation Order or the Plan, any indenture or similar agreement relating to any of the foregoing, including, without limitation, the Indentures, and any related note, guaranty or similar instrument of the Debtors (excluding the Municipal Bond Indentures associated with the Covered Municipal Bonds and any related note, guaranty or similar instrument of the Debtors associated with the Covered Municipal Bonds) shall be deemed to be cancelled, as permitted by section 1123(a)(5)(F) of the Bankruptcy Code and discharged (A) with respect to all obligations owed by any Debtor under any such agreement and (B) except to the extent provided herein below, with respect to the respective rights and obligations of the Indenture Trustees under any Indenture against the holders of Old Notes Claims; *provided, however,* that, with respect to

19

Municipal Bond Indentures associated with the Covered Municipal Bonds and any related note, guaranty or similar instrument of the Debtors associated with the Covered Municipal Bonds, the obligations of the Debtors thereunder and in any way related thereto shall be fully satisfied, released and discharged in exchange for the treatment provided under the Plan for Allowed Claims, if any, arising thereunder. Solely for the purpose of clause (B) in the immediately preceding sentence, only the following rights of each such Indenture Trustee shall remain in effect after the Effective Date:  (1) rights as trustee, paying agent and registrar, including, but not limited to, any rights to payment of fees, expenses and indemnification obligations, including, but not limited to, from property distributed under the Plan to such Indenture Trustee (but excluding any other property of the Debtors, the Reorganized Debtors or their respective estates), (2) rights relating to distributions to be made to the holders of the Old Notes by such Indenture Trustee from any source, including, but not limited to, distributions under the Plan (but excluding any other property of the Debtors, the Reorganized Debtors or their respective estates), (3) rights relating to representation of the interests of the holders of the Old Notes by such Indenture Trustee in the Chapter 11 Cases to the extent not discharged or released by the Plan or any order of the Court and (4) rights relating to participation by such Indenture Trustee in proceedings and appeals related to the Plan.  Notwithstanding the continued effectiveness of such rights after the Effective Date, such Indenture Trustee shall have no obligation to object to Claims against the Debtors or to locate certificated holders of Old Notes who fail to surrender their Old Notes in accordance with Section 7.2(d) of the Plan.

54.    <u>Cancellation of Old Aircraft Securities</u>.

(a)    Notwithstanding the first paragraph of Section 6.6 of the Plan, with respect to any aircraft (a) subject to and addressed by that certain term sheet negotiated by Delta with a group of Creditors regarding 88 mainline aircraft approved by order of the Bankruptcy Court dated February 15, 2006 (as amended, modified or supplemented from time to time, the "**88 Plane Term Sheet**") or

(b) otherwise identified on Schedule A attached hereto, and any Old Aircraft Securities issued in respect

of such aircraft, until (i) execution of definitive agreements contemplated by the 88 Plane Term Sheet or

any other Post-Petition Aircraft Agreement with respect to such aircraft, (ii) payment in full of

distributions provided for under the Plan in respect of the Claims addressed by the 88 Plane Term Sheet

or such other Post-Petition Aircraft Agreement with respect to such aircraft, (iii) any monies, other

consideration or any other value to be passed at any time through such Old Aircraft Securities pursuant

to the restructured transactions consummated in connection with the 88 Plane Term Sheet or such other

Post-Petition Aircraft Agreement in respect of such aircraft or otherwise arising from the sale, lease or

other disposition of such aircraft have been finally and indefeasibly paid and/or conveyed to the holders

of such Old Aircraft Securities (including, without limitation, any equipment trust certificates) and

(iv) in the case of any pass through trust certificates, all of the matters described in the foregoing clauses

(i) through (iii) shall have been completed with respect to each related aircraft and equipment trust

certificate, any such Old Aircraft Securities shall not be cancelled provided, however, on the Effective

Date (as to the 88 Plane Term Sheet) or the applicable Rejection Effective Date (as to the Aircraft on

Schedule A), as the case may be, all obligations of the Debtors (to the extent the Debtors had any

obligations) with respect to all securities described in Schedule 6.6(a) shall be deemed satisfied, released

and discharged.  For the avoidance of doubt, the release, satisfaction or discharge of any of the Debtors'

obligations under the Old Aircraft Securities set forth on Schedule 6.6(a) shall not affect the rights and

obligations as between non-Debtors (and solely to the extent of such rights and obligations between non-

Debtors, such Old Aircraft Securities shall survive).

(b)    Notwithstanding anything to the contrary contained in the Plan, any equipment

notes as to which U.S. Bank National Association, as successor in interest to Shawmut Bank

Connecticut, National Association, is loan trustee and any pass through trust certificates as to which

U.S. Bank National Association, as successor in interest to Shawmut Bank Connecticut, National

Association, is pass through trustee, issued in respect of the aircraft identified on Schedule B attached hereto (the "**RJ Finco Securities**") shall not be Old Aircraft Securities and will not be cancelled pursuant to Section 6.6 of the Plan; *provided* that on the applicable Rejection Effective Date, all obligations of the Debtors (to the extent that the Debtors had any obligations) with respect to the RJ Finco Securities shall be deemed satisfied, released and discharged.

55.    New Credit Facility; Incurrence of New Indebtedness.

(a)    The Reorganized Debtors' entry on the Effective Date into the New Credit Facility and the New Credit Facility Documentation and the incurrence of the indebtedness thereunder, the provision of guarantees and the granting of collateral in accordance therewith shall be authorized and approved in all respects by virtue of entry of this Confirmation Order, in accordance with the Bankruptcy Code and applicable state law (including, but not limited to, section 303 of the Delaware General Corporations Law, to the extent applicable, and any analogous provision of the applicable business organizations law or code of each other state in which the Reorganized Debtors are incorporated or organized) and without the need for any further corporate action or any further action by holders of Claims or Interests in the Debtors or the Reorganized Debtors or stockholders, directors, members or partners of the Debtors or the Reorganized Debtors, and with like effect as if such actions had been taken by unanimous actions thereof.

(b)    The Reorganized Debtors are hereby authorized and directed to enter into, and take such actions as necessary to perform under, the New Credit Facility and the New Credit Facility Documents, the terms and conditions of which shall be substantially consistent with the terms and conditions of the Commitment Letter and Fee Letters, as well as any notes, documents or agreements in connection therewith, including, without limitation, any documents reasonably required in connection with the creation or perfection of Liens in connection therewith.

(c)       Upon consummation of the New Credit Facility, the lenders thereunder shall have valid, binding and enforceable Liens on the collateral specified in the New Credit Facility Documentation.  The guarantees, mortgages, pledges, Liens and other security interests granted pursuant to or in connection with the New Credit Facility are granted in good faith, for good and valuable consideration and for legitimate business purposes as an inducement to the lenders to extend credit thereunder and shall be, and hereby are, deemed not to constitute a fraudulent conveyance or fraudulent transfer and shall not otherwise be subject to avoidance or recharacterization.  The priorities of such Liens and security interests shall be as set forth in and subject to the intercreditor agreement, the other New Credit Facility Documentation and applicable law.

(d)       Notwithstanding anything to the contrary in this Confirmation Order or the Plan, the Court's retention of jurisdiction shall not govern the enforcement of the loan documentation executed in connection with the New Credit Facility or any Liens, rights or remedies related thereto.

56.     _Issuance of New Delta Plan Securities_.  The issuance by Reorganized Delta of the New Delta Plan Securities and any security to be issued by a Reorganized Debtor pursuant to or in connection with a Post-Petition Aircraft Agreement (including, without limitation, the New Ad Hoc Committee Aircraft Notes (as defined below)) is authorized without the need for any further corporate action and without any further action by holders of Claims or Interests.

57.     _Corporate Action_

(a)       On the Effective Date, the adoption, filing, approval and ratification, as necessary, of all corporate or related actions contemplated hereby with respect to each of the Reorganized Debtors shall be deemed authorized and approved in all respects.  Without limiting the foregoing, such actions may include:  (i) the adoption and filing of the New Delta Certificate of Incorporation, (ii) the adoption and filing of the Reorganized Subsidiary Debtors' Certificates of Incorporation, (iii) the approval of the New Delta Bylaws, (iv) the approval of the Reorganized Subsidiary Debtors' Bylaws, (v) the election or

23

appointment, as the case may be, of directors and officers for the Reorganized Debtors, (vi) the issuance

of the New Delta Plan Securities, (vii) the Restructuring Transactions to be effectuated pursuant to the

Plan, (viii) the adoption and/or implementation of the Compensation Programs, (ix) the execution and

delivery of the New Credit Facility Documentation and the performance of all obligations under the

New Credit Facility, (x) the qualification of any of the Reorganized Debtors as foreign corporations or

limited liability companies wherever the conduct of business by such entities requires such qualification

and (xi) the execution, delivery and performance of each Post-Petition Aircraft Agreement and any

agreement or instrument provided for in a Post-Petition Aircraft Agreement (including, without

limitation, releases granted by the Debtors and the Creditors' Committee with respect to pre-petition

claims against existing indenture trustees, owner trustees, pass-through trustees or other similar persons,

extensions of the period to assume or reject executory contracts and unexpired leases pursuant to section

365 of the Bankruptcy Code and any deferral of the effectiveness of any such assumption or rejection)

and the issuance of any security to be issued by a Reorganized Debtor pursuant to or in connection with

a Post-Petition Aircraft Agreement (including, without limitation, the New Ad Hoc Committee Aircraft

Notes (as defined below)).

