UNITED STATES BANKRUPTCY COURT            **NOT FOR PUBLICATION**

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

In re:

DELTA AIR LINES, INC., *et al.*,

                 Reorganized Debtors.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

Chapter 11

Case No. 05 B 17923 (ASH)
(Jointly Administered)

**A P P E A R A N C E S :**

**DEBEVOISE & PLIMPTON LLP**
**Special Aircraft Attorneys for Reorganized Debtors**
**By: Michael E. Wiles, Esq.**
    **Richard F. Hahn, Esq.**
**919 Third Avenue**
**New York, NY 10022**

**WHITE & CASE LLP**
**Counsel to Certain Comair Creditors**
**By: Evan C. Hollander, Esq.**
    **Andrew W. Hammond, Esq.**
    **Scott Greissman, Esq.**
    **Douglas P. Baumstein, Esq.**
    **Elizabeth Feld, Esq.**
**1155 Avenue of the Americas**
**New York, NY 10036**

**AKIN GUMP STRAUSS HAUER & FELD LLP**
**Counsel for Post-Effective Date Committee**
**By:   Daniel H. Golden, Esq.**
      **David H. Botter, Esq.**
      **Mitchell P. Hurley, Esq.**
**590 Madison Avenue**
**New York, NY 10022-2524**

**ADLAI S. HARDIN, JR.**
**UNITED STATES BANKRUPTCY JUDGE**

## DECISION AND ORDER DENYING MOTION TO REQUIRE COURT APPROVAL OF CERTAIN POST-CONFIRMATION AIRCRAFT AGREEMENTS AND SETTLEMENTS

This motion was filed by seven creditors (the "Movants") of the Comair debtors (Comair, Inc., Comair Holdings LLC, Comair Services, Inc., Delta AirElite Business Jets, Inc. and Delta Connection Academy, Inc., collectively "Comair"), wholly-owned indirect subsidiaries of debtor/ reorganized debtor Delta Air Lines, Inc. ("Delta"). The motion stems from the fact that the estimate by Delta/Comair of the total allowable unsecured claims against Comair, as set forth in the Disclosure Statement, was less than a revised estimate of the total unsecured claims against Comair revealed after

confirmation of Delta's Plan, which may result in a diminution in the estimated distribution to Comair creditors under the Plan.[1]

The motion seeks an order compelling Comair to obtain prior Bankruptcy Court approval of (a) all aircraft restructuring agreements entered into after the April 30, 2007 Effective Date of the Plan and (b) all post-Effective Date settlements of claims with an estimated or face value greater than $30 million.  This motion also apparently seeks to void all aircraft agreements and claims resolutions that Comair has entered into since April 30, 2007.

## Jurisdiction

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(b) and 157(a) and the standing order of referral to bankruptcy judges dated July 10, 1984, signed by Acting Chief Judge Robert J. Ward.  This is a core proceeding under 28 U.S.C. § 157(b)(2).

## Background

**The Delta Disclosure Statement and Plan**

The several cases filed by Comair, Delta and related companies were filed under Chapter 11 of the Bankruptcy Code on September 14, 2005.  The cases were jointly administered but only partially substantively consolidated.  The debtors (referring to Delta, the Comair entities and the other Delta affiliates) filed initial versions of the debtors' Plan and Disclosure Statement on December 19, 2006.  Amended drafts of the Plan were filed on January 18, February 2 and April 23, 2007.  Amended drafts of the Disclosure Statement were filed on January 18 and February 2, 2007.

The Plan was premised upon the limited and separate consolidation of the estates of the Comair debtors with one another and the estates of Delta and its other affiliated debtors with one another. Accordingly, claims held by creditors of the Comair debtors are treated separately under the Plan from claims held by creditors of the Delta debtors.  Pursuant to the Plan holders of general unsecured claims against all of the debtors will receive stock in reorganized Delta ("New Delta Common Stock").  The

---

[1] As made clear in the Disclosure Statement, the total Comair unsecured claims pool has always been, and still is, a moving target as the claims resolution process and aircraft finance restructurings continue.

