Response Deadline:[1] November 6, 2009 at 4:00 p.m. (prevailing Eastern Time)
Hearing Date: November 13, 2009 at 10:00 a.m. (prevailing Eastern Time)

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
(212) 819-8200
J. Christopher Shore

Wachovia Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
Thomas E Lauria

ATTORNEYS FOR M. MICHELE BURNS

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| DELTA AIR LINES, INC., et al., | ) | Case No. 05-17923 (CGM) |
| | ) | |
| Reorganized Debtors.[2] | ) | Jointly Administered |
| | ) | |

**RESPONSE OF CLAIMANT M. MICHELE BURNS TO REORGANIZED DEBTORS'
OBJECTION TO CLAIM NOS. 6906, 6907, 6908, 6909, 6910, 6912, 6913, 6914, 6915, 6916,
6917, 6918, 6919, 6920, 6921, 6922, 6923, 6924, 6925 AND 8478**

M. Michele Burns ("Ms. Burns"), a former employee of Delta Air Lines, Inc. ("Delta"), files this response to the objection (the "Objection") of Delta and those of its subsidiaries that were debtors and debtors in possession (the "Reorganized Debtors") to claim nos. 6906, 6907, 6908, 6909, 6910, 6912, 6913, 6914, 6915, 6916, 6917, 6918, 6919, 6920, 6921, 6922, 6923, 6924, 6925 and 8478 (the "Claims"), and respectfully represents as follows:

---

[1]   Extended by agreement with the Reorganized Debtors.

[2]   The Reorganized Debtors are Delta Air Lines, Inc. and Comair, Inc.

**PRELIMINARY STATEMENT**

1. On May 1, 2004, Ms. Burns severed her employment with Delta and, in connection with her decision to leave the company, entered into a 5-year consulting agreement dated May 3, 2004 (the "Consulting Agreement")[3] with Delta. Under the Consulting Agreement, Ms. Burns agreed to make herself available to provide consulting services to Delta, including consultation on financial matters, to the extent that Delta requested and required them on account of her exceptional expertise developed while employed with Delta. Additionally, under the Consulting Agreement, Ms. Burns agreed not to solicit any employee of Delta, or its subsidiaries, at the director or officer level to accept employment at another company. In consideration for and as an inducement for her to provide these consulting services, Ms. Burns negotiated the right to unlimited positive space travel on Delta's system for life ("Lifetime Travel Benefits") for herself, her domestic partner, and children. Indisputably, the Lifetime Travel Benefits were extraordinarily valuable rights that Ms. Burns obtained for her family as a result of her good faith and arms' length negotiations with Delta's CEO.

2. As Ms. Burns already has previously explained (and which the Reorganized Debtors decline to dispute), although the full term of the Consulting Agreement had not run its course, any further services she could have provided to Delta would be immaterial. Thus, the Consulting Agreement was not executory as of the Petition Date because Ms. Burns owed no further material performance—Delta's obligation to honor her Lifetime Travel Benefits was the only material performance that remained owing. After filing for chapter 11 protection in September of 2005, however, Delta decided to stop performing. Unilaterally and without the

---

[3] A copy of the Consulting Agreement is attached hereto as Exhibit A.

authorization of this Court, Delta breached the Consulting Agreement by refusing to honor her Lifetime Travel Benefits.

3. Later, after already having deprived Ms. Burns and her family of this extremely valuable right, Delta then took the position that the Consulting Agreement remained executory and filed a motion attempting to reject it. In neither that original rejection motion nor the current Objection, however, has Delta ever alleged that Ms. Burns somehow obtained the Lifetime Travel Benefits in bad faith or on account of a less-than-arms' length negotiation. Nor has Delta ever argued or explained what business motivation it had for deciding to breach the Consulting Agreement and deprive Ms. Burns of her valuable Lifetime Travel Benefits.[4] Now, after breaching the Consulting Agreement without justification, Delta not only seeks to deprive Ms. Burns and her family of the Lifetime Travel Benefits, but to argue that Delta owes Ms. Burns essentially nothing for its breach. In making this new argument, the Debtors improperly attempt to rely on sections 502(b)(4) and 502(b)(7) of the Bankruptcy Code—neither of which are relevant or apply here—to reduce their liability.

