DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York  10017
Telephone:  (212) 450-4000
Facsimile: (212) 607-7539
Marshall S. Huebner
Timothy E. Graulich

*Attorneys for the Reorganized Debtors*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
**In re:** :
:
: **Chapter 11 Case No.**
:
**DELTA AIR LINES, INC., et al.,** : **05-17923 (CGM)**
:
:
**Reorganized Debtors.[1]** : **(Jointly Administered)**
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**DECLARATION OF ANNA MARIE DAY IN SUPPORT OF THE RESPONSE OF
REORGANIZED DEBTORS TO THE COURT'S ADDITIONAL BRIEFING REQUEST
WITH RESPECT TO THE REORGANIZED DEBTORS' OBJECTION TO CLAIM
NOS. 6906, 6907, 6908, 6909, 6910, 6912, 6913, 6914, 6915, 6916, 6917, 6918, 6919, 6920,
6921, 6922, 6923, 6924, 6925 AND 8478**

Pursuant to 28 U.S.C. § 1746, Anna Marie Day declares as follows:

1.      I am Manager of Global Compensation in the Human Resources

Department of Delta Air Lines, Inc. ("**Delta**") and I have worked for Delta for nearly thirty

years.  In my current position, I am responsible for, among other things, managing compensation

---

[1]  The Reorganized Debtors are Delta Air Lines, Inc. and Comair, Inc.  The following Delta subsidiaries were also debtors and debtors in possession in these proceedings: ASA Holdings, Inc.; Comair Holdings, LLC; Comair Services, Inc.; Crown Rooms, Inc.; DAL Global Services, LLC; DAL Moscow, Inc.; Delta AirElite Business Jets, Inc.; Delta Benefits Management, Inc.; Delta Connection Academy, Inc.; Delta Loyalty Management Services, LLC; Delta Technology, LLC; Epsilon Trading, LLC; and Kappa Capital Management, LLC. On September 26, 2007, the Court entered a final decree closing the chapter 11 cases of each of those entities.

activities related to the Delta/Northwest merger for salaried employees, determining pay grade levels for new job positions and administering broad-based compensation programs.

2.   From November 1999 until June 2004, I served as the Executive Assistant to the then-Executive Vice President of Human Resources, Robert Colman ("**Mr. Colman**").  In this capacity, I had access to Mr. Colman's email account and I regularly reviewed and responded to his email messages on his behalf, as appropriate.  My other responsibilities included handling executive-level employment and severance agreements in coordination with Delta's in-house legal department, managing executive-level compensation issues and planning/directing other special projects or assignments.

3.   I submit this declaration in support of the Response of the Reorganized Debtors to the Court's Additional Briefing Request with respect to the Reorganized Debtors' Objection to Claim Nos. 6906, 6907, 6908, 6909, 6910, 6912, 6913, 6914, 6915, 6916, 6917, 6918, 6919, 6920, 6921, 6922, 6923, 6924, 6925 and 8478 with respect to certain issues raised at the November 13, 2009 hearing in these cases.

4.   Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge.  If called upon to testify, I would testify competently to the facts set forth in this declaration.

## The Consulting Agreement

5.   Ms. Burns was Delta's chief financial officer ("**CFO**") from Wednesday, August 16, 2000 until Friday, April 30, 2004.  Consistent with Delta's standard policy, Ms. Burns' separation from Delta became effective the following calendar date – Saturday, May 1, 2004.  The date of Ms. Burns' departure was recorded in Delta's human resources database. *See* screenshot annexed hereto as Exhibit A.

6. Ms. Burns' impending departure from Delta was publicly announced on April 15, 2004, *see* Exhibit B, and arrangements were made to help provide for an orderly transition. On that same day, Delta made a similar announcement to all employees. *See* Exhibit C.

7. On Tuesday, April 27, 2004, Mr. Colman received an email from Ms. Burns (the "**April 27 Email**"), a copy of which is annexed hereto in Exhibit D-1. The text of the email was simply "[a]s discussed." *See* Exhibit D-1. Attached to the April 27 Email from Ms. Burns was a draft letter apparently drafted by or for Ms. Burns (the "**Proposed Burns Letter**"), a copy of which is annexed hereto as Exhibit D-2. The Proposed Burns Letter is drafted for Delta's signature and is addressed to Ms. Burns as Delta's "Executive Vice President and Chief Financial Officer." *See* Exhibit D-2. The Proposed Burns Letter purports to provide to Ms. Burns and her family unlimited "positive space travel" on Delta. *See* Exhibit D-2.

8. After receiving and reviewing the Proposed Burns Letter, I made certain edits to it. On Wednesday, April 28, 2004, I forwarded by email the April 27 Email, the Proposed Burns Letter and an edited version thereof to Delta's in-house legal department for review and comment. A copy of the version showing my edits is annexed hereto as Exhibit D-3. My email (the "**April 28 Email**") is comprised of Exhibits D-1, D-2 and D-3.

9. Following receipt of the April 28 Email, including the Proposed Burns Letter, Delta's in-house legal department revised the Proposed Burns Letter to include, among other things, a 5-year consulting and non-solicit term (as revised, the "**Consulting Agreement**"). *See* Exhibit E.

10. On Friday, April 30, 2004, (i.e., Ms. Burns' last paid day as CFO of Delta), Karen Bickhart, then an Administrative Assistant to Delta's General Counsel, sent

Ms. Burns by Federal Express a copy of the Consulting Agreement in its final form to be executed and returned.  *See* Exhibit F.

      11.    Thereafter, Ms. Burns signed the Consulting Agreement and returned it to Delta.

[*remainder of this page intentionally left blank*]

12. I declare under penalty of perjury that the foregoing is true and correct.

Dated: Atlanta, Georgia
December 10, 2009

By: *Anna Marie Day*
Name: Anna Marie Day
Title: Manager - Global Compensation
Human Resources
Delta Air Lines, Inc.