[NOT] FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
                                              :     Chapter 11

In re:                                       :

                                              :     Case No. 05-17923 (cgm)

       DELTA AIR LINES, INC., et al.,        :

                                              :     (Jointly Administered)

                    Reorganized Debtors.[1]     :

                                              :
----------------------------------------------------------------X

**MEMORANDUM DECISION ON MOTION OF REORGANIZED DEBTORS'**
**OBJECTION TO CLAIM NUMBERS 6906, 6907, 6908, 6909, 6910, 6912, 6913, 6914,**
**6915, 6916, 6917, 6918, 6919, 6920, 6921, 6922, 6923, 6924, 6925 AND 8478.**

**A P P E A R A N C E S :**

DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York 10017
Telephone: (212) 450-4000
Facsimile: (212) 450-6539
Timothy E. Graulich
Shane M. Tintle

*Attorneys for Reorganized Debtors*

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
(212) 819-8200
J. Christopher Shore

Wachovia Financial Center
200 South Biscayne Blvd., Ste. 4900
Miami, Florida 33131
(305) 371-2700
Thomas E. Lauria

*Attorneys for M. Michele Burns*

---

[1] The Reorganized Debtors are Delta Air Lines, Inc. and Comair, Inc. The following Delta subsidiaries were also debtors and debtors in possession in these proceedings: ASA Holdings, Inc.; Comair Holdings, LLC; Comair Services, Inc.; Crown Rooms, Inc.; DAL Global Services, LLC; DAL Moscow, Inc.; Delta AirElite Business Jets, Inc.; Delta Benefits Management, Inc.; Delta Connection Academy, Inc.; Delta Loyalty Management Services, LLC; Delta Technology, LLC; Epsilon Trading, LLC; and Kappa Capital Management, LLC. On September 26, 2007, the Court entered a final decree closing the chapter 11 cases of each of those entities.

**CECELIA G. MORRIS**
**UNITED STATES BANKRUPTCY JUDGE**

Delta Air Lines, Inc. ("Delta" and, together with certain of its affiliates, the "Reorganized Debtors") filed a motion (ECF Document No. 7442; hereafter, the "Motion") pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") objecting to proofs of claim numbers 6906, 6907, 6908, 6909, 6910, 6912, 6913, 6914, 6915, 6916, 6917, 6918, 6919, 6920, 6921, 6922, 6923, 6924, 6925 and 8478 (hereafter the "Claims") dated August 21, 2006, filed on behalf of M. Michele Burns ("Burns" or alternatively "Claimant"), Delta's former chief financial officer. The Motion was opposed by counsel on behalf of Burns (ECF Document No. 7471; hereafter, the "Opposition"). Attached to the Opposition was a Declaration of Burns in support of her Opposition (hereafter, the "Burns' Declaration"). Delta submitted a reply to the Opposition (ECF Document No. 7474; hereafter, the "Reply"). Oral Argument was heard before this Court on November 13, 2009 (hereafter, the "November Hearing"). Burns' counsel raised issues at the November Hearing, not previously raised in their Opposition, requiring the Court to ask for further briefing from the parties. Following the November Hearing the Court sent an electronic communication to the parties asking them to address the following:

> First, was Ms. Burns an employee at the time that the consulting agreement was negotiated (not when the consulting agreement was signed)? If she was not an employee at the time of the negotiation of the consulting agreement, what is the legal ramification under Bankruptcy Code § 502(b)(4) with respect to her status as an insider?
>
> If the Court finds that Ms. Burns is an insider under the Bankruptcy Code § 502(b)(4), the Court believes that the reasonable value can be briefed and does not require an evidentiary hearing. Please make an argument in your brief why or why not an evidentiary hearing should or should not be held.

*See* Claimant's Supplemental Opposition (ECF Document No. 7502).