      (b)     All matters provided for in the Plan involving the corporate structure of any

Debtor or any Reorganized Debtor, or any corporate action required by any Debtor or any Reorganized

Debtor in connection with the Plan, is deemed to have occurred and shall be in effect, without any

requirement of further action by the security holders or directors of such Debtor or Reorganized Debtor

or by any other stakeholder.

      (c)     On or after the Effective Date, the appropriate officers of each Reorganized

Debtor and members of the board of directors, board of managers or equivalent body of each

Reorganized Debtor are authorized and directed to issue, execute, deliver, file and record any and all

agreements, documents, securities, deeds, bills of sale, conveyances, releases and instruments

contemplated by the Plan or the transactions contemplated thereby in the name of and on behalf of such Reorganized Debtor and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan and the transactions contemplated thereby.

58.    New Delta Board.  Upon the occurrence of the Effective Date, the Persons proposed to serve as members of the New Delta Board, as identified in the Plan Supplement filed on March 30, 2007, shall automatically constitute the New Delta Board.

59.    Restructuring Transactions.  As further described in Section 6.2 of the Plan, on or prior to the Effective Date, the Reorganized Debtors may engage in or continue to enter into Roll-Up Transactions and may take such actions as may be necessary or appropriate to effect further corporate restructurings of their respective businesses, including actions necessary to simplify, reorganize and rationalize the overall reorganized corporate structure of the Reorganized Debtors.

60.    Post-Petition Agreements Related to Aircraft.  Notwithstanding anything to the contrary contained in the Plan, to the extent that subsequent to the date of the Plan, the Debtors enter into new Post-Petition Aircraft Agreements for Aircraft Equipment not currently subject to a Post-Petition Aircraft Agreement and file a notice of such with the Bankruptcy Court as provided in Section 1.1(199) of the Plan, the Claims or obligations arising thereunder shall be treated as Post-Petition Aircraft Obligations.  Prior to the Effective Date, the Debtors will consult with the Creditors' Committee, and after the Effective Date, the Reorganized Debtors will consult with the Post-Effective Date Committee, with respect to such Post-Petition Aircraft Agreements in the same manner and to the same extent as the Debtors have consulted with the Creditors' Committee with respect to such agreements prior to the date of the Plan.  Each (i) post-petition aircraft equipment purchase agreement entered into by the Debtors and not terminated or rejected prior to the Effective Date pursuant to the terms thereof and (ii) Post-Petition Aircraft Agreement not terminated or rejected prior to the Effective Date pursuant to the terms thereof, will remain in place after the Effective Date.  The Reorganized Debtors or their successors, if

25

applicable, shall continue to honor each such agreement according to its terms and to the extent any such

agreement requires the assumption by the Debtors of such agreement and the obligations arising

thereunder (to the extent specifically provided in such agreement and to the extent such agreement or

obligation was not previously assumed), each such agreement and the obligations arising thereunder (to

the extent specifically provided in such agreement and to the extent such agreement or obligation was

not previously assumed) shall be deemed assumed as of the Effective Date.  The preceding sentence is

specifically limited with respect to each such agreement by the express terms of such agreement, and

nothing in the Plan, Disclosure Statement or this Confirmation Order will be deemed to limit or effect

the terms thereof.  The post-petition aircraft equipment purchase agreements and the Post-Petition

Aircraft Agreements have been negotiated in good faith and at arm's length and constitute legal, valid

and binding obligations of the respective parties enforceable in accordance with their terms.  All

transactions contemplated by such agreements (including, without limitation, any extension of the period

to assume or reject such agreements under section 365 of the Bankruptcy Code, any deferral of the

effectiveness of any such assumption or rejection and any releases granted by the Debtors and the

Creditors' Committee with respect to pre-petition claims against existing indenture trustees, owner

trustees, pass-through trustees or other similar persons) and obligations to be incurred by the

Reorganized Debtors pursuant to such agreements are hereby approved, and the Reorganized Debtors

shall have full power and authority to execute, deliver and perform each such agreement and are

authorized and directed to take all necessary steps and to perform all necessary and appropriate acts to

consummate the terms and conditions of each such agreement.

   61. <u>Post-Petition Aircraft Agreements with Ad Hoc Committee of Senior Secured Holders of</u>

<u>Aircraft Debt</u>.  In connection with the Plan and to the extent provided in the Post-Petition Aircraft

Agreements entered into with the Debtors with respect to aircraft with FAA registration numbers

N131DN, N140LL, N178DN, N660DL, N681DA, N682DA, N952DL, N962DL, N963DL, N964DL,

N965DL, N968DL, N969DL, N970DL, N972DL, N973DL, N974DL, N977DL, N979DL, N981DL,

N180DN and N181DN, the indenture trustee with respect to certain pre-petition aircraft indebtedness,

having foreclosed or otherwise obtained ownership of aircraft, subject to the existing lease (to the extent

such lease has not previously been rejected), may transfer ownership of such aircraft, subject to such

lease and any term sheet or restructuring agreement with respect to the use of such aircraft by the

Debtor, to a new owner trust.  Such indenture trustee may cause such new owner trust to issue loan

certificates under a new indenture of which Reorganized Delta will be treated as the issuer for purposes

of section 2(a)(4) of the Securities Act (such notes, the "**New Ad Hoc Committee Aircraft Notes**"),

and which will be issued pursuant to the term sheets or restructuring agreements, which provide for the

settlement of Claims against the Debtor.  The New Ad Hoc Committee Aircraft Notes are hereby

approved, and Reorganized Delta shall have full power and authority to deliver the New Ad Hoc

Committee Aircraft Notes and is authorized to take all necessary steps and to perform all necessary and

appropriate acts with respect thereto.

       62.    Securities Laws Exemption.  The offering, issuance and distribution to the holder of a

Claim under the Plan of (i) the New Delta Plan Securities, (ii) the New Ad Hoc Committee Aircraft

Notes and (iii) any other securities to be issued pursuant to or in connection with a Post-Petition Aircraft

Agreement will be exempt from registration under the Securities Act and all rules and regulations

promulgated thereunder and any state or local law requiring registration prior to the offering, issuance,

distribution or sale of securities.  The issuance to the holder of a Claim of the New Delta Plan Securities,

the New Ad Hoc Committee Aircraft Notes and any other securities to be issued pursuant to or in

connection with a Post-Petition Aircraft Agreement are or were in exchange for Claims against the

Debtors, or are or were principally in such exchange and partly for Cash or property within the meaning

of section 1145(a)(1) of the Bankruptcy Code.  Pursuant to section 1145(c) of the Bankruptcy Code, the

resale of any New Delta Plan Securities, any New Ad Hoc Committee Aircraft Notes or any other

securities to be issued pursuant to or in connection with a Post-Petition Aircraft Agreement shall be

exempt from registration under the Securities Act and all rules and regulations promulgated thereunder

and from any state or local law requiring registration prior to the offering, issuance, distribution or sale

of securities, except for any restrictions set forth in section 1145(b) of the Bankruptcy Code and any

restrictions contained in the Plan or Disclosure Statement.  Without in any way limiting the general

application of any of the foregoing, the Court makes the following conclusions of law:

(a)    ALPA Delta Covered Securities.  The offering, issuance and distribution by

Reorganized Delta to ALPA in respect of its claims against Delta of the New Delta Common Stock and

the New Delta ALPA Notes (collectively, the "**ALPA Delta Covered Securities**") under and as

provided in the Plan are, pursuant to section 1145(a) of the Bankruptcy Code, exempt from the

registration requirements of the Securities Act and any state or local law requiring registration for the

offer, issuance, distribution or sale of a security.  The ALPA Delta Covered Securities are deemed to

have been issued in a public offering under the Securities Act and are freely tradable by the recipients

thereof without registration under the Securities Act pursuant to the exemption provided by section 4(1)

of the Securities Act, unless any such recipient is an "underwriter" with respect to such securities, as that

term is defined in section 1145(b)(1) of the Bankruptcy Code.

(b)    ALPA Comair Covered Securities.  The offering, issuance and distribution by

Reorganized Comair to ALPA in respect of its claims against Comair of the New Delta Common Stock

(the "**ALPA Comair Covered Securities**") under and as provided in the Plan, are, pursuant to section

1145(a) of the Bankruptcy Code, exempt from the registration requirements of the Securities Act and

any state or local law requiring registration for the offer, issuance, distribution or sale of a security.  The

ALPA Comair Covered Securities are deemed to have been issued in a public offering under the

Securities Act and are freely tradable by the recipients thereof without registration under the Securities

Act pursuant to the exemption provided by section 4(1) of the Securities Act, unless any such recipient

is an "underwriter" with respect to such securities, as that term is defined in section 1145(b)(1) of the Bankruptcy Code.