- 2 -

New Delta Common Stock is divided under the Plan between the Delta debtors (the "Delta Allocation") and the Comair debtors (the "Comair Allocation") based on what was then projected to be "the mid-point of the equity valuation range for the Comair Debtors (*i.e.,* $730 million) relative to the mid-point valuation of the equity valuation range for the Delta Debtors (*i.e.,* $10 billion)." Thus, "if the total number of Plan Shares [of New Delta Common Stock] was determined to be 100, the Delta Allocation would be 93.2 shares and the Comair Allocation would be 6.8 shares." (Motion at 5)

As stated in the final Disclosure Statement as of February 2, 2007, the debtors' estimate of total unsecured claims against the Comair debtors was $800 million, while the total unsecured claims against the Delta debtors was estimated at approximately $14.2 billion. The Disclosure Statement further estimated that parties holding general unsecured claims against Comair were projected to recover 76% - 100% of such claims, while holders of general unsecured claims against Delta were projected to recover 62% - 78% of such claims.

The Delta Allocation and the Comair Allocation of New Delta Common Stock in reorganized Delta, as well as the projected percentage ranges of recovery for Delta creditors and Comair creditors which were estimated in the Disclosure Statement, all were based on assumed future valuations, projections and estimates as of the February 2, 2007 date of the final Disclosure Statement. As revealed in the Disclosure Statement, however, all of these valuations, projections and estimates were necessarily subject to change with the passage of time and the reorganization process. For example, the Disclosure Statement made clear that the process of aircraft financing restructuring agreements and claims resolution through litigation or settlements would necessarily continue well beyond the Effective Date of the Plan. The Delta Allocation and the Comair Allocation of New Delta Common Stock would not change based on changes in the numbers as the estimates and projections became actual, final numbers. But changes in the claims pools of Delta claimants and Comair claimants would change the ultimate amount of New Delta Common Stock to be received *pro rata* by each Delta creditor and each Comair creditor. Thus, an increase in the Comair claims pool would result in dilution of each claimant's *pro rata* share of the Comair Allocation, and *vice versa*.

The voting deadline with respect to the Plan was April 9, 2007. At no time prior to the voting deadline did the debtors update their disclosure to report changes in estimates of the total amount of unsecured claims in the Comair or the Delta claims pools.

The confirmation hearing was held and this Court entered an order confirming the Plan on April 25, 2007. The Plan became effective on April 30, 2007 (the "Effective Date").

**Restructuring agreements and settlements; creditor oversight**

Virtually every major corporate Chapter 11 reorganization involves a process of resolving claims disputes and restructuring the debtor's contractual relations with and obligations to all of its creditor constituencies, including customers, vendors and other suppliers, lenders, employees and tort claimants. The process always involves negotiation and may entail contract rejection under Section 365 or Section 1113 of the Bankruptcy Code, sales or other disposition of property under Section 363, foreclosure under state law and litigation in the bankruptcy court such as contested claims objections. The process begins soon after or even before filing a Chapter 11 petition and often continues long after confirmation and the effective date of the plan.

So it has been in the *Delta* case. Delta/Comair has engaged in a continuous and ongoing process of claims resolution and negotiations pre- and post-Confirmation seeking, *inter alia*, to restructure the terms of Delta/Comair aircraft structured finance obligations and Delta's and Comair's relationships with their respective unionized employees.

Prior to Confirmation, all Delta/Comair aircraft restructuring agreements and claims settlements were presented to the Court for approval pursuant to notice and hearing. As provided in the Plan and explained in the Disclosure Statement, all post-Confirmation restructuring agreements and claims settlements have been executed by the debtors and their counter-parties and have become effective without notice to creditors or the Court and without Court approval. It is this feature of the Plan which Movants challenge and seek to change in the motion.

The consensual restructuring and claims settlement process has always been and continues to be subject to creditor oversight through the vehicle of the Official Committee of Unsecured

Creditors prior to the Effective Date, and the Post-Effective Date Committee after the Effective Date. The Post-Effective Date Committee has been and continues to be kept fully informed of all negotiations with all creditor constituencies, and all post-Effective Date restructuring agreements and settlements have been approved by that Committee. Both the pre-Effective Date and the post-Effective Date Committees included or include creditors holding unsecured claims against Comair or the Comair Allocation.