4. Delta should not be permitted to escape all liability for its obligations to Ms. Burns simply because it decided to restructure its debts in chapter 11. Nor should Delta be rewarded for breaching the Consulting Agreement and refusing to honor Ms. Burns' bargained-for right to her travel benefits. Such a result simply would be inequitable. Thus, as compensation for Delta's postpetition breach of the Consulting Agreement, Ms. Burns is entitled to a substantial administrative expense priority claim and/or reinstatement of her Lifetime Travel Benefits. Alternatively, in the event that this Court determines that Ms. Burns is not entitled to an administrative claim, Ms. Burns, at the very least, has an extremely large prepetition

---

[4] Indeed, the cost to Delta to perform under the Consulting Agreement is next to nothing in comparison to the value of Lifetime Travel Benefits to Ms. Burns.

unsecured claim against the Debtors. In either case, a further evidentiary hearing will be necessary to establish the full amount of the Claims, and Ms. Burns respectfully requests such a proceeding.

## RESPONSE

### I. The Debtors Cannot Reject The Consulting Agreement Because It Is Not Executory

5. As an initial matter, the Consulting Agreement is not executory and, thus, not subject to rejection under section 365(a) of the Bankruptcy Code.[5] An executory contract is a contract under which the obligations of the parties are "so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." In re Riodizio, 204 B.R. 417, 421 (Bankr. S.D.N.Y. 1997) (citing Vern Countryman, Executory Contracts in Bankruptcy: Part I, 57 MINN. L. REV. 439, 460 (1973)); see also In re Penn Traffic Co., 2005 WL 2276879, at *2 (S.D.N.Y. Sept. 16, 2005); In re 375 Park Ave. Assocs., Inc., 182 B.R. 690, 697 (Bankr. S.D.N.Y. 1995); In re Chateaugay Corp., 102 B.R. 335, 344-45 (Bankr. S.D.N.Y. 1989). Conversely, "[w]hen performance remains due on only one side, the contract is non-executory, and hence, neither assumable nor rejectable." Penn Traffic, 2005 WL 2276879, at *2 (quoting Riodizio, 204 B.R. at 421).

6. Here, the Consulting Agreement does not terminate on its own terms if Ms. Burns fails to provide consulting services, and nothing therein purports to provide Delta the right to terminate Ms. Burns' rights under the Consulting Agreement for failure to provide any such services. Since the Petition Date, any information that Ms. Burns had was likely of no material value to Delta, and her contacts with any Delta employees who may have sought

---

[5] Ms. Burns hereby incorporates by reference and reasserts all arguments made in her objection to the purported rejection of the Consulting Agreement [Docket No. 1363].

employment with her had become de minimis. Decl. of M. Michele Burns ¶ 5.[6]  She has therefore satisfied all of her material obligations under the Consulting Agreement.  Rather, the only remaining obligation under the Consulting Agreement is the obligation of Delta to provide Ms. Burns with the Lifetime Travel Benefits for the remainder of her life. Moreover, as the terms of the Consulting Agreement illustrate, Delta clearly contemplated that it would have continuing obligations to Ms. Burns long after her performance had been completed given that Delta agreed to provide performance for the remainder of Ms. Burns' life. Thus, the Consulting Agreement is not executory and not subject to rejection, because only Delta's performance remains due.

       7.     In support of their contention that the Consulting Agreement is executory, the Reorganized Debtors cite In re Helm, 335 B.R. 528 (Bankr. S.D.N.Y. 2006), where this court found that characterization of the contract at issue in that case as "fully performed" ignored the plain language of that contract. Id. at 536. The agreement at issue in Helm was a royalty contract under which the non-debtor counterparty collected royalties and the debtor paid a commission to the non-debtor. Id. The entire substance of the agreement was the *future* collection of royalties by the non-debtor and payment of commissions by the debtor, meaning that the contract could not possibly have been fully performed. Id. This court's single statement, taken out of context, has no bearing on whether the Consulting Agreement is executory. As previously noted, Ms. Burns has no further material information that she could provide under the Consulting Agreement and thus, she has satisfied all of her material obligations; the only remaining performance is that of Delta.