Delta submitted a Response to the Court's additional briefing request on December 11, 2009 (ECF Document No. 7501; hereafter, the "Delta's Supplemental Brief"). In support of Delta's Supplemental Brief, they submitted a Declaration of Anna Marie Day, manager of global compensation in the Human Resource department of Delta Airlines (ECF Document No. 7500; hereafter, the "Day Declaration"). In opposition, Claimant submitted a Supplemental Brief in Support of Response of Claimant on

December 11, 2009 (ECF Document No. 7502; hereafter, "Claimant's Supplemental Opposition"). Attached to the Claimant's Supplemental Opposition was a Supplemental Declaration of Burns (hereafter, "Burns' Supplemental Declaration"). The parties were given a brief opportunity to present an additional oral argument at a telephonic hearing which took place on December 22, 2009 (hereafter, the "December Hearing").

For the reasons explained below, the Motion is granted pursuant to § 502(b)(4).

## JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Standing Order of Reference signed by Acting Chief Judge Robert J. Ward dated July 10, 1984. Article XVI (b)-(d) of the Reorganized Debtors' Plan and paragraph 92 of the Court's order dated April 25, 2007 confirming the Plan (the "Confirmation Order") vests post-confirmation jurisdiction to adjudicate the Motion in this Court. Section 1.1(179) of the Plan established May 30, 2007 as the last day by which requests for payment of certain administrative claims must be filed (the "Administrative Bar Date").

Adjudication of the Motion constitutes a core proceeding within the meaning 28 U.S.C. § 157(b)(2)(A), (B), (G) and (O). Venue of the captioned cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

The Court finds the facts as stated by Delta in the Motion to be complete and incorporates them by reference. Unless otherwise noted, the following discussion constitutes the Court's finding of facts and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

Burns was Delta's chief financial officer ("CFO") from August 16, 2000 through her resignation which became effective on April 30, 2004.[2] Motion ¶ 11. Burns informed Gerald Grinstein, then chief executive officer of Delta, of her resignation on April 14, 2004, and Delta issued a press release the next day stating that the resignation would become effective on Friday, April 30, 2004. Claimant's Supplemental Opposition ¶ 5; Day Declaration, Exhibit C.

---

[2] Delta argues that the resignation of Burns became effective Saturday, May 1, 2004, consistent with Delta's standard policy, which apparently accounts for a resignation on the following calendar day. Day Declaration ¶ 5; Burns' Declaration ¶ 1. The Court will use April 30, 2004 as the effective date of the resignation consistent with Delta's Form 8 K filed on April 16, 2004. Claimant's Supplemental Opposition, Exhibit B.

- 3 -

Delta submitted an April 27, 2004 e-mail between Burns and Robert Colman, Delta's then Executive Vice President of Human Resources, which attaches a draft letter providing for unlimited positive space travel. Day Declaration ¶ 7, Exhibit D-2. The draft letter attached to the April 27, 2004 email from Burns addresses Burns as Executive Vice President and Chief Financial Officer. Day Declaration ¶ 7, Exhibit D-2. On Friday, April 30, 2004 Delta sent Burns by Federal Express a final version of the consulting agreement. Day Declaration ¶ 10. On Monday, May 3, 2004 Burns executed the consulting agreement (hereafter, the "Consulting Agreement") in substantially the same form as was sent by Federal Express on Friday, April 30, 2004. Motion ¶ 11; Delta's Supplemental Brief ¶ 8.

The Consulting Agreement provided that Delta would engage Burns as a consultant from the period of May 1, 2004 through May 1, 2009 and "provide such consulting services to Delta's Chief Executive Officer with respect to any matter within [her] general area of expertise as developed during [her] employment with Delta that may from time to time arise during the consulting period." Motion ¶ 11; Motion, Exhibit C. Burns also agreed that until May 1, 2009 she would not "solicit any person who is at the time an employee of Delta, or its subsidiaries, at the director or officer level" to provide services or accept employment from any other company. Motion, Exhibit C. In exchange, Delta would provide unlimited positive space travel for Burns, her spouse and their dependent children, with certain exceptions. *Id.* Positive space travel allows for free first class travel on Delta or a Delta subsidiary or connection carrier, which could be booked as if the user was a paying customer and not limited to available vacant seats (hereafter, "Lifetime Travel Benefit"). Motion ¶ 11, footnote 2. In 2004, positive space travel was only offered to retired Delta executives with ten or more years of service. Motion ¶ 11. Burns would not have received positive space travel absent the Consulting Agreement. *Id.*