(c)    PBGC.  The offering, issuance and distribution by Reorganized Delta to PBGC in respect of its claims against Delta of the New Delta Common Stock (the "**PBGC Covered Securities**") under and as provided in the Plan are, pursuant to section 1145(a) of the Bankruptcy Code, exempt from the registration requirements of the Securities Act and any state or local law requiring registration for the offer, issuance, distribution or sale of a security.  The PBGC Covered Securities are deemed to have been issued in a public offering under the Securities Act and are freely tradable by the recipients thereof without registration under the Securities Act pursuant to the exemption provided by section 4(1) of the Securities Act, unless any such recipient is an "underwriter" with respect to such securities, as that term is defined in section 1145(b)(1) of the Bankruptcy Code.  For purposes of the Securities Act and the rules and regulations thereunder and section 1145 of the Bankruptcy Code, PBGC shall be deemed not to be, and any transferee or assignee of PBGC of any PBGC Covered Securities or all or any portion of the PBGC Claim shall not be deemed to be, solely as a result of any such transfer or assignment, an affiliate of any of the Reorganized Debtors or any of the subsidiaries of any thereof or an issuer or underwriter of any of the New Delta Plan Securities.

(d)    New Delta Common Stock.  The offering, issuance and distribution by Reorganized Delta of the New Delta Common Stock (including, without limitation, the issuance and transfer of New Delta Common Stock to (a) the ALPA Claim Purchaser(s) and/or the ALPA Claim Transferee(s) in respect of the Monetized ALPA Claim pursuant to and as contemplated by the ALPA Claim Purchase Agreements and (b) the ALPA Comair Claim Purchaser and/or the ALPA Comair Claim Transferee(s) in respect of the Monetized ALPA Comair Claim pursuant to and as contemplated by the ALPA Comair Claim Purchase Agreement (collectively, the "**Monetized New Delta Common Stock**")) are, pursuant to section 1145(a) of the Bankruptcy Code, exempt from the registration

requirements of the Securities Act and any state or local law requiring registration for the offer, issuance, distribution or sale of a security.  The New Delta Common Stock (including, without limitation, the Monetized New Delta Common Stock) is deemed to have been issued in a public offering under the Securities Act and is freely tradable by the recipients thereof without registration under the Securities Act pursuant to the exemption provided by section 4(1) of the Securities Act, unless any such recipient is an "underwriter" with respect to such securities, as that term is defined in section 1145(b)(1) of the Bankruptcy Code.

(e)    New Delta CVG Note.  The offering, issuance and distribution of the New Delta CVG Note by Reorganized Delta to the CVG Bond Trustee (which issuance, offering and distribution would and may occur only if the order approving the CVG Settlement Agreement, entered by this Court on April 24, 2007, is not stayed, or is no longer stayed, pending appeal) shall be, pursuant to section 1145(a) of the Bankruptcy Code, exempt from the registration requirements of the Securities Act and any state or local law requiring registration for the offer, issuance, distribution or sale of a security.  If issued, the New Delta CVG Note shall be deemed to have been issued in a public offering under the Securities Act and shall be freely tradable by the recipients thereof without registration under the Securities Act pursuant to the exemption provided by section 4(1) of the Securities Act, unless any such recipient is an "underwriter" with respect to such securities, as that term is defined in section 1145(b)(1) of the Bankruptcy Code.

(f)    Post-Petition Aircraft Agreements.  The offering, issuance and distribution by the Reorganized Debtors of the New Ad Hoc Committee Aircraft Notes and any other securities to be issued pursuant to or in connection with a Post-Petition Aircraft Agreement (the "**Post-Petition Aircraft Securities**") are, pursuant to section 1145(a) of the Bankruptcy Code, exempt from the registration requirements of the Securities Act and any state or local law requiring registration for the offer, issuance, distribution or sale of a security.  The Post-Petition Aircraft Securities are deemed to have

been issued in a public offering under the Securities Act and are freely tradable by the recipients thereof without registration under the Securities Act pursuant to the exemption provided by section 4(1) of the Securities Act, unless any such recipient is an "underwriter" with respect to such securities, as that term is defined in section 1145(b)(1) of the Bankruptcy Code.  The indenture trustees, owner trustees, pass-through trustees and other similar persons with respect to pre-petition aircraft indebtedness, the New Ad Hoc Committee Aircraft Notes or any other Post-Petition Aircraft Securities are not underwriters within the meaning of section 1145 of the Bankruptcy Code.

63.    <u>Distributions Under the Plan</u>.  All distributions under the Plan shall be made in accordance with Article 7 of the Plan.

64.    <u>Unclaimed Distributions</u>.  All distributions under the Plan that remain unclaimed for one year after the relevant Distribution Date shall indefeasibly revert to Reorganized Delta.  Upon such reversion, the relevant Allowed Claim (and any Claim on account of missed distributions) shall be automatically discharged and forever barred, notwithstanding any federal or state escheat laws or regulations to the contrary.

65.    <u>Amounts Held in Trust</u>.  All claims of the United States (which term shall include for all purposes in this Confirmation Order, all agencies and agents of the United States but not PBGC), including but not limited to the United States Department of Agriculture, the Transportation Security Administration and United States Customs and Border Protection, for the recovery of amounts collected and required to be held in trust by the Debtors or Reorganized Debtors or their agents, either before or after the Petition Date, for the benefit of the United States pursuant to federal law, shall be paid in full in cash in the ordinary course of business (but solely to the extent that, and at such time as, such amounts are actually due and owing pursuant to federal law governing the timing of the remittance of such amounts to the United States or the terms of any federal audit closing letter).

66.   <u>Disputed Claims</u>.  The provisions of Article 9 of the Plan, including, without limitation,

the provisions governing procedures for resolving Disputed Claims, are fair and reasonable and are

approved.  The procedures described in the *Notice of Procedures for Determining Disputed Claims*

*Reserves* [Docket No. 5570], filed by the Debtors on April 5, 2007, are also fair and reasonable and are

approved.  The Debtors are hereby ordered to comply with those procedures in setting the Disputed

Claims Reserves called for by the Plan.  The substance of those procedures are as follows:

(a)   In consultation with the Creditors' Committee, the Debtors have
determined that, with respect to all Disputed Delta Unsecured Claims
(other than any Disputed Delta Convenience Class Claims) filed in a
liquidated amount, the allocation of New Delta Common Stock to the
Delta Disputed Claims Reserve on account of such Claims shall be equal
to the amount potentially distributable if all such Claims were Allowed in
full, unless otherwise agreed by the Debtors and the relevant holder of a
Disputed Delta Unsecured Claim.  With respect to all Disputed Delta
Unsecured Claims filed in unliquidated amounts, unless otherwise agreed
by the Debtors and the relevant holder of a Disputed Delta Unsecured
Claim, the Debtors will set, solely for purposes of this allocation to the
Delta Disputed Claims Reserve, a dollar amount for each of such Claims
based (i) in the case of Claims related to Aircraft Equipment, on similar
Claims filed in a liquidated amount and (ii) in the case of Claims not
related to Aircraft Equipment, on the Debtors' good faith analysis of such
unliquidated Claims after consultation with the Creditors' Committee.

(b)   In consultation with the Creditors' Committee, the Debtors have
determined that, with respect to all Disputed Comair Unsecured Claims
(other than any Disputed Comair Convenience Class Claims) filed in a
liquidated amount, the allocation of New Delta Common Stock to the
Comair Disputed Claims Reserve on account of such Claims shall be
equal to the amount potentially distributable if all such Claims were
Allowed in full, unless otherwise agreed by the Debtors and the relevant
holder of a Disputed Comair Unsecured Claim.  With respect to all
Disputed Comair Unsecured Claims filed in unliquidated amounts, unless
otherwise agreed by the Debtors and the relevant holder of a Disputed
Comair Unsecured Claim, the Debtors will set, solely for purposes of this
allocation to the Comair Disputed Claims Reserve, a dollar amount for
each of such Claims based (i) in the case of Claims related to Aircraft
Equipment, on similar Claims filed in a liquidated amount and (ii) in the
case of Claims not related to Aircraft Equipment, on the Debtors' good
faith analysis of such unliquidated Claims after consultation with the
Creditors' Committee.

(c)     For purposes of the two immediately preceding paragraphs, only Unsecured Claims filed as of March 30, 2007 that are Disputed Claims at the time such calculations are made shall be considered.  Such calculations shall be made without offset or reduction based upon any legal theory or otherwise, including in the event that the Bankruptcy Court grants any request by the Debtors to have any Disputed Claim deemed to be a Contingent or an Unliquidated Claim.

(d)     Notwithstanding the foregoing, the Debtors retain all rights with respect to all claims, including, without limitation, (i) the right to request estimation of any Disputed Claim and the right to request authority from the Bankruptcy Court to allocate to the appropriate Disputed Claims Reserve less than 100% of the amount potentially distributable on account of a Disputed Claim and (ii) the right to agree with the holder of a Disputed Claim to allocate to the appropriate Disputed Claims Reserve less than 100% of the amount potentially distributable on account of a Disputed Claim.

(e)     To the extent a Disputed Claim ceases to be Disputed after the initial calculation of the Disputed Claims Reserves is made, the Debtors will adjust the amount of New Delta Common Stock to be allocated to the appropriate Disputed Claims Reserve accordingly.

The Debtors shall not amend this methodology with respect to the Delta Disputed Claims Reserve and the Comair Disputed Claims Reserve without consultation with the Creditors' Committee or Post-Effective Date Committee, as applicable, and approval of this Court upon proper notice under the Case Management Order.