The Post-Effective Date Committee has joined the debtor in opposing the motion.

**The increase in estimated Comair claims**

The event which gave rise to the motion was a speech given on June 13, 2007 at the Merrill Lynch Global Transportation Conference by Delta's Executive Vice President and Chief Financial Officer. This speech disclosed for the first time that Delta expected the amount of allowed claims against the Comair debtors to be increased by approximately $250 million, from $800 million to $1.05 billion. The estimate of the claims pool for Delta was reduced by approximately $250 million, from $14.2 billion to $13.95 billion. As argued by Movants, "in just seven short weeks following confirmation, the expected recovery of the Comair Debtors' unsecured creditors has plummeted by more than 20% from the amount of recovery projected by the Debtors in the Disclosure Statement."

Movants assert that the increase in the debtors' estimate of Comair unsecured claims reported at the June 13, 2007 Merrill Lynch Conference appears to have been the result of two factors:

(i) On February 23, 2007 the debtors moved for approval of a settlement with the Airline Pilots Association ("ALPA") which would result in a claim against the Comair debtors in the amount of $82.5 million. On March 2, 2007 the Court approved the settlement with ALPA.

(ii) On April 23, 2007 the debtors entered into a term sheet concerning the restructuring of certain aircraft agreements covering 37 Comair aircraft with Merrill Lynch Credit Products LLC and others. The economics of the term sheet have not been put in the record on these motions. But it is a fact that Delta/Comair has engaged in a continuing process of negotiations seeking to restructure the

- 5 -

terms of Delta/Comair aircraft structured finance obligations. Many of these restructuring arrangements, both before and after confirmation, have resulted in reduced ongoing costs for the reorganized debtors and increased pre-petition claims against the debtors. As asserted in the Movants' Omnibus Reply:

> Delta has a financial interest, as the sole shareholder of the Comair Debtors, to increase the equity value of reorganized Comair by offering inflated damage claims payable in reorganized Delta common stock in exchange for reduced going-forward obligations under Comair restructured aircraft finance agreements.

## Discussion

Noting that "a significant portion of the increase in the estimate of the Comair claims pool was attributable to" the restructuring agreement covering 37 Comair aircraft, Movants assert that the debtors should not be permitted to "shield the terms and nature of these recent deals from judicial scrutiny" and that "the Reorganized Debtors should be directed to seek Bankruptcy Court approval of these matters in accordance with the terms of the Plan." (Motion at 3) The relief requested is "an order directing the Reorganized Debtors to seek Bankruptcy Court approval of any (i) Post-Petition Aircraft Agreements (as defined in the Plan) and (ii) resolution of claims that have an estimated or face amount in excess of $30 million, in accordance with the express terms of the Plan." (Motion at 8)

The Plan provisions relied upon by Movants are Sections 9.2 and 17.5(d). Section 9.2 states:

> On and after the Effective Date, except with respect to those matters described in Section 17.5(d) thereof, the Reorganized Debtors shall have the authority to compromise, settle, otherwise resolve or withdraw any objections to Claims and to compromise, settle, or otherwise resolve any Disputed Claims without notice to or approval by the Bankruptcy Court or any other party.

Section 9.2 thus grants the Reorganized Debtors the unfettered right to settle without notice or Court approval all Claims disputes "except with respect to those matters referred to in Section 17.5(d)." But for the "except" clause, there could be no question that this motion is barred by Section 9.2. The question, then, is whether anything in Section 17.5(d) authorizes the Court to require

- 6 -

notice to creditors or to hear objections to settlements by creditors. Section 17.5(d) of the Plan provides as follows:

> The Post-Effective Date Committee shall only have standing and power to participate in the following court proceedings as the deemed successor-in-interest to the Creditors' Committee:
>
> (i) any matters related to proposed modifications or amendments to the Plan;
>
> (ii) any applications for allowance of compensation of Professionals;
>
> (iii) any actions to enforce, implement or interpret the Plan or to compel the Debtors to make distributions under the Plan;
>
> (iv) any appeals to which the Creditors' Committee is party as of the Effective Date;
>
> (v) actions, if any, relating to approval of Post-Petition Aircraft Agreements;
>
> (vi) actions, if any, relating to approval of the treatment selected by the Debtors for holders of Allowed Secured Aircraft Claims against the Delta Debtors and the Comair Debtors;
>
> (vii) objections to, or estimations of, any Claims that have an estimated or face amount in excess of $30,000,000 to which either (a) the Creditors' Committee has filed an objection before the Confirmation Date and the Creditors' Committee's position with respect to such objection is materially different from the position of the Debtors or the Reorganized Debtors; or (b) the Post-Effective Date Committee requested in writing that the Reorganized Debtors estimate or object and the Reorganized Debtors have failed to undertake such estimation or objection within 30 calendar days of such written request;
>
> (viii) actions under or pursuant to the Aircraft Claims Objection Procedures Order; and
>
> (ix) such other matters as may be mutually agreed upon in advance and in writing by the Post-Effective Date Committee and Reorganized Delta, each in their sole discretion.

The only relevant subdivisions of Section 17.5(d) are (v) and (vii).

Several preliminary observations on Section 17.5(d) must be made. Nothing in this Section requires the Reorganized Debtors to give notice of any kind to any creditors concerning any settlements or agreement restructurings. Nothing here grants to any creditors such as Movants any right to receive any notice of, or to second guess or file and litigate objections to, the business judgment of the Reorganized Debtors' management with respect to post-Effective Date Claims settlements or restructur-

- 7 -

ing of Post-Petition Aircraft Agreements. Nothing in Section 17.5(d) constitutes any exception to the Reorganized Debtors' broad right under Section 9.2 to settle and restructure without notice or Court approval *vis a vis* creditors generally, such as Movants.

Section 17.5(d) is a very narrow provision which is concerned only with the standing and power of the Post-Effective Date Committee. It grants limited standing and power only to that Committee, and it does not grant a right to notice or any standing or power to creditors generally, such as Movants. Because Section 17.5(d) applies only to the Post-Effective Date Committee, the "except" clause in Section 9.2 simply has no application to creditors such as Movants, and therefore Section 9.2 is a complete bar to this motion.

The heart of Movants' arguments, and the fundamental flaws in those arguments, are found in paragraphs 27, 29 and 35 of the Motion. In paragraph 27 of the Motion, Movants argue:

> 27. Section 9.2 of the Plan does not authorize the Reorganized Debtors to "compromise, settle, or otherwise resolve any Disputed Claims [with respect to those matters described in Section 17.5(d)] without notice to or approval by the Bankruptcy Court or any other party."

I disagree. The phrase "except with respect to those matters described in Section 17.5(d)" cannot rationally be construed as a blanket exemption from the broad authority in Section 9.2 to "compromise, settle, or otherwise resolve any Disputed Claims without notice to or approval by the Bankruptcy Court or any other party." Viewed in the context of Section 17.5(d) and numerous other provisions of the Plan and the Confirmation Order discussed below, it is plain that the "except" clause in Section 9.2 constrains the broad authority to compromise and settle without Court approval *only* to the extent expressly stated in Section 17.5(d), and under that Section the constraint may be invoked only by the Post-Effective Date Committee, not creditors such as Movants.

Evidently referring to subsections (v) and (vii) of Section 17.5(d), in paragraph 29 of the Motion, Movants argue (emphasis supplied):

> 29. The Plan expressly contemplates that all of the matters enumerated in Section 17.5(d) *would involve* "court proceedings" and authorizes the Post-Effective Date Committee to participate in such matters. Thus, for example, the Plan expressly contemplates that "court proceedings" *would be required* "relating to the approval of

- 8 -

> Post-Petition Aircraft Agreements" and that the Post-Effective Date Committee would have standing to participate in such proceedings.