---

[6]    The Declaration of M. Michele Burns is attached hereto as Exhibit B.

8. Consequently, Ms. Burns is entitled to an administrative expense priority claim as a result of Delta's intentional postpetition breach of the Consulting Agreement. While the bankruptcy process provides debtors with certain tools that they can utilize in order to restructure, that is not the route the Reorganized Debtors when they refused to honor their obligations. The Bankruptcy Code does not allow debtors to evade liability for their postpetition actions just because they cannot be sued on account of the automatic stay. See, e.g., In re Briarpatch Film Corp., 281 B.R. 820, 834 (Bankr. S.D.N.Y. 2002) ("[T]he automatic stay is a shield, not a sword." (citing Int'l Distrib. Centers, Inc. v. Walsh Trucking Co., 62 B.R. 723, 730 (S.D.N.Y. 1986)). Indeed, courts have recognized that obligations incurred by a debtor postpetition are entitled to administrative priority as costs of operating its chapter 11 estate even if such obligations do not provide a direct benefit to its estate. See, e.g., Reading Co. v. Brown, 391 U.S. 471, 484-85 (1978); In re Duplan Corp., 212 F.3d 144, 155 (2d Cir. 2000); In re R.H. Macy & Co., Inc., 157 B.R. 548, 552-53 (S.D.N.Y. 1993). Thus, the Debtors' Objection should be denied *in toto*, and the Court should permit further proceedings for Ms. Burns to establish the full amount of her administrative claim.[7]

## II. At A Minimum, Ms. Burns Has A Substantial Unsecured Claim

9. Even if the Consulting Agreement is executory and was rejected, and Ms. Burns is not entitled to an administrative expense claim, she is still entitled to a substantial unsecured claim. In consideration for Ms. Burns' consulting services and agreement not to solicit Delta employees to accept employment elsewhere, Delta agreed to provide Ms. Burns with the Lifetime Travel Benefits for herself and her family. As a result of the continued breach of the Consulting Agreement by Delta, Ms. Burns has a claim for the amount of the value of the

---

[7] Ms. Burns reserves the right to present further evidence as to the value of her Claims.

Lifetime Travel Benefits for which she bargained. The Reorganized Debtors' arguments that section 502(b)(4) and 502(b)(7) would reduce the value of Ms. Burns' substantial rejection damages claim is misplaced because neither provision applies to the Claims.

### A. Section 502(b)(4) Does Not Apply Because Ms. Burns Is Not An Insider

10. The Reorganized Debtors erroneously assert that Ms. Burns was an insider of Delta and that her Claims should therefore be capped under section 502(b)(4). That section provides, in relevant part, that if an objection to a claim is made, the court shall determine the amount of the claim and allow the claim in such amount except to the extent that "if such claim is for services of an insider or attorney of the debtor, such claim exceeds the reasonable value of such services." 11 U.S.C. § 502(b)(4). As the plain language of the statute indicates, the services at issue must be the services *of an insider*, and not simply services performed by a former officer. See Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004) ("It is well established that when the statute's language is plain, the sole function of the courts . . . is to enforce it according to its terms." (internal quotation omitted)). That is, "insider in this context relates to the services performed . . . ." In re Allegheny Int'l, Inc., 158 B.R. 332, 339 (Bankr. W.D. Pa. 1992). Here, the Reorganized Debtors do not contend that any of the consulting services provided for under the Consulting Agreement are the services of an officer, director or other insider. Rather, the Reorganized Debtors simply focus on the fact that the Consulting Agreement was entered into at or around the time Ms. Burns was an employee of Delta. Objection ¶ 9 (citing In re Russell Cave Co., 253 B.R. 815 (Bankr. E.D. Ky. 2000)). The Reorganized Debtors ignore the plain language of the statute and the fact that at no time did Ms. Burns provide services of an insider, nor does the Consulting Agreement contemplate that any services of an insider would be provided.