From May 1, 2004 through Delta's bankruptcy petition date on September 14, 2005, Burns utilized the Lifetime Travel Benefit to book ninety eight flights for destinations in the United States and Europe. Motion ¶ 12. Most if not all of these flights were taken in first class. Reply ¶ 1. Burns acknowledges that the unlimited positive space travel was an "extraordinarily valuable right[]." Opposition ¶ 1. In the Burns' Declaration, Claimant acknowledged that at the time of the Delta bankruptcy filing her information concerning Delta matters "likely was of little value" and her contact with Delta employees was "de minimis." Burns' Declaration ¶ 5.

On September 14, 2005, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code. On September 15, 2005, the Debtors filed a motion seeking approval of certain procedures (the "Rejection Procedures") (i) pursuant to sections 105(a) and 365(a) of the Bankruptcy Code and Bankruptcy Rule 6006 for the ongoing rejection of certain executory contracts and unexpired leases and subleases and (ii) pursuant to sections 105(a) and 554(a) of the Bankruptcy Code for the abandonment of certain of the Debtors' personal property. By order dated November 10, 2005, the Court approved the Rejection Procedures.

Following the Petition Date, on November 15, 2005, pursuant to the Court-approved Rejection Procedures, Delta filed a Notice of Rejection of Executory Contracts and Unexpired Leases and the Abandonment of Personal Property [Docket No.1231] (the "Rejection Notice") seeking authority to reject, among other executory contracts and unexpired leases, the Consulting Agreement. Burns timely objected to the Rejection Notice. No hearing was requested in hope that the parties could reach a consensual agreement. Pursuant to the Rejection Notice and the Rejection Procedures, "[i]f the Debtors and [Burns were] unable to consensually resolve the [Rejection] Objection, the Debtors shall not proceed with the rejection of the [Consulting Agreement], but may seek Court approval of the requested rejection or abandonment. If, after a hearing, the disputed rejection . . . is approved by the Court, the [Consulting Agreement] will be deemed rejected as of [the Rejection Effective Date] . . . ." Motion ¶ 15.

On August 21, 2006, the last date to file a proof of claim, Burns caused to be filed claim nos. 6906, 6907, 6908, 6909, 6910, 6912, 6913, 6914, 6915, 6916, 6917, 6918, 6919, 6920, 6921, 6922, 6923, 6924 and 6925. On May 30, 2007, the last day to file an administrative claim, Burns caused to be filed Claim Number 8478.

On or about October 16, 2009, Delta filed the instant Motion objecting to Burns' Claims. On or about November 11, 2009, Burns filed her Opposition to the Motion. On or about November 11, 2009, Delta filed a Reply to the Opposition.

At the November Hearing, counsel for Claimant agreed to strike the portion of the Claims that sought indemnification for a civil proceeding pending in the Northern District of Georgia regarding a claim under ERISA and was duplicative of open Claim No. 5533. November Hearing Transcript at 36. At the November Hearing on the Motion and Opposition, counsel for Burns acknowledged that the Consulting Agreement is "an executory contract." November Hearing Transcript at 57. This contradicted the position taken by Burns in her Opposition that

- 5 -

the Consulting Agreement was not executory. Opposition ¶ 5. At the November Hearing, Claimant argued that "I don't know where Delta's coming up with [Burns] negotiated this contract while she was an insider of the debtor. She was out." November Hearing Transcript at 58. Claimant further argues that an evidentiary hearing is required to determine the value of the allowed claim. November Hearing Transcript at 56. At the December Hearing, counsel for Claimant, for the first time, argued that the Court must look to *In re Food Management Group, LLC*, 2008 WL 2788738 (Bankr. S.D.N.Y. 2008) in order to determine the value of the claim.