67.     Other Administrative Claim Bar Date.  All requests for payment of Other Administrative Claims that accrued on or before the Effective Date (other than Professional Fee Claims) must be filed with the Claims Agent and served on counsel for the Debtors by the Other Administrative Claim Bar Date.  Any requests for payment of Other Administrative Claims that are not properly filed and served by the Other Administrative Claim Bar Date shall not appear on the register of claims maintained by the Claims Agent and shall be disallowed automatically without the need for any objection from the Debtors or the Reorganized Debtors or any action by the Bankruptcy Court.  Notwithstanding the foregoing or any provision to the contrary in the Plan, requests for payment of Other Administrative Claims need not be filed with respect to Other Administrative Claims that (a) are for obligations incurred in the ordinary

course of business by the Debtors or the Reorganized Debtors (and are not past due), (b) previously have

been Allowed by Final Order of the Bankruptcy Court (including, but not limited to, PBGC's out-of-

pocket costs and expenses, as defined and limited by section 14 of the PBGC Settlement Agreement, and

the Administrative Claims arising under the Pre-Termination Stipulation and the Pre-Termination

Order), (c) arise under the DIP Facility or the Amex Post-Petition Facility, (d) are for personal injury or

wrongful death, (e) are required to be paid pursuant to Section 10.4(e) of the Plan, (f) are for amounts

owed by any of the Debtors or the Reorganized Debtors under any of their assumed or post-petition

insurance policies or related agreements with ACE American Insurance Company or its affiliates, (g) are

for Cure amounts, (h) are on account of post-petition taxes (including any related penalties or interest)

owed by the Debtors or the Reorganized Debtors to any governmental unit (as defined in section

101(27) of the Bankruptcy Code) or (i) the Debtors or the Reorganized Debtors have otherwise agreed in

writing do not require such a filing.

68.    Approval of Assumption or Rejection of Executory Contracts.  Entry of this

Confirmation Order shall, subject only to the occurrence of the Effective Date, constitute the approval,

(a) pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the

executory contracts and unexpired leases assumed pursuant to Article 10 of the Plan, (b) pursuant to

sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption and assignment of the

executory contracts and unexpired leases assumed and assigned pursuant to Article 10 of the Plan and

(c) pursuant to section 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory

contracts and unexpired leases rejected pursuant to Article 10 of the Plan.

69.    Inclusiveness. Unless otherwise specified on a schedule to the Plan or a notice sent to a

given party, each executory contract and unexpired lease listed or to be listed thereon shall include any

and all modifications, amendments, supplements, restatements and other agreements made directly or

indirectly by any agreement, instrument or other document that in any manner affects such executory

contract or unexpired lease, without regard to whether such agreement, instrument or other document is listed thereon.

70.    <u>Notice of Assumption and Rejection of Executory Contracts and Unexpired Leases Assumed Under the Plan</u>.  The filing of the Plan and the schedules thereto and the publication of notice of the entry of this Confirmation Order provide adequate notice of the assumption, assumption and assignment and rejection of executory contracts and unexpired leases pursuant to Article 10 of the Plan (both for contracts and leases that appear on any of those schedules and for contracts and leases assumed or rejected by category or default).

71.    <u>Cure of Defaults</u>.  The parties to each executory contract and unexpired lease to be assumed or assumed and assigned pursuant to the Plan were afforded with good and sufficient notice of such assumption or assumption and assignment and an opportunity to object and be heard.  Treatment Objections shall be resolved consistent with Section 10.5(c) of the Plan.  Consistent with Section 10.5(d) of the Plan, if a Treatment Objection is filed with respect to any executory contract or unexpired lease sought to be assumed or rejected by any of the Debtors or Reorganized Debtors, the Debtors and the Reorganized Debtors reserve the right (a) to seek to assume or reject such agreement at any time before the assumption, rejection, assignment or Cure with respect to such agreement is determined by Final Order and (b) to the extent a Final Order is entered resolving a dispute as to Cure or the permissibility of assignment (but not approving the assumption of the executory contract or unexpired lease sought to be assumed), to seek to reject such agreement within 14 calendar days after the date of such Final Order, in each case by filing with the Bankruptcy Court and serving upon the applicable Assumption Party or Rejection Party, as the case may be, a Notice of Intent to Assume or Reject.

72.    <u>Treatment Objection Deadline</u>.  With respect to an executory contract or unexpired lease sought to be assumed, rejected or deferred pursuant to the Plan, the Treatment Objection Deadline shall be the deadline for filing and serving a Treatment Objection, which deadline shall be 4:00 p.m.

(prevailing Eastern Time) on, (a) with respect to an executory contract or unexpired lease listed on Schedule 10.2(a), 10.2(b) or 10.2(c), the 15th calendar day after the relevant schedule is filed and notice thereof is mailed, (b) with respect to an executory contract or unexpired lease the proposed treatment of which has been altered by an amended or supplemental Schedule 10.2(a), 10.2(b) or 10.2(c), the 15th calendar day after such amended or supplemental schedule is filed and notice thereof is mailed, (c) with respect to an executory contract or unexpired lease for which a Notice of Intent to Assume or Reject is filed, the 15th calendar day after such notice is filed and notice thereof is mailed, (d) with respect to any executory contract or unexpired lease that is listed on Schedule 10.2(c) but for which no Notice of Intent to Assume or Reject is filed by the Deferred Agreement Deadline, the 15th calendar day after the Deferred Agreement Deadline and (e) with respect to any other executory contract or unexpired lease, including any to be assumed or rejected by category pursuant to Sections 10.1, 10.3 or 10.4 of the Plan (without being listed on Schedule 10.2(a) or 10.2(b)), the deadline for objections to Confirmation of the Plan established pursuant to the Approval Order or other order of the Bankruptcy Court. Notwithstanding the foregoing, with respect to any Municipal Bond Agreement to be assumed or rejected pursuant to Article 10 of the Plan, the deadline for filing and serving a Treatment Objection shall be 4:00 p.m. (prevailing Eastern Time) on (i) the 21st calendar day after the relevant schedule is filed and notice thereof is mailed, (ii) the 21st calendar day after the relevant amended or supplemental schedule is filed and notice thereof is mailed or (iii) the 6th calendar day after the deadline for objections to confirmation of the Plan, as the case may be.

73.    <u>Rejection Claims and Rejection Bar Date</u>.  Any Rejection Claim must be filed with the Claims Agent by the Rejection Bar Date; *provided* that, with respect to any rejected executory contract or unexpired lease that was included on Schedule 10.2(c), the deadline to file a Proof of Claim shall be 30 calendar days after notice of rejection of such executory contract or unexpired lease is provided to the parties to such executory contract or unexpired lease.  Any Rejection Claim for which a Proof of Claim

is not properly filed and served by the such deadline shall be forever barred and shall not be enforceable against the Debtors, the Reorganized Debtors or their respective Estates or properties.  The Debtors or Reorganized Debtors and the Post-Effective Date Committee may contest Rejection Claims in accordance with, and to the extent provided by, Section 9.1 of the Plan.

74.    <u>Extension of Section 365(d)(4) Deadline</u>.  The time pursuant to section 365(d)(4) of the Bankruptcy Code within which the Debtors may assume, assume and assign or reject each executory contract and unexpired lease that is rejected, retained, assumed and/or assigned pursuant to the Plan, this Confirmation Order or any other Order of the Court is hereby extended through the date of entry of an order approving the assumption, assumption and assignment or rejection of such executory contract or unexpired lease.

75.    <u>Extension of Period to Reject, Assume or Assume and Assign Executory Contracts and Unexpired Leases Related to Aircraft Equipment</u>.  The entry of this Confirmation Order constitutes authorization and approval (a) to extend the time within which the Debtors and the Reorganized Debtors may reject, assume or assume and assign executory contracts and unexpired leases that are listed on Schedule 10.2(c) of the Plan or as provided in any Post-Petition Aircraft Agreement or (b) in the alternative, to defer the effectiveness of any such rejection or assumption as provided in any Post-Petition Aircraft Agreement.  Such an extension or deferral contained in any Post-Petition Aircraft Agreement shall be effective notwithstanding anything to the contrary contained in the Plan or any schedule thereto.  Any such rejection, assumption or assumption and assignment will be legal, valid and binding upon the parties to the same extent and with the same effect as if such rejection, assumption or assumption and assignment had been effectuated pursuant to an appropriate authorizing order of this Court entered prior to confirmation of the Plan under section 365 of the Bankruptcy Code.

76.    <u>Adequate Assurance For Counterparties to Executory Contracts Assumed Under the Plan</u>.  Subject only to the occurrence of the Effective Date, all counterparties to all executory contracts and

unexpired leases of the Debtors assumed and assigned in accordance with Article 10 of the Plan are deemed to have been provided with adequate assurance of future performance pursuant to section 365(f) of the Bankruptcy Code.

77.    _Operation as of the Effective Date_.  As of the Effective Date, unless otherwise provided in the Plan or this Confirmation Order, the Reorganized Debtors may operate their businesses and may use, acquire and dispose of property and settle and compromise Claims and Interests without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code.