The bald statements that all matters enumerated in Sections 17.5(d) "*would involve*" Court proceedings and that the Plan expressly contemplates that Court proceedings "*would be required*" relating to approval of Post-Petition Aircraft Agreements are simply wrong. Movants ignore the fact that subsection (v) refers to "actions, *if any*, relating to approval of Post-Petition Aircraft Agreements" (emphasis supplied), and they ignore the fact that subdivision (vii) does not refer to all objections to or estimates of claims exceeding $30 million, but only such claims (a) where "the Creditors Committee has filed an objection before the Confirmation Date" or (b) where "the Post-Effective Date Committee requested in writing that the Reorganized Debtors estimate or object and the Reorganized Debtors have failed" to do so. Moreover, Movants' argument ignores the very nature of Section 17.5(d) itself, which, far from being a blanket constraint on the broad authority to renegotiate, settle and compromise as set forth in Section 9.2, merely sets forth limitations on the standing and power of the Post-Effective Date Committee to participate in the specified Court proceedings, if any. It bears repeating that nothing in Section 17.5(d) entitles creditors such as Movants to receive notice or to object to settlements or restructuring agreements.

Movants conclude by arguing in paragraph 35 of the Motion:

> If the Debtors intended to disenfranchise all parties other than the Post-Effective Date Committee from the claims resolution process, including the Bankruptcy Court, they should have done so clearly and explicitly in the Plan. They did not.

Quite the contrary, they did. Section 9.2 itself is perfectly clear and explicit. But there are other provisions of the Plan and the Confirmation Order which are clear and explicit and which also refute Movants' arguments. Section 13.1 of the Plan explicitly states that, after the Effective Date, the provisions of Section 363 of the Bankruptcy Code no longer apply to Comair and that Comair is free to deal with its properties and enter into contracts without prior Court approval. Section 13.1 provides:

> As of the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire and dispose of property and settle and compromise Claims and Interests without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code.

- 9 -

*See also* Section 13.12 of the Plan, which provides:

> In accordance with the provisions of the Plan, pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019(a), without any further notice or action, order or approval of the Bankruptcy Court, the Debtors may compromise and settle Claims against them and Causes of Action against other Entities, in their sole and absolute discretion, and after the Effective Date, such right shall pass to the Reorganized Debtors.

The effect of Section 13.1 of the Plan is underscored and confirmed in paragraph 77 of the Confirmation Order which states as follows:

> As of the Effective Date, unless otherwise provided in the Plan or this Confirmation Order, the Reorganized Debtors may operate their businesses and may use, acquire and dispose of property and settle and compromise Claims and Interests without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code.

The Plan and the Confirmation Order impose only two conditions concerning Post-Petition Aircraft Agreements entered into after the Effective Date. First, paragraph 60 of the Confirmation Order requires that the Reorganized Debtors "consult" with the Post-Effective Date Committee with respect to Post-Petition Aircraft Agreements. Second, Section 1.1(199) of the Plan, which defines "Post-Petition Aircraft Agreement," requires the Reorganized Debtors to file a notice stating that they have entered into a post-petition agreement. There is no dispute that both of these conditions have been fulfilled with regard to all Post-Petition Aircraft Agreements.

Paragraphs 57(a), 60, 101 and 102 of the Confirmation Order all reinforce the authority of Comair and the other Reorganized Debtors to enter into and consummate aircraft restructuring agreements and settlements without prior Court approval and without notice to creditors (except the Post-Effective Date Committee). Paragraph 57(a) states:

> On the Effective Date, the adoption, filing, approval and ratification, as necessary, of all corporate or related actions contemplated hereby with respect to each of the Reorganized Debtors shall be deemed authorized and approved in all respects. Without limiting the foregoing, such actions may include: . . . (xi) the execution, delivery and performance of each Post-Petition Aircraft Agreement and any agreement or instrument provided for in a Post-Petition Aircraft Agreement. . . .

Paragraph 60 of the Confirmation Order provides:

> All transactions contemplated by such agreements . . . and obligations to be incurred by the Reorganized Debtors pursuant to such agreements are hereby approved, and the

>  Reorganized Debtors shall have full power and authority to execute, deliver, and perform each such agreement and are authorized and directed to take all necessary steps and to perform all necessary and appropriate acts to consummate the terms and conditions of each such agreement.

Paragraph 101 of the Confirmation Order states:

> All actions authorized to be taken pursuant to the Plan shall be effective on, prior to or after the Effective Date pursuant to this Confirmation Order, without further application to, or order of the Court, or further action by the respective officers, directors, members or stockholders of Reorganized Delta or the other Reorganized Debtors and with the effect that such actions had been taken by unanimous action of such officers, directors, members or stockholders.