11.     Russell Cave, relied upon heavily by the Reorganized Debtors, is inapposite with respect to its application of section 502(b)(4). 253 B.R. 815. In Russell Cave, the court found that the claimant, a former director of the debtor, was an insider where:

> He considered himself the voice and conscience of the company. He produced the signature catalogs that were the *foundation of the business*, and had *unfettered control* over every aspect of their production. He sat on the Board of Directors until 1997, when the investors required that he be removed. At the same time they required that he enter into a written Consulting Agreement, to guarantee that his *crucial services* remained devoted to the debtor.

Id. at 821 (emphasis added). The Reorganized Debtors do not contend that Ms. Burns had any sort of unfettered control over key aspects or the foundation of the business or that she otherwise had any control over Delta's entry into the Consulting Agreement, which was executed by Delta's CEO at the time, Gerald Grinstein. See Consulting Agreement at 1. Likewise, they do not contend that Ms. Burns' consulting services are "crucial services" or that the Consulting Agreement was to guarantee that such services remain devoted to Delta. Quite simply, the situations are not comparable. The consulting services that Ms. Burns would potentially have been called upon to provide under the Consulting Agreement were not "services of an insider" and thus, are not subject to any limitation under section 502(b)(4).

12.     However, even assuming that Ms. Burns is an insider within the meaning of section 502(b)(4), the Reorganized Debtors' assertion that the value of her services under the Consulting Agreement are worth nothing is wholly without merit. The Reorganized Debtors' only support for this argument is that Ms. Burns has previously argued that her services *going forward* would be of *de minimis* value, but they do not provide any independent basis for valuing the Claims at zero. Although Ms. Burns has no further material information that she can provide to Delta going forward, that does not mean that having her consulting services available to Delta upon separation, or her agreement not to solicit Delta employees, had no value. In fact, if Delta

believed that having Ms. Burns "on call" for consulting had no value, it would never have agreed to enter into the Consulting Agreement.  Indeed, as conceded by Delta in the Consulting Agreement, Ms. Burns was being compensated for her consulting services with respect to "the exceptional expertise [she] developed during [her] service with Delta."  Whether or not Delta ever called upon Ms. Burns to access her unique knowledge is irrelevant; Delta valued that access at the cost to it of providing the Lifetime Travel Benefits.  Further, Ms. Burns clearly provided significant value to Delta by agreeing not to solicit Delta's employees.  Thus, even if Ms. Burns were an insider for purposes of section 502(b)(4), the receipt of Lifetime Travel Benefits did not exceed the reasonable value of her services.

        **B.**        **<u>Section 502(b)(7) Does Not Apply To The Claims Because The Consulting Agreement Was Not Terminated And Is Not An Employment Contract</u>**

        13.        Section 502(b)(7) of the Bankruptcy Code is inapplicable to the Claims because the Consulting Agreement has not terminated and it is not an "employment contract" as contemplated by that section.  Section 502(b)(7) "caps an *employee's* claim for damages resulting from the *termination* of an employment agreement . . .to (1) one year's compensation provided by such agreement measured from the earlier of the date of the filing of the bankruptcy petition or the date of termination, plus (2) any unpaid compensation due on such date."  See In re WorldCom, Inc., 361 B.R. 675, 681 (Bankr. S.D.N.Y. 2007) (emphasis added); 11 U.S.C. § 502(b)(7).

        14.        Even if the Consulting Agreement was terminated by Delta's rejection, it is not an "employment contract" nor did it create an "employment relationship" as the Reorganized Debtors contend.  At best, Ms. Burns was an independent contractor.  Courts assessing whether a person is an "employee" and whether the parties had an "employment contract" under section 502(b)(7) consider the following factors:

> (a) how the agreement is entitled, (b) if the agreement identifies job responsibilities, (c) if the agreement provides the terms for compensation and benefits, (d) if withholding taxes and social security benefits are deducted from pay, (e) if the agreement constrains the "employee" from certain other activities, (f) if the agreement is not assignable, (g) if the debtor had the right to control the activities of the "employee," and (h) the amount of hours the "employee" needed to devote to the debtor's business per year.

In re WorldCom, 361 B.R. at 682 (footnote omitted).

15. In spite of the Reorganized Debtors' attempt to spin the facts otherwise, the majority of these factors favor Ms. Burns. Much like the agreement at issue in WorldCom, the Consulting Agreement here (i) does not provide that the Reorganized Debtors would withhold taxes, (ii) does not provide that the Reorganized Debtors would furnish insurance or other benefits, and the Reorganized Debtors do not assert that they provided any such benefits, and (iii) does not provide the Reorganized Debtors with the rights to control Ms. Burns' activities. Additionally, the hours that Ms. Burns is required to devote to the Reorganized Debtors' business is minimal, and the timing of such services were subject to Ms. Burns' other business obligations. The Reorganized Debtors' assertion that Delta had the right to control Ms. Burns' activities is simply without merit. In fact, the Consulting Agreement specifically states that Ms. Burns' consulting services would be performed at "mutually agreeable" times and places and "will not interfere with [Ms. Burns'] other business obligations." Consulting Agreement at 1.

16. Moreover, although the Reorganized Debtors state that the Consulting Agreement clearly identifies job responsibilities, in reality it merely recites the nature of the matters on which Ms. Burns may be called upon for consultation. Agreeing to provide information from time to time (provided such consultation does not interfere with Ms. Burns' current employment) can hardly be deemed a description of "job responsibilities" of an

"employee" of Delta. Finally, although the Consulting Agreement purports to constrain Ms. Burns from certain other activities, and the Consulting Agreement may not be assignable, those two factors standing alone cannot change the nature of the Consulting Agreement to an "employment contract," and Ms. Burns is not an "employee" in any sense of the word. See, e.g., In re Russell Cave Co., 253 B.R. 815, 818 (Bankr. E.D. Ky. 2000) (finding that a consulting agreement was not an "employment contract" where, among other things, the claimant ran his own business, the services were provided from a location far away from the debtor and under claimant's control, and claimant was not paid a salary). In fact, the Consulting Agreement was negotiated and entered into in connection with Ms. Burns' separation from Delta. To find that such an agreement is an "employment contract" would completely distort the nature of the employer-employee relationship.

17.     Finally, a finding that the Consulting Agreement is not an employment contract is consistent with the policy considerations underlying section 502(b)(7). The Reorganized Debtors' focus on the fact that Ms. Burns is a former officer (and therefore the statute was intended to regulate her) is misplaced. The purpose of the statute is "to relieve bankrupt employers of the continuing duty to pay high salaries to officers and owners-managers who had been able to exact favorable terms of tenure and salaries while the business prospered." WorldCom, 361 B.R. at 683 (citing In re Prospect Hill Res., Inc., 837 F.2d 453, 455 (11th Cir. 1988)). Although Ms. Burns is a former officer, the substance of the Consulting Agreement in no way provides her with favorable terms of tenure or salary for employment, and it is not within the purview of claims that Congress sought to limit under section 502(b)(7). Indeed, the Debtors' application of section 502(b)(7) would render *any* contract between a debtor and one of its current or former employees an "employment contract" subject to reduction. Clearly, such a

reading of section 502(b)(7) is incorrect; it is the substance of the agreement that is the focus, and not the parties. Thus, because the Consulting Agreement is not an "employment contract," the Claims thereunder are not subject to the section 502(b)(7) cap.

## **CONCLUSION**

WHEREFORE, for the reasons set forth herein, Ms. Burns respectfully requests that the Court overrule the Objection and allow the Claims in their entirety.

Dated: November 6, 2009
       New York, New York

                          WHITE & CASE LLP
                          1155 Avenue of the Americas
                          New York, New York 10036-2787
                          (212) 819-8200
                          J. Christopher Shore

                          Wachovia Financial Center
                          200 S. Biscayne Blvd., Suite 4900
                          Miami, Florida 33131
                          (305) 371-2700
                          Thomas E Lauria

                          By:   /s/ J. Christopher Shore
                          J. Christopher Shore

                          COUNSEL TO M. MICHELE BURNS