## DISCUSSION

I. The Post-Petition Administrative Claims

Burns' Opposition argues that the former CFO has as "extremely large prepetition unsecured claim against the Debtor" as well as a "substantial administrative expense priority claim" pursuant to 11 U.S.C. § 503. Opposition ¶ 4. The administrative expense priority is based upon Delta's alleged post-petition breach of the Consulting Agreement. *Id.* In their Opposition, Burns argued that the Consulting Agreement was not executory and could not be rejected under 11 U.S.C. 365(a).[3] Opposition ¶¶ 5-8. At the November Hearing, counsel for Burns acknowledged, in contravention of their Opposition, that the Consulting Agreement is "an executory contract." November Hearing Transcript at 57. Although this statement seems to indicate that Burns has abandoned the contention that the Consulting Agreement was not an executory contract, the Court holds that the Consulting Agreement was an executory contract and was properly rejected by Delta pursuant to § 365(a).

Section 365(a) allows a trustee to "reject any executory contract … of the debtor." 11 U.S.C. § 365(a). The debtor has a statutory right to reject an executory contract. *In re Ames Dept. Stores, Inc.*, 306 B.R. 43, 51 (Bankr. S.D.N.Y. 2004). Any claim arising from the rejection of an executory contract results in a pre-petition claim to the non-debtor party that is afforded general unsecured status. 11 U.S.C. § 365(g); *In re Ames Dept. Stores, Inc.*, 306 B.R. at 51. The debtor is allowed to avoid the accumulation of further administrative expenses by rejecting executory contracts that in its business judgment are viewed as burdensome. *Id.* at 52.

---

[3] 11 U.S.C. 365(a) reads in relevant part:
> (a) … the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

- 6 -

05-17923-cgm    Doc 7518    Filed 02/03/10    Entered 02/03/10 14:53:03    Main Document
Pg 7 of 13

Following rejection under § 365(a), the non-debtor party has a claim against the debtor for breach of contract. *Id.* at 60.

Since the Consulting Agreement was an executory contract it could be and was rejected pursuant to § 365(a). The Second Circuit has not adopted a uniform definition of an executory contract but this Court follows the formulation of Professor Vern Countryman that "a contract is executory if performance is still required by both parties that is sufficiently material such that failure of either to perform would excuse the other party's performance." *In re Helm*, 335 B.R. 528, 534 (Bankr. S.D.N.Y. 2006); Opposition ¶ 5. The Consulting Agreement was for a fixed five-year term starting on May 1, 2004 and continuing through May 1, 2009. Motion ¶ 11; Motion, Exhibit C. Under the Consulting Agrement, Burns provided consulting services when requested by Delta during the five-year term; Burns did not solicit Delta employees during the five-year term; and Delta provided a Lifetime Travel Benefit. Motion, Exhibit C. As of the petition date of September 14, 2005, over three years remained on Burns' obligations under the Consulting Agreement. The Consulting Agreement was not fully performed by either Delta or Burns on September 14, 2005 and to hold otherwise would be a contravention of the plain language of the Consulting Agreement. *Helm*, 335 B.R. at 536. Delta was obligated to provide the travel benefit while Burns had another three years of potential consulting to Delta and a three year obligation to refrain from soliciting employees. The Court holds that as of the petition date, the Consulting Agreement was an executory contract that was subject to rejection under § 365(a). Delta properly rejected the Consulting Agreement, which was an executory contract, pursuant to 11 U.S.C. §§ 365 and 1123. Motion ¶¶ 1-10, 39; *see also Helm*, 335 B.R. 528 (Bankr. S.D.N.Y. 2006). Accordingly, Burns is not entitled to an administrative claim against the estate.

II. Pre-Petition Unsecured Claim

Burns is entitled to a pre-petition claim against the debtor for termination of the Consulting Agreement. 11 U.S.C. § 365(g); *In re Ames Dept. Stores, Inc.*, 306 B.R. at 51. For reasons explained below, the Court finds that Burns' allowed pre-petition claim is limited by § 502(b)(4). Reorganized Debtors seek to expunge Claim Nos. 6906, 6907, 6908, 6909, 6910, 6912, 6913, 6914, 6915, 6916, 6917, 6918, 6919, 6920, 6921, 6922, 6923, 6924, 6925 and 8478

pursuant to § 502(b)(4).[4]  The Court does not reach the Reorganized Debtors' alternative argument under § 502(b)(7) for reduction of the Claims because it is not necessary.  Section 502(b)(4) limits the prepetition claim for services of an insider to the reasonable value of the services performed.  *In re Food Management Group, LLC*, 2008 WL 2788738, *5.  In other words, Burns' Claims are limited to the reasonable value of the services she rendered to Delta pursuant to the Consulting Agreement.

The Court first decides whether Burns was an insider for the purposes of § 502(b)(4).  11 U.S.C. § 101(31)(B) lists six statutory insiders of corporations that include a (i) director of the debtor and (ii) officer of the debtor.  § 101(31)(B).  The list in § 101(31)(B) is not exhaustive and the courts can determine if another individual is an insider.  *In re A. Tarricone, Inc.*, 286 B.R. 256, 262 (Bankr. S.D.N.Y. 2002).  Apart from these statutory insiders, the courts generally use two factors to determine if the individual is an insider: (1) the closeness of the relationship between debtor and individual; and (2) whether the transaction was performed at arm's length.  *Id.*  The Court must perform a fact intensive analysis to determine if the individual is an insider for non-statutory insiders like those listed in § 101(31)(B).  *Tarricone*, 286 B.R. at 262.

In *Tarricone*, the court found that Vincent Giagni was an insider of the debtor where he had a close relationship with the de facto head of the debtor but was not a statutory insider under § 101(31)(B).  *Id. at* 258-59.  Giagni dined and golfed with the de facto head of the debtor as often as once a week for several years preceding the bankruptcy and acted as a counselor during the debtor's bankruptcy.  *Id. at* 259.  At the request of the de facto head of the debtor, Giagni made a $200,000 loan to the debtor prior to the filing of bankruptcy.  *Id. at* 259.   The loan was repaid in full with interest.  *Id.*  The question of whether Giagni was an insider affected the look-back period for preferences under § 547(b).  *Id. at* 260.  In finding that Giagni was an insider the court pointed to a number of factors including the closeness of the relationship between Giagni and the de facto head of the debtor, the unusual nature of the loan agreement, and Giagni's lack of due diligence in making the loan.  *Id. at* 269-72.

---

[4] 11 U.S.C. 502(b) reads in relevant part:
   (b) Except as provided in subsections (e)(2), (f), (g), (h) and (i) of this section, if such claim is made, the court, after notice and a hearing, shall determine the amount of such claim in lawful currency of the United States as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that –
   (4) if claim is for services of an insider or attorney of the debtor, such claim exceeds the reasonable value of such services;

The definition of an insider should be construed flexibly by the Court. *In re Allegheny Int'l, Inc*. 158 B.R. 332, 339 (Bankr. W.D. Pa. 1992). "An insider has been defined as any entity or person with a 'sufficiently close relationship with the debtor that his conduct is made subject to closer scrutiny than those dealing at arms length with the debtor.'" *Id. quoting In re Acme-Dunham, Inc.*, 50 B.R. 734, 739 (D. Me. 1985). The Court's scrutiny seeks to prevent insiders of the debtor from "extracting inflated amounts for their services." *Allegheny,* 158 B.R. at 339. Insiders may be entitled to claims in bankruptcy but the claims should be subject to intense scrutiny by the Court. *In re Russell Cave Co., Inc.* 253 B.R. 815 (Bankr. E.D. Ky. 2000).

In *Allegheny*, Robert Buckley served as chairman and chief executive officer of the debtor's board of directors from 1976 to 1986. *Allegheny,* 158 B.R. at 339. Buckley entered into employment contracts with the debtor while he was a statutory insider of the debtor pursuant to § 101(31)(B). *Id.* Debtor filed for bankruptcy in 1988. *Id.* at 334. Debtor sought to cap the value of claims based upon employment contracts that Buckley entered into with the debtor while he was chief executive officer *Id. at* 338. The court in *Allegheny* held that § 502(4) applied even though Buckley was no longer an insider at the time of the bankruptcy, noting that "[t]he issue that is important for 11 U.S.C. § 502(b)(4) purposes is whether the claimant was an insider when the employment contract with the debtor formed." *Id. at* 339. The Court noted that because Buckley was an insider when he entered into the employment contracts with the debtor, his claims could be capped by §502(b)(4) even though he was no longer a statutory insider under § 101(31)(B). *Id.*

In *Russell Cave*, Donald Staley was an advertising copywriter and founder of the J. Peterman Company, which was a predecessor of the debtor. *Russell Cave,* 253 B.R. at 818. Staley and his firm, Staley Fox, produced the debtor's catalogues and paid its contributing artists and copywriters directly from Staley Fox. *Id.* Staley left the board of directors in 1997 but remained as a consultant when outside firms infused capital into the debtor. *Id.* Staley was no longer a member of the board of directors or a technical employee at the time of the bankruptcy filing. *Id.* at 821. In finding that Staley was an insider for purposes of  § 502(b)(4), the court noted that Staley produced the signature catalogues of the debtor, formerly sat on the board of directors, and had absolute control of the catalogues. *Id.* at 821-22. The court looked at the services being performed and the time that the compensation contract was formed. *Id.* at 821.

In the instant case, Burns was Delta's CFO from August 16, 2000 through her resignation, which became effective on April 30, 2004. Motion ¶ 11. Delta submitted an April 27, 2004 email between Burns and Robert Colman, Delta's then Executive Vice President of Human Resources, which attaches a draft letter providing for unlimited positive space travel. Day Declaration ¶ 7, Exhibit D-2. The draft letter attached to the April 27, 2004 email from Burns addresses Burns as Executive Vice President and Chief Financial Officer which was her title at the time. Day Declaration ¶ 7, Exhibit D-2. As in *Allegheny*, the Court must look to the time period that the employment contracts were substantially negotiated. Burns was the CFO of Delta at the time that her contract was negotiated. The version of the Consulting Agreement sent to Burns on Friday, April 30, 2004, was substantially the same as the Consulting Agreement executed by Burns on May 3, 2004. Similarly to *Allegheny* the Claimant was a statutory insider at the time that the employment contract WAS formed. *Allegheny*, 158 B.R. at 338. Burns acknowledged that she had a conversation about the consulting agreement in mid-April when she informed Delta's chief executive officer of her resignation. Burns' Supplemental Declaration ¶ 2. The Court does not accept and the Claimant provides no case law to support the proposition that the notification of her resignation on April 14, 2004 ended her insider status at Delta. Burns' Supplemental Declaration ¶ 3. The substance of the Consulting Agreement was formed while Burns was CFO and a statutory insider of the debtor. The separation of a weekend before execution of the Consulting Agreement does not cleanse Burns of her insider status under § 502(b)(4). The Court also notes that just as in *Tarricone*, the Consulting Agreement provided for an unusual benefit that Burns would not have normally been entitled to, namely the lifetime travel benefit. *See Tarricone,* 286 B.R. at 268-70. The Court believes that Burns' position as CFO enabled her to negotiate for this valuable right. The Court finds that Burns was an insider for purposes of § 502(b)(4) where she was CFO during all substantive negotiations concerning the Consulting Agreement.

Burns' next argument is "that the Consulting Agreement did not contemplate or involve services of an insider." Claimant's Supplemental Opposition ¶ 3. Burns seeks to distinguish *Allegheny* by arguing that the employment contracts in that case "were for services of an insider, not solely due to the employees' insider status at the time the contracts were formed." *Id.* The court in *Allegheny* notes that "insider … relates to services performed. The contract services were services of an insider." *Allegheny*, 158 B.R. at 339. Focusing on this language, Burns

concludes that § 502(b)(4) is not applicable because Burns was not an insider under the Consulting Agreement or performing services of an insider noting that "[i]f she was an insider during the contract period, the Consulting Agreement would not have been necessary." Claimant's Supplemental Opposition ¶ 3. The Court declines to read *Allegheny* and § 502(b)(4) in such a limited manner. It is well established that the mere fact that an individual is not an insider at the time of filing of bankruptcy does not control whether an individual is an insider pursuant to § 502(b)(4). In *Allegheny* Buckley was no longer an employee of the debtor for at least one year before bankruptcy, and the court applied § 502(b)(4) noting that it wanted to "hold accountable all claimants who were insiders when the advantageous insider employment contract was developed." *Allegheny,* 158 B.R. at 339. The Consulting Agreement refers directly to expertise Burns developed while she was an insider. The first sentence of the Consulting Agreement states "Because of the exceptional expertise you developed during your service with Delta Air Lines, Inc. … Delta wishes to engage you as a consultant from the period of May 1, 2004 through May 1, 2009." Opposition, Exhibit A. The Consulting Agreement was negotiated while Burns was an insider and was based on her expertise developed during the period that she was an insider and accordingly § 502(4)(b) caps the Claims of Burns.

Since Burns was an insider under § 502(b)(4), the Claims can be capped so that they do not exceed "the reasonable value of such services." § 502(b)(4). At the December Hearing, Burns argues that the concept of reasonable value should be taken from *In re Food Management Group, LLC. In re Food Management Group, LLC*, 2008 WL 2788738, *5. *In re Food Management Group, LLC* holds that value as used in § 502(b)(4) is "synonymous with the concept of 'market value' or 'price' such that an attorney is entitled to fees up to the reasonable market value of his services." *Id.*

In *In re Food Management Group, LLC,* Pu was a former attorney of the debtor (or companies acquired by the debtor) and filed a proof of claim for about $500,000 for services rendered to the debtor. *Id.* at *2-5. The trustee sought to avoid attorney's fees under § 502(b)(4). *Id.* at *5. The court declined to address whether § 502(b)(4) applied in that case, but noted that if it did apply it would not be a bar to the recovery of attorney fees. *Id.* The court held that the Trustee's notion of value was overly broad and § 502(b)(4) did not require a showing that the attorney's services provided a tangible benefit on the debtor. *Id.* at *5. The

attorney did not need to win in order for their services to deemed valuable but only that the attorney was entitled to he reasonable market value of the services provided. *Id.*

*In re Food Management Group, LLC*, the attorney provided many documented services for the debtor, Burns provided few services to the debtor. Motion ¶ 29. Burns made herself available to Delta for consulting services, but Delta never called upon Burns from May 3, 2004 through November 30, 2005. Motion ¶ 29. During the period of the Consulting Agreement, Burns did not solicit any Delta employees and set up a screening process with Delta before she would speak to employees. Burns' Declaration ¶ 4. Burns' Claim is capped at the reasonable value of the services that she provided before the Consulting Agreement was rejected, namely the availability for consulting services and the non-solicitation of Delta employees. *See* § 502(b)(4). The Court believes that there is nominal value in the services that were provided by Burns and consistent with *In re Food Management Group, LLC* the Court must determine the reasonable market value of the services rendered. *In re Food Management Group, LLC*, 2008 WL 2788738, *5.

Burns contends that an evidentiary hearing on the reasonable value of Burns' services is appropriate in this case. Claimant's Supplemental Opposition ¶ 11. The Court disagrees. As Burns correctly notes, an evidentiary hearing is not statutorily required. *Id. at* 10-11. Since § 502(b)(4) is applicable here, Burns Claims are limited by the reasonable value of the services she provided to Delta under the Consulting Agreement. An evidentiary hearing is unnecessary in light of the two rounds of briefings and two hearings already held in these matters. Further, the Court can invoke its power under § 502(c) to estimate "any contingent or unliquidated claim, the fixing of which, as the case may be, would unduly delay the administration of the case." 11 U.S.C. § 502(c)(1). Based on a thorough review of the record, the Court believes that the ninety eight tickets utilized by Burns during the period of the Consulting Agreement more than compensates for any services provided by Burns under the Consulting Agreement. Accordingly, Burns' Claims must be capped at their reasonable value, which is zero.

## **CONCLUSION**

For the foregoing reasons, Claim No. 6906, 6907, 6908, 6909, 6910, 6912, 6913, 6914, 6915, 6916, 6917, 6918, 6919, 6920, 6921, 6922, 6923, 6924, 6925 and 8478 are capped by

§502(b)(4) to their reasonable value which is zero.  The Reorganized Debtors are directed to submit an Order.

Dated: Poughkeepsie, New York
      February 3, 2010

       /s/ Cecelia Morris
      UNITED STATES BANKRUPTCY JUDGE