78.    _Discharge of Claims and Termination of Interests_.  Except as otherwise specifically provided herein or in the Plan, the rights afforded in the Plan and the payments and distributions to be made hereunder shall discharge all existing debts and Claims, and shall terminate all Interests of any kind, nature or description whatsoever against or in the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code.  Except as otherwise specifically provided herein or in the Plan, upon the Effective Date, all existing Claims against the Debtors and Interests in the Debtors shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Interests (and all representatives, trustees or agents on behalf of each holder) shall be precluded and enjoined from asserting against the Reorganized Debtors, their successors or assignees, or any of their assets or properties, any other or further Claim or Interest based upon any act or omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a Proof of Claim and whether or not the facts or legal bases therefore were known or existed prior to the Effective Date.

79.    _Discharge of Debtors_.  Upon the Effective Date and in consideration of the distributions to be made under the Plan, except as otherwise provided herein or in the Plan, each holder (as well as

any representatives, trustees or agents on behalf of each holder) of a Claim or Interest and any Affiliate

of such holder is deemed to have forever waived, released and discharged the Debtors, to the fullest

extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests,

rights and liabilities that arose prior to the Effective Date.  Upon the Effective Date, all such persons are

forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or

asserting any such discharged Claim against or terminated Interest in the Debtors.

80.    <u>Injunction</u>.  Except as otherwise expressly provided herein or in the Plan, all persons or

entities who have held, hold or may hold Claims or Interests and all other parties in interest, along with

their respective present or former employees, agents, officers, directors, principals, representatives and

Affiliates, are permanently enjoined, from and after the Effective Date, from (a) commencing or

continuing in any manner any action or other proceeding of any kind with respect to any such Claim

(including, without limitation, a Securities Litigation Claim) or Interest against the Debtors, the

Reorganized Debtors or property of any Debtors or Reorganized Debtors, other than to enforce any right

to a distribution pursuant to the Plan, (b) the enforcement, attachment, collection or recovery by any

manner or means of any judgment, award, decree or order against the Debtors, the Reorganized Debtors

or property of any Debtors or Reorganized Debtors, other than to enforce any right to a distribution

pursuant to the Plan, (c) creating, perfecting or enforcing any Lien or encumbrance of any kind against

the Debtors or Reorganized Debtors or against the property or interests in property of the Debtors or

Reorganized Debtors, other than to enforce any right to a distribution pursuant to the Plan or

(d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from

the Debtors or Reorganized Debtors or against the property or interests in property of the Debtors or

Reorganized Debtors, with respect to any such Claim or Interest; *provided* that this provision shall have

no effect on any right of setoff, subrogation or recoupment of the Indenture Trustees associated with the

Municipal Bond Indentures to the extent provided under section 553 of the Bankruptcy Code; *provided,*

*further*, that this injunction shall have no effect on the rights of each of (i) the California Franchise Tax

Board, (ii) the Oregon Department of Revenue, (iii) the Texas Comptroller of Public Accounts or

(iv) the Texas Workforce Commission to setoff defensively against any pre-petition refund or similar

Claim that the Debtors might raise for the first time after the Effective Date.  The injunction set forth in

this paragraph extends to any successors or assignees of the Debtors and Reorganized Debtors and their

respective properties and interest in properties.  Nothing in this paragraph, paragraphs 78 or 79 above or

anything else in this Confirmation Order shall be read to discharge any claim, enjoin or preclude any

action by or on behalf of George F. Pickett, John W. Beiser, Elizabeth H. Pickett or Maureen W. Beiser

against Atlantic Southeast Airlines, Inc. or SkyWest, Inc. related to the Supplemental Executive

Retirement Plan (as subsequently amended), originally effective as of May 24, 1995, and originally

established by Atlantic Southeast Airlines, Inc.

81.    <u>Discharge and Injunction:  United States</u>.  Solely with regard to the United States, the

provisions of Section 13.3 of the Plan and paragraph 79 through 80 hereof shall be effective as of the

Confirmation Date, but subject to the occurrence of the Effective Date.  The discharge and injunction

provisions set forth in Section 13.3 of the Plan and any similar provisions in the Plan or Confirmation

Order are not intended and shall not be construed to bar the United States from, subsequent to the

Confirmation Date, (a) exercising otherwise valid and enforceable set-off rights to the extent permissible

under section 553 of the Bankruptcy Code, (b) exercising otherwise valid and enforceable recoupment

rights to the extent permissible under applicable law or (c) pursuing any police or regulatory action

against the Debtors or Reorganized Debtors to the extent excepted from the automatic stay provisions of

section 362 of the Bankruptcy Code; *provided, however*, that (i) nothing in clauses (a), (b) or (c) above

is intended to limit or expand the discharge and injunction to which the Debtors or Reorganized Debtors

are entitled under the Bankruptcy Code or other applicable law, including with regard to the set-off,

recoupment and police or regulatory rights of the United States described in these clauses, (ii) nothing in

clause (a) above is intended to bar the United States from offsetting mutual obligations arising after the

Petition Date between the United States and the Debtors or Reorganized Debtors (to the extent such

offsets are permissible under applicable law) and (iii) nothing in clause (c) above is intended to permit

the United States to assert any claim for the payment of money for acts or omissions occurring prior to

the Confirmation Date.

82.    <u>Term of Injunction or Stays</u>.  Unless otherwise provided in the Plan, any injunction or

stay arising under or entered during the Chapter 11 Cases under sections 105 or 362 of the Bankruptcy

Code or otherwise that is in existence on the Confirmation Date shall remain in full force and effect until

the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

83.    <u>Exculpation</u>.  As provided for in Section 13.5 of the Plan, as of the Effective Date, none

of the Debtors, Reorganized Debtors, the Creditors' Committee, the DIP Agent, the Amex Entities, the

Indenture Trustees, the Retiree Committees, the ALPA Released Parties, PBGC, DP3, Inc. or any of

their respective Affiliates, members, officers, directors, employees, advisors, actuaries, accountants,

attorneys, financial advisors, investment bankers, consultants, professionals or agents, shall have or

incur any liability to any holder of a Claim or Interest for any act or omission in connection with, related

to or arising out of, the Chapter 11 Cases, the negotiation of any settlement or agreement in the

Chapter 11 Cases, the pursuit of confirmation of the Plan, the consummation of the Plan, the preparation

and distribution of the Disclosure Statement, the offer, issuance and distribution of any securities issued

or to be issued pursuant to the Plan (including pursuant to or in connection with any Post-Petition

Aircraft Agreement) or the administration of the Plan or the property to be distributed under the Plan,

except for willful misconduct, ultra vires acts or gross negligence.

84.    <u>Exculpation:  United States</u>.  Neither Section 13.5 of the Plan nor paragraph 83 above

shall release, enjoin or otherwise bar any claims of the United States against any non-debtors that

(a) arise under the criminal, environmental or internal revenue laws of the United States, or (b) do

not otherwise arise from any conduct in connection with the disposition of the Chapter 11 Cases,

negotiation of any settlement or agreement in the Chapter 11 Cases, the pursuit of confirmation of the

Plan, the consummation of the Plan, the preparation and distribution of the Disclosure Statement, the

offer, issuance and distribution of any securities issued or to be issued pursuant to the Plan (including

pursuant to or in connection with any Post-Petition Aircraft Agreement) or the administration of the Plan

or the property to be distributed.

85.    <u>Release by the Debtors</u>.  As provided for in Section 13.6 of the Plan, as of the Effective

Date, the Debtors, their Estates and the Reorganized Debtors release all of the Released Parties from any

and all Causes of Action (other than the rights of the Debtors or the Reorganized Debtors to enforce

applicable post-petition agreements (including, without limitation, settlement agreements), any order

entered in the Chapter 11 Cases, the Plan and the Plan Documents including contracts, instruments,

releases, indentures and other agreements or documents delivered thereunder) held, assertable on behalf

of or derivative from the Debtors, whether known or unknown, foreseen or unforeseen, existing or

hereafter arising, in law, equity or otherwise, based on or relating to or in any manner arising from, in

whole or in part, the Debtors, the Debtors' restructuring, the Chapter 11 Cases, the purchase, sale or

rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions

or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual

arrangements between any Debtor, any Released Party, the restructuring of Claims and Interests prior to

or in the Chapter 11 Cases, the negotiation, formulation or preparation of the Plan and Disclosure

Statement, or related agreements, instruments or other documents, which Causes of Action are based in

whole or in part on any act, omission, transaction, event or other occurrence (except for willful

misconduct, ultra vires acts, or gross negligence) taking place before the Effective Date.

Notwithstanding the foregoing, if any Released Party directly or indirectly brings or asserts any Claim or

Cause of Action in any way arising out of or related to any document or transaction that was in existence

prior to the Effective Date against the Debtors, the Reorganized Debtors or any of their respective Affiliates, officers, directors, members, employees, advisors, actuaries, attorneys, financial advisors, investment bankers, professionals or agents, then the release set forth in Section 13.6 of the Plan (but not any release or indemnification or any other rights or claims granted under any other section of the Plan or under any other document or agreement) shall automatically and retroactively be null and void *ab initio* with respect to such Released Party; *provided, however,* that the immediately preceding clause shall not apply to the prosecution in this Court (or any appeal therefrom) of the amount, priority or secured status of any pre-petition Claim against the Debtors.

86.    <u>Indemnity</u>.  As provided for in Section 13.7 of the Plan:

(a)    The Debtors and Reorganized Debtors (collectively, and solely, for the purpose of Section 13.7 of the Plan, the "Debtors"), shall indemnify and hold harmless the Creditors' Committee and its individual members and, as to the individual members, their respective advisors, officers, directors and employees, and each of their respective successors and assigns (collectively, the "**Indemnified Persons**"), to the full extent lawful, from and against all losses, claims, damages, and liabilities incurred by them that are related to or arise out of (i) the formulation, negotiation and pursuit of the confirmation or consummation of the Plan or (ii) the Indemnified Persons' consideration of other proposals for the reorganization of the Debtors under chapter 11 of the Bankruptcy Code.  The Debtors will not be responsible, however, for any losses, claims, damages, liabilities or expenses that resulted from the bad faith, gross negligence, willful misconduct or ultra vires conduct of any Indemnified Person;

(b)    Promptly after receipt by an Indemnified Person of notice of any complaint or the commencement or written threat of any action or proceeding with respect to which indemnification is being sought hereunder, such person will notify the Debtors in writing of such event, but failure to so notify the Debtors will not relieve the Debtors of any liability the Debtors may have hereunder, except to

43

the extent that such failure materially prejudices the Debtors' rights, defenses or liability.  If the Debtors

so elect or are requested to do so by such Indemnified Person, the Debtors will assume the defense of

such action or proceeding, including the employment of counsel reasonably satisfactory to the

Indemnified Person and the payment of the fees and disbursements of such counsel.  In the event,

however, such Indemnified Person reasonably determines in its judgment that having common counsel

would present such counsel with a conflict of interest, or if the Debtors fail to assume the defense of the

action or proceeding, in either case in a timely manner, then such Indemnified Person may, upon written

notice to the Debtors, employ separate counsel reasonably satisfactory to the Debtors to represent or

defend it in any such action or proceeding, and the Debtors will pay the reasonable fees and

disbursements of such counsel; *provided, however*, that the Debtors will not be required to pay the fees

and disbursements of more than one separate counsel (in addition to local counsel) for all Indemnified

Persons in any jurisdiction in any single action or proceeding.  In any action or proceeding the defense

of which the Debtors assume, the Indemnified Person will have the right to participate in such litigation

and to retain its own counsel at such Indemnified Person's own expense.  Each Indemnified Person will

cooperate with all reasonable requests of the Debtors with respect to the defense of any such matters.

> (c)    The Debtors further agree that they will not, without the prior written consent of

an Indemnified Person (which consent shall not unreasonably be withheld), settle or compromise or

consent to the entry of any judgment in any pending or threatened claim, action, suit or proceeding in

respect of which indemnification has been requested hereunder by such person (whether or not the

Indemnified Person is an actual party to such claim, action, suit or proceeding) unless such settlement,

compromise or consent includes an unconditional release of such Indemnified Person from all liability

arising out of such claim, action, suit or proceeding.  In no event shall the Debtors be liable for the

settlement of any claim, action, suit or proceeding effected by an Indemnified Person without the

Debtors' written consent.

87.    <u>Voluntary Releases by the Holders of Claims and Interests</u>.  As provided for in Section

13.8 of the Plan, for good and valuable consideration, on and after the Effective Date, holders of Claims

that (a) voted to accept or reject the Plan and (b) did not elect (as permitted on the Ballots) to opt out of

the releases described in this paragraph, shall be deemed to have conclusively, absolutely,

unconditionally, irrevocably and forever, released and discharged the Released Parties from any and all

Causes of Action whatsoever, including derivative Claims asserted on behalf of a Debtor, whether

known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise,

based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors'

restructuring, the Chapter 11 Cases, the purchase, sale or rescission of the purchase or sale of any

security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or

Interest that is treated in the Plan, the business or contractual arrangements between any Debtor, any

Released Party, the restructuring of Claims and Interests prior to or in the Chapter 11 Cases, the

negotiation, formulation or preparation of the Plan and Disclosure Statement, or related agreements,

instruments or other documents, which Causes of Action are based in whole or in part on any act,

omission, transaction, event or other occurrence (except for willful misconduct, ultra vires acts, or gross

negligence) taking place before the Effective Date.  The vote or election of a trustee or other agent under

this paragraph acting on behalf of or at the direction of a holder of a Claim shall bind such holder to the

same extent as if such holder had itself voted or made such election.  A holder of a Claim who did not

cast a Ballot or who was not entitled to cast a Ballot will be deemed to have opted out of the releases set

forth in this paragraph.

88.    <u>Preservations of Causes of Action</u>.

(a)    Except as expressly provided in Article 13 of the Plan, nothing contained in the

Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights or Causes

of Action that the Debtors or the Reorganized Debtors may have, or that the Reorganized Debtors may

choose to assert on behalf of their respective Estates, under any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, (i) any and all Causes of Action or Claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim and/or claim for setoff that seeks affirmative relief against the Debtors, the Reorganized Debtors, their officers, directors or representatives or (ii) the turnover of any property of the Debtors' Estates. A non-exclusive list of retained Causes of Action is attached to the Plan as Schedule 13.11.

(b)    Except as set forth in Article 13 of the Plan, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights or Causes of Action that the Debtors had immediately prior to the Petition Date or the Effective Date against or with respect to any Claim left Unimpaired by the Plan. The Reorganized Debtors shall have, retain, reserve and be entitled to assert all such rights and Causes of Action as fully as if the Chapter 11 Cases had not been commenced, and all of the Reorganized Debtors' legal and equitable rights respecting any Claim left Unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Cases had not been commenced.

89.    <u>Pension Matters</u>. In accordance with, and subject to the terms of, the PBGC Settlement Agreement, Reorganized Delta shall continue the Delta Retirement Plan and not discharge any liabilities with respect thereto; *provided*, *however*, that nothing in the Plan, this Confirmation Order or the PBGC Settlement Agreement shall be construed to (a) create or continue any funding liability or other obligation with respect to the Delta Retirement Plan not otherwise required or created under the Pension Protection Act upon the election of the alternative funding schedule provided for in section 402(a)(1) of such Act or (b) change or modify the rules of section 402(e) or (f) of such Act. On or prior to the Effective Date, PBGC and Reorganized Delta will enter into a Registration Rights Agreement, in accordance with, and subject to the terms of, the PBGC Settlement Agreement. The PBGC Settlement

Agreement, and not the terms of this Confirmation Order or the Plan, governs the terms and conditions agreed to by the parties thereto.

90.     PBGC Settlement Agreement Amendment.  Pursuant to sections 363(b) and 1123(b)(3) of the Bankruptcy Code, the Debtors' entry into the PBGC Settlement Agreement Amendment is hereby authorized and approved.

91.     Delta Air Lines Rabbi Trust.  The trustee of that certain Grantor Trust between Delta and the Trust Company Bank dated as of October 16, 1986 (the "**Delta Air Lines Rabbi Trust**") is hereby authorized and directed to transfer to Delta all of the assets of the Delta Air Lines Rabbi Trust within 3 Business Days following the Effective Date.

92.     Retention of Jurisdiction.  In accordance with (and as limited by) Article 16 of the Plan and section 1142 of the Bankruptcy Code, this Court shall have exclusive jurisdiction of all matters arising out of and related to the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)     To hear and determine all matters with respect to the assumption or rejection of executory contracts or unexpired leases and the allowance of Cure amounts and Claims resulting therefrom;

(b)     To hear and determine any motion, adversary proceeding, application, contested matter or other litigated matter pending on or commenced after the Confirmation Date;

(c)     To hear and determine all matters with respect to the allowance, disallowance, liquidation, classification, priority or estimation of any Claim;

(d)     To ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan;

(e)     To hear and determine all applications for compensation and reimbursement of Professional Fee Claims;

(f)    To hear and determine any application to modify the Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement or any order of the Bankruptcy Court, including this Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(g)    To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan, this Confirmation Order, any transactions or payments contemplated hereby or any agreement, instrument or other document governing or relating to any of the foregoing;

(h)    To issue injunctions, enter and implement other orders and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation or enforcement of the Plan, this Confirmation Order or any other order of the Bankruptcy Court;

(i)    To issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan;

(j)    To enter, implement or enforce such orders as may be appropriate in the event this Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(k)    To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code (including the expedited determination of tax under section 505(b) of the Bankruptcy Code);

(l)    To hear and determine any other matters related to the Plan and not inconsistent with the Bankruptcy Code;

(m)    To determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, the Approval Order, this Confirmation Order, any of the Plan

Documents or any other contract, instrument, release or other agreement or document related to the Plan, the Disclosure Statement or the Plan Supplements;

(n)    To recover all assets of the Debtors and property of the Debtors' Estates, wherever located;

(o)    To hear and determine all disputes involving the existence, nature or scope of the Debtors' discharge, including any dispute relating to any liability arising out of the termination of employment or the termination of any employee or retiree benefit program, regardless of whether such termination occurred prior to or after the Effective Date;

(p)    To hear and determine any rights, Claims or Causes of Action held by or accruing to the Debtors or the Reorganized Debtors pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory;

(q)    To enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Chapter 11 Cases with respect to any Person;

(r)    To hear and determine any disputes arising in connection with the interpretation, implementation or enforcement of any Post-Petition Aircraft Agreement;

(s)    To hear any other matter not inconsistent with the Bankruptcy Code; and

(t)    To enter a final decree closing the Chapter 11 Cases.

Notwithstanding the foregoing, and except for all matters with respect to (i) the assumption, assumption and assignment or rejection of executory contracts and unexpired leases, (ii) Adversary Proceeding 07-01561 entitled Delta Air Lines, Inc. v. City of Los Angeles et al. and (iii) the allowance, disallowance, liquidation, classification, priority or estimation of any Claim, the Bankruptcy Court shall have no jurisdiction over (x) the post-Effective Date ordinary-course conduct of any party in connection with the operation of the LAX and/or Ontario airports unrelated to (i), (ii) or (iii)

49

above or (y) claims or causes of action unrelated to (i), (ii) or (iii) above and to the extent arising after the Effective Date in connection with the operation of the LAX and/or Ontario airports.

93.     <u>Post-Effective Date Committee</u>.  As provided in Section 17.5 of the Plan, as of the Effective Date, there shall be created the Post-Effective Date Committee, which shall be subject to the jurisdiction of the Court.  The Post-Effective Date Committee's rights and powers shall be strictly limited as set forth in Section 17.5 of the Plan.  Unless the Post-Effective Date Committee votes to disband earlier, the existence of the Post-Effective Date Committee, and all powers associated therewith, shall terminate when there remains (a) less than $875 million of Disputed Unsecured Claims relating to the lease or financing of Aircraft Equipment and (b) less than $500 million of Disputed Claims relating to tax indemnity agreements for Aircraft Equipment.

94.     <u>Enforceability of Plan Documents</u>.  Pursuant to sections 1123(a) and 1142(a) of the Bankruptcy Code and the provisions of this Confirmation Order, the Plan and all Plan-related documents shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

95.     <u>Ownership and Control</u>. The consummation of the Plan shall not, unless the Debtors expressly agree in writing, constitute a change of ownership or change in control, as such terms are used in any statute, regulation, contract or agreement (including, but not limited to, any agreements assumed by the Debtors pursuant to the Plan or otherwise and any agreements related to Aircraft Equipment, employment, severance or termination agreements or insurance agreements) in effect on the Effective Date and to which the Debtors are a party.

96.     <u>DIP Facility Matters</u>.

(a)     All DIP Facility Claims shall be Allowed as provided in the DIP Order.  On or prior to the Effective Date, in complete satisfaction of such Claims, each DIP Facility Claim shall be paid in full in Cash; provided, however, that to the extent that, as of the Effective Date, any Excluded DIP Obligation remains contingent and has not been paid in full in Cash, then any such obligation shall

survive the occurrence of the Effective Date, and the payment on such date of the DIP Facility Claims shall in no way affect or impair the obligations, duties and liabilities of the Debtors or the rights of the Administrative Agent and the Lenders (as defined in the DIP Facility) relating to any Excluded DIP Obligations, the performance of which is required after the Effective Date.

(b)    Contemporaneously with all amounts owing in respect of principal included in the DIP Facility Claims, interest accrued thereon to the date of payment and fees, expenses and non-contingent indemnification obligations as required by the DIP Facility and arising prior to the Effective Date being paid in full in Cash (or, in the case of the outstanding letters of credit under the DIP Facility, being guaranteed by back-to-back letters of credit, or collateralized by Cash, in each case in an amount equal to 105% of the face amount of such outstanding letters of credit):  (i) the DIP Facility and the "Loan Documents" referred to therein shall (subject to the proviso in the immediately preceding paragraph) automatically terminate, in each case without further action by the DIP Agent or DIP Lenders, (ii) all Liens on property of the Debtors and the Reorganized Debtors arising out of or related to the DIP Facility shall automatically terminate, and all Collateral subject to such Liens shall be automatically released, in each case without further action by the DIP Agent or DIP Lenders and (iii) all guarantees of the Debtors and Reorganized Debtors arising out of or related to the DIP Facility Claims shall be automatically discharged and released, in each case without further action by the DIP Agent or DIP Lenders.  The DIP Agent and DIP Lenders shall take all reasonable actions to effectuate and confirm such termination, release and discharge as requested by the Debtors or the Reorganized Debtors.

97.    Amex Post-Petition Facility Matters

(a)    All Amex Post-Petition Facility Claims shall be Allowed as provided in the DIP Order.  In complete satisfaction of the Amex Post-Petition Facility Claims, on or prior to the Effective Date, but in no event later than the date of payment of the DIP Facility Claim, (i) all amounts owing in respect of principal included in the Amex Post-Petition Facility Claims, interest accrued thereon,

professional fees and expenses and non-contingent indemnification obligations as required by the Amex Post-Petition Facility and arising prior to the Effective Date shall be paid in full and in Cash and (ii) any Remaining Pre-Paid Excise Taxes shall be paid in full in Cash.  From and after the Effective Date, the Amex Agreements, each in such form and substance as in effect immediately prior to the Effective Date, shall continue to be in effect, except to the extent set forth in the paragraph immediately below; *provided* that the Debtors agree not to make any amendments to the Amex Agreements prior to the Effective Date that are outside of the ordinary course of business without Bankruptcy Court approval.

(b)    Without limiting the foregoing, upon the later of (x) the Effective Date and (y) the date on which all principal of the Amex Post-Petition Facility Claims, interest accrued thereon, professional fees and expenses and non-contingent indemnification obligations as required by the Amex Post-Petition Facility and arising prior to the Effective Date and any Remaining Pre-Paid Excise Taxes are paid in full in Cash: (i) the Amex Post-Petition Facility and the "Other Documents" referred to therein shall automatically terminate, except that any obligation under any provision that, pursuant to Section 14.7 of each Amex Post-Petition Facility, survives the termination of such Amex Post-Petition Facility and has not been satisfied in full on or prior to the Effective Date shall survive the occurrence of the Effective Date, (ii) all Liens on property of the Debtors and the Reorganized Debtors in favor of the Amex Entities (including, without limitation, any Liens arising out of, related to or securing the Amex Post-Petition Facility Claims and any Liens arising out of, related to or securing the Card Service Agreement, the Co-Branded Card Agreement and the MR Agreement) shall automatically terminate, and all collateral subject to such Liens shall be automatically released (*provided, however,* that nothing in this clause (ii) shall affect the rights, if any, of Amex under any Amex Agreement to offset, recoup or create a reserve or assert similar rights to the extent more particularly set forth in such agreements) and (iii) all guarantees of the Debtors and Reorganized Debtors in favor of the Amex Entities set forth in the Amex Post-Petition Facility shall be automatically discharged and released, in each case without further

action by the Amex Entities.  The Amex Entities shall take all reasonable actions requested by the

Debtors or the Reorganized Debtors to effectuate and confirm such termination, discharge and release.

98.    <u>Compensation Programs</u>.  The entry of this Confirmation Order constitutes authorization

and approval of the Compensation Programs in all respects, including as follows:

(a)    The Compensation Programs, which include, without limitation, the 2007

Performance Compensation Plan,[4] are hereby approved as necessary for purposes of compliance with

(i) Rule 16b-3, issued under the Securities Exchange Act of 1934, as amended, (ii) Section 162(m) of the

Internal Revenue Code and (iii) applicable New York Stock Exchange rules;

(b)    The solicitation of votes on the Plan pursuant to the Disclosure Statement and the

Plan Supplements constitute a solicitation of the holders of New Delta Common Stock for approval of

the Compensation Programs; and

(c)    All consideration provided under the Compensation Programs is hereby deemed

to be "equity or other consideration" for "non-pilot employees" that is made "in respect of the sacrifices

made by them in furtherance of the Company's effort to restructure or as incentive for the non-pilot

employees future service to the Company" within the meaning of the Bankruptcy Protection Covenant

Between Delta Air Lines, Inc. and Air Line Pilots Association, International, effective as of June 1,

2006.

99.    <u>Exemption from Transfer Taxes and Recording Fees</u>.  Pursuant to section 1146(a) of the

Bankruptcy Code, none of the issuance, Transfer or exchange of notes or equity securities under the

Plan, the creation, filing or recording of any mortgage, deed of trust or other security interest, the

making, assignment, filing or recording of any lease or sublease, the transfer of title to or ownership of

any of the Debtors' interests in any Aircraft Equipment or the making or delivery of any deed, bill of

---

[4] A summary of which is included as Exhibit 1 to the Plan Supplement entitled "Summary of Emergence Compensation Programs for Delta Air Lines, Inc." filed on March 20, 2007.

sale or other instrument of transfer under, in furtherance of, or in connection with the Plan, including, without limitation, the New Credit Facility, the New Delta Plan Securities, any Post-Petition Aircraft Agreement or any merger agreements or agreements of consolidation, deeds, bills of sale or assignments executed in connection with any of the transactions contemplated under the Plan, shall be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, Cape Town filing or recording fee, FAA filing or recording fee or other similar tax or governmental assessment in the United States.  All sale transactions consummated by the Debtors and approved by the Court including, without limitation, the transfers effectuated under the Plan, the sale by the Debtors of owned property or assets pursuant to section 363(b) of the Bankruptcy Code or pursuant to any Post-Petition Aircraft Agreement, and the assumption, assignment and sale by the Debtors of unexpired leases of non-residential real property pursuant to section 365(a) of the Bankruptcy Code, are deemed to have been made under, in furtherance of, or in connection with the Plan and, therefore, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, Cape Town filing or recording fee, FAA filing or recording fee or other similar tax or governmental assessment in the United States.  The appropriate federal, state and local governmental officials and agents are hereby directed to forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

100.    <u>Authorization to Modify Plan Supplements</u>.  Without need for further order or authorization of the Court, the Debtors or the Reorganized Debtors are authorized and empowered to make any and all modifications to any and all documents included as part of the Plan Supplements or otherwise contemplated by the Plan that are consistent with the Plan.

101.  <u>Effectiveness of All Actions</u>.  All actions authorized to be taken pursuant to the Plan shall be effective on, prior to or after the Effective Date pursuant to this Confirmation Order, without further application to, or order of the Court, or further action by the respective officers, directors, members or stockholders of Reorganized Delta or the other Reorganized Debtors and with the effect that such actions had been taken by unanimous action of such officers, directors, members or stockholders.

102.  <u>Approval of Consents</u>.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplements, the Disclosure Statement, the Plan Supplements, and any documents, instruments or agreements, and any amendments or modifications thereto.

103.  <u>Withholding and Reporting Procedures</u>.  The withholding procedures described below are hereby approved as necessary in order to avoid unreasonable delay in distributions of payments to retirees and former employees of the Debtors and will fulfill the Debtors' obligations as withholding agents with respect to such payments.

> (a)  Retirees and former employees with a bankruptcy claim amount (i) of $2,000 or less (Delta Class 6) will be subject to flat-rate federal income tax withholding at a 10% rate; (ii) greater than $2,000 but less than $100,000 (Delta Class 5 and retirees and former employees with such claims in Comair Class 4) will be subject to flat-rate federal income tax withholding at a 15% rate; and (iii) greater than $100,000 (Delta Class 4 and retirees and former employees with such claims in Comair Class 4) will be subject to 25% flat-rate federal income tax withholding.  To effect income tax withholding in the case of retirees and former employees who receive shares, the Reorganized Debtors will withhold a number of shares equal to the applicable income-tax withholding rate noted above for each retiree and former employee multiplied by the total shares received.  As an example, if a retiree or former employee was otherwise entitled to receive 1,000 shares and was subject to a 25% withholding rate, the Reorganized Debtors will withhold 250 shares.  All retirees and former employees will

also be subject to withholding for any state and local taxes and, if applicable, FICA.

(b)      The shares withheld by the Reorganized Debtors will be sold on behalf of the retiree or former employee over a period of not more than thirty days (and perhaps fewer than thirty days) following the Debtors' emergence from bankruptcy.  When the withheld shares have been sold, the balance of the shares will be distributed directly to a brokerage account established for the retiree or former employee.  Within seven days thereafter, the Reorganized Debtors will deposit with the IRS an amount equal to the net cash proceeds from the sale of the shares withheld for federal income tax, plus any interest earned thereon.  For reporting purposes, the Reorganized Debtors will report taxable income to the retiree or former employee equal to the sum of (i) the fair market value of the shares distributed to the retiree or former employee on  the date of distribution to the retiree or former employee's brokerage account and (ii) the net proceeds realized upon the sale of the withheld shares (including any interest income earned thereon).  The Reorganized Debtors will remit to the IRS and report the net proceeds (including any interest income earned) of the sales of the shares withheld for federal tax purposes over the 30-day period.   The retiree or former employee's tax basis in the shares received will equal the fair market value of the shares distributed to the retiree or former employee on the date of distribution.

(c)      Under the Debtors' Plan of Reorganization, retirees and former employees with a bankruptcy claim of less than $100,000 may request to have their claim satisfied in cash, and retirees and former employees in Delta Class 6 will receive only cash with respect to their claims.  To the extent a retiree or former employee receives a cash payment, the Reorganized Debtors will simply withhold a portion of this cash and will use that cash to pay withholding based on a flat-rate method.

(d)      Retirees and former employees have been notified, by the *Notice of Supplemental Procedures Regarding Tax Withholding Obligations Relevant to Retirees and Former Employees of the Debtors* [Docket No. 5637], filed by the Debtors on April 11, 2007, that if they do not wish to have the Reorganized Debtors withhold and sell shares in order to satisfy the withholding requirements, they will need to make an election to provide the Reorganized Debtors with cash in satisfaction of flat-rate withholding.

104.    Payment of Professionals.  Upon entry of this Confirmation Order, any requirement that

Professionals comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or

compensation for services rendered after the date hereof shall terminate, and the Debtors and

Reorganized Debtors may employ and pay all Professionals in the ordinary course of business (including

with respect to the month in which the Confirmation Date occurred) without any further notice to, action by or order or approval of this Court or any other party. Professionals shall be paid pursuant to the "Monthly Statement" process set forth in the Interim Compensation Order with respect to all calendar months ending prior to the Confirmation Date.

105.    <u>Dissolution of Statutory Committees</u>. Upon the Effective Date, the Creditors' Committee and all other statutory committees appointed in the Chapter 11 Cases shall dissolve automatically, and their members shall be released and discharged from all rights, duties, responsibilities and liabilities arising from, or related to, the Chapter 11 Cases and under the Bankruptcy Code.

106.    <u>Notice of Reinstatement</u>. The Debtors have filed a Notice of Reinstatement [Docket No. 5513], which reinstatements shall be effective upon the Effective Date.

107.    <u>Disclosure: Agreements and Other Documents</u>. The Debtors have disclosed all material facts regarding: (a) the New Delta Certificate of Incorporation, New Delta Bylaws or similar constituent documents, (b) the selection of directors and officers for the Reorganized Debtors, (c) the New Credit Facility, (d) the distribution of Cash, (e) the New Delta Plan Securities, (f) the New Ad Hoc Committee Aircraft Notes, (g) the Post-Petition Aircraft Agreements, (h) the employment, retirement and indemnification agreements, incentive compensation programs, retirement income plans, welfare benefit plans and other employee plans and related agreements, (i) the other matters provided for under the Plan involving corporate action to be taken by or required of the Reorganized Debtors, and (j) all contracts, leases, instruments, releases, indentures and other agreements related to any of the foregoing.

108.    <u>Binding Effect</u>. The Plan shall be binding upon and inure to the benefit of the Debtors, the Reorganized Debtors, all present and former holders of Claims or Interests, all entities that are parties to or are subject to Post-Petition Aircraft Agreements and their respective heirs, executors, administrators, successors and assigns.

109.    <u>Governing Law</u>.  Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent an exhibit to the Plan or a schedule or Plan Documents provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the principles of conflict of laws thereof.

110.    <u>Notice of Entry of Confirmation Order and Effective Date</u>.  Pursuant to Bankruptcy Rules 2002(f)(7), 2002(k) and 3020(c), the Reorganized Debtors shall file and serve notice of entry of this Confirmation Order and Effective Date in substantially the form annexed hereto as Exhibit B (the "**Notice of Confirmation**") on all holders of Claims and Interests, the United States Trustee for the Southern District of New York, the attorneys for the Creditors' Committee and other parties in interest by causing the Notice of Confirmation to be delivered to such parties by first-Class mail, postage prepaid, within 10 business days after the Effective Date.  The Notice of Confirmation shall also be published in *The Atlanta Journal Constitution, The Wall Street Journal* (National Edition), *The Salt Lake Tribune* and *The Cincinnati Enquirer* and posted on the website of the Debtors' Case Information website at <u>www.deltadocket.com</u>.  Such notice is adequate under the particular circumstances and no other or further notice is necessary.  The form of Notice of Confirmation substantially in the form annexed hereto as Exhibit A is approved.  The Notice of Confirmation shall also serve as the notice setting forth the Other Administrative Claim Bar Date required by section 8.2 of the Plan and as the notice of the Effective Date.

111.    <u>Substantial Consummation</u>.  On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

112.    <u>References to Plan Provisions</u>.  The failure to include or specifically describe or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the

effectiveness of such provision, it being the intent of the Court that the Plan be approved and confirmed in its entirety.

113.    <u>Findings of Fact</u>.  The determinations, findings, judgments, decrees and orders set forth and incorporated herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  Each finding of fact set forth or incorporated herein, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law.  Each conclusion of law set forth or incorporated herein, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

114.    <u>Conflicts Between Confirmation Order and Plan</u>.  The provisions of the Plan and of this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purposes of each; *provided*, *however*, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then, solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any such provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence.

115.    <u>Final Order</u>.  This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

116.    <u>Effectiveness of Order</u>.  In accordance with Bankruptcy Rules 3020(e), 6004(h) and 6006(d) (and notwithstanding any other provision of the Bankruptcy Code or the Bankruptcy Rules), this Confirmation Order shall be stayed until 9 a.m. (prevailing Eastern time) on Monday, April 30, 2007 and shall be effective at that time without further order of this Court; *provided, however*, that nothing herein or therein shall affect or supersede the provisions of the approval order related to the CVG Settlement Agreement providing that no distributions pursuant to the CVG Settlement Agreement shall be made prior to 10 a.m. (prevailing Eastern time) on May 3, 2007.  This Confirmation Order is and shall be deemed to be a separate order with respect to each Debtor for all purposes.


Dated:    April 25, 2007
          New York, New York


                                        /s/ Adlai S. Hardin, Jr.
                                        UNITED STATES BANKRUPTCY JUDGE