Paragraph 102 of the Confirmation Order makes clear that the Confirmation Order itself constituted full authorization for agreements contemplated in the Plan:

> This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules and regulations of all states and any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts and transactions referred to in or contemplated by the Plan, the Plan Supplements, the Disclosure Statement, the Plan Supplements [sic], and any documents, instruments, or agreements, and any amendments or modifications thereto.

The Plan does contain three provisions which constrain, solely at the instance of the Post-Effective Date Committee, the Reorganized Debtors' otherwise unfettered right after the Effective Date to negotiate or renegotiate agreements and enter into settlements. With respect to settlement of administrative claims, the Plan provides as follows in Section 8.2(c):

> The Reorganized Debtors, in their sole and absolute discretion, may settle Other Administrative Claims in the ordinary course of business without further Bankruptcy Court approval; provided that, with respect to the settlement of any Other Administrative Claim relating to the lease or financing of Aircraft Equipment for an amount exceeding $10,000,000, the Reorganized Debtors (i) shall provide written notice of the terms of such settlement by e-mail, facsimile or overnight or hand delivery to the attorneys for the Post-Effective Date Committee and (ii) may then proceed with such settlement unless they receive a written objection (addressed to the attorneys for the Reorganized Debtors identified in such notice) by 4:00 p.m. (prevailing Eastern time) on the day that is 10 calendar days from the date the Reorganized Debtors provide such written notice. If the Reorganized Debtors receive such an objection from the Post-Effective Date Committee, the parties will confer and attempt to resolve any differences. Failing that, the Reorganized Debtors may petition the Bankruptcy Court for approval of the settlement.

Regarding the settlement of "Treatment Objections" under assumed or rejected leases, the Plan provides in Section 10.5(c)(i) as follows:

- 11 -

> Both on and after the Effective Date, the Reorganized Debtors may, in their sole discretion, settle Treatment Objections without any further notice to or action by the Bankruptcy Court or any other party (including by paying any agreed Cure Amount); provided that, with respect to the settlement of any Treatment Objection relating to an executory contract or unexpired lease relating to Aircraft Equipment for an amount that exceeds $5,000,000, the Reorganized Debtors (A) shall provide written notice of the terms of such settlement by e-mail, facsimile or overnight or hand delivery to the attorneys for the Post-Effective Date Committee and (B) may then proceed with such settlement unless they receive a written objection addressed to the attorneys for the Reorganized Debtors identified in such notice by 4:00 p.m. (prevailing Eastern time) on the day that is 10 calendar days from the date the Reorganized Debtors provided such written notice. If the Reorganized Debtors receive such an objection from the Post-Effective Date Committee, the parties will confer and attempt to resolve any differences. Failing that, the Reorganized Debtors may petition the Bankruptcy Court for approval of the settlement.

The provisions of Section 17.5(d) have already been quoted and discussed above.

These three provisions of the Plan, Sections 8.2(c), 10.5(c)(1) and 17.5(d), are the only constraints to be found in the Plan or the Confirmation Order limiting the Reorganized Debtors' power and authority to negotiate and renegotiate agreements and settle claims without Court approval expressly provided in Sections 9.2 and 13.1 of the Plan. This is reconfirmed in paragraph 77 of the Confirmation Order, quoted in full above, which explicitly states that the Reorganized Debtors may operate their businesses, use, acquire and dispose of property and settle and compromise Claims without supervision by the Bankruptcy Court "in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code."

These numerous provisions of the Plan and the Confirmation Order are in no sense "boilerplate" as Movants argue. They are carefully conceived and drafted to give the Reorganized Debtors the power to exercise their business judgment "as if there were no pending cases under any chapter or provision of the Bankruptcy Code" subject only to oversight of the Post-Effective Date Committee. Neither Movants nor any other party objected to any of the provisions of the Plan referred to above. They are barred from doing so now. To grant this motion would require the Court to ignore or, in effect, rewrite all of these explicit provisions in the Plan and the Confirmation Order, which the Court cannot do.

The motion must be and hereby is DENIED.

It is SO ORDERED.

Dated:  White Plains, NY
       October 22, 2007

                                              /s/ Adlai S. Hardin, Jr.
                                                        U.S.B